# EXHIBIT A



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Anitra Fludd<br>Invitation Homes<br>1717 Main St<br>Ste 2000<br>Dallas, TX 75201-4657 |
| **Electronic copy provided to:** | Thomas Schmidt<br>Sherry Nikodem |

| | |
|---|---|
| **Entity:** | Invitation Homes Realty California Inc.<br>Entity ID Number 3371105 |
| **Entity Served:** | Invitation Homes, Inc |
| **Title of Action:** | City Of San Diego vs. Invitation Homes, Inc. |
| **Matter Name/ID:** | City Of San Diego vs. Invitation Homes, Inc. (11962415) |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Property |
| **Court/Agency:** | San Diego County Superior Court, CA |
| **Case/Reference No:** | 37-2020-00030619-CU-MC-CTL |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 01/28/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Sanford Heisler Sharp, LLP<br>619-577-4251 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Invitation Homes, Inc.

F I L E D
Clerk of the Superior Court

JAN 2 4 2022

By: E. Fernandez

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
City of San Diego, City of Sacramento, City of Moreno Valley, City of Riverside, City of Los Angeles, City of Compton, City of Temecula, City of Palmdale, City of Lancaster, City of San Bernardino, City of Vallejo, City of Fontana, City of Murrieta, City of Fairfield, City of Perris, City of Yucaipa, City of Corona, City of Rialto, and Roes 1-250, Ex. Rel Blackbird Special Project, LLC

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Superior Court of California, County of San Diego – North County 325 South Melrose Drive, Vista, CA 92081 | 37-2020-00030619-CU-MC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Ed Chapin, 2550 Fifth Avenue, 11th Floor, San Diego, CA 92103, (619) 577-4251

| DATE: *(Fecha)* JAN 2 4 2022 | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* E. Fernandez |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Invitation Homes, Inc.

   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 1-28-2022

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form

SUPERIOR COURT OF CALIFORNIA
SAN DIEGO COUNTY

[UNDER SEAL],

        PLAINTIFF,

        *v.*

[UNDER SEAL],

DEFENDANT.

CIVIL ACTION NO.

FILED UNDER SEAL
PURSUANT TO
CAL. GOV'T CODE § 12652(c)(2)

Case No. 37-2020-00030619-CU-MC-CTL

AMENDED COMPLAINT

Ed Chapin (CA Bar No. 05328)
**SANFORD HEISLER SHARP, LLP.**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4251
Facsimile: (619) 577-4250
Email: echapin@sanfordheisler.com

H. Vincent McKnight, *Pro Hac Vice forthcoming*
**SANFORD HEISLER SHARP, LLP.**
700 Pennsylvania Ave. SE, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5201
Email: vmcknight@sanfordheisler.com

Leonard B. Simon (California Bar No. 58310)
**LAW OFFICES OF LEONARD B. SIMON**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644
Email: lens@rgrdlaw.com

*Attorneys for the Plaintiff-Relator Blackbird Special Project, LLC*

**SUPERIOR COURT OF CALIFORNIA**
**SAN DIEGO COUNTY**

| | |
|---|---|
| CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF MORENO VALLEY, CITY OF RIVERSIDE, CITY OF LOS ANGELES CITY OF COMPTON, CITY OF TEMECULA, CITY OF PALMDALE, CITY OF LANCASTER, CITY OF SAN BERNARDINO, CITY OF VALLEJO, CITY OF FONTANA, CITY OF MURRIETA, CITY OF FAIRFIELD, CITY OF PERRIS, CITY OF YUCAIPA, CITY OF CORONA, CITY OF RIALTO AND ROES 1-250, EX. REL BLACKBIRD SPECIAL PROJECT, LLC<br><br>    PLAINTIFF-RELATORS,<br><br>    v. | Case No.<br><br>**37-2020-00030619-CU-MC-CTL**<br>**AMENDED COMPLAINT**<br><br>**FILED UNDER SEAL**<br>**PURSUANT TO**<br>**CAL. GOV'T CODE § 12652(c)(2)**<br><br>**ACTION DEMANDED**<br>**EXCEEDS $10,000**<br><br>**JURY TRIAL DEMANDED** |

On behalf of the Cities of San Diego, Sacramento, Moreno Valley, Riverside, Los Angeles, Compton, Temecula, Palmdale, Lancaster, San Bernardino, Vallejo, Fontana, Murrieta, Fairfield, Perris, Yucaipa, Corona, Rialto and Roes 1–250, Relator Blackbird Special Project, LLC files this *qui tam* Complaint against Defendant Invitation Homes, Inc. ("IH"), a publicly traded corporation. In support thereof, Relator alleges as follows:

## INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the Cities of San Diego, Sacramento, Moreno Valley, Riverside, Los Angeles, Compton, Temecula, Palmdale, Lancaster, San Bernardino, Vallejo, Fontana, Murrieta, Fairfield, Perris, Yucaipa, Corona, Rialto and Roes 1–250 arising from Defendant IH's concealment or avoidance of obligations to remit money to local municipalities and counties of the State of California in violation of the California False Claims Act, Cal. Gov't Code § 12650 *et seq.* (hereinafter the "CFCA").

2.      In California, building permits are required for substantial renovations, including the erection, construction, reconstruction, installation, moving, or alteration of any building or structure. Cal. Code Regs. tit. 24, § 1.8.4.1. Local agencies must adopt regulations that at least meet the State's minimum building regulations and standards, *see* Cal. Health & Safety Code § 17958 *et seq.*, and some, like Los Angeles, have adopted more specific standards. *See, e.g.*, Los Angeles Municipal Code ("LAMC") § 91.106.2(1) (generally requiring permits for repairs valued at over $500).

3.      Building permits ensure that the renovation is conducted safely and in compliance with building, construction, and zoning codes. Prior to beginning most construction or renovations, companies must evaluate whether a permit is required. Permit and inspection fees are paid to the local cities and counties. *See* Cal. Health & Safety Code § 17951.

4.      Invitation Homes, a single-family home rental company, began buying homes in many states, prominently including California, after the financial crisis of 2007-08, and has purchased over 12,000 such homes in the State. It has spent thousands of dollars on renovations to its single-family homes in California but intentionally and systematically failed

1  to obtain building permits. IH's business model was simple: it purchased thousands of single-
2  family homes that were devalued by the financial crisis, renovated them, and then rented them
3  out at a higher valuation. It chose to ignore permitting requirements to avoid permit fees and
4  to get the properties into the rental market as quickly as possible, as well as, as explained
5  below, to avoid property tax increases.

6      5.      Since 2012, IH has spent approximately $25,000 per home on renovations of its
7  California single-family homes. The vast majority of IH's renovations required permits—
8  including for demolishing and constructing sections of single-family homes, installing and
9  demolishing pools, and significantly altering the electrical work—but permits were not
10  obtained. Once the single-family homes were renovated without the required permits, IH
11  rented them to tenants who were unaware of the unpermitted and potentially unsafe
12  renovations.

13      6.      Relator's analyses show that IH obtained building permits for less than 7% of
14  the single-family homes it owns. Relator has closely analyzed IH's permitting scheme in the
15  Cities of San Diego, Sacramento, Moreno Valley, Riverside, Compton, Temecula, Palmdale,
16  Lancaster, San Bernardino, Vallejo, Fontana, Murrieta, Fairfield, Perris, Yucaipa, Corona, and
17  Rialto covering Northern and Southern California, and urban rural and suburban settings.
18  Relator has confirmed IH's failure to permit in each city, and therefore believes it is a statewide
19  practice.

20      7.      By its failure to pay or remit inspection, permit fees, penalties and interest IH
21  has defrauded cities and counties in California millions of dollars.[1]

22

23

_____

24      [1] IH has also defrauded counties of additional property taxes that it owes because of
    the higher valuation of the property after the renovation. In California, under Proposition 13
25  revaluations are strictly limited, but can take place when a property is sold, or when renovations
    requiring permits takes place. When IH acquired a home, a revaluation would have taken place
26  upon its purchase (but many of the properties were distressed, lowering sales prices and valuations),
    and should have occurred again when IH improved the property through renovations. The
27  permitting process informs the county assessor of an improvement made, and thus a need for
    reassessment. But when no permits were pulled, no reassessment took place, and taxes remained
28  fraudulently low.

AMENDED COMPLAINT

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to Cal. Gov't Code § 12652(c)(2).

9. This Court has jurisdiction over the Defendant under California Code of Civil Procedure § 410.10 because a substantial portion of the acts and omissions complained of, and giving rise to the claims alleged herein, occurred in California. IH owns 82 single-family homes in the City of San Diego and has failed to get required permits on those homes, defrauding the City.

10. Venue is proper under California Code of Civil Procedure § 395.5 because the Defendant transacts business in San Diego County and many of the breaches of legal obligation that give rise to Defendant's liability, as described in this Complaint, also took place in San Diego County. Venue is also proper under California Code of Civil Procedure § 393 because some part of this cause to recover penalties imposed by the CFCA arose in San Diego County.

11. This action is not based upon prior public disclosure of allegations or transactions in (1) a civil suit or an administrative civil money penalty proceeding in which the State or any of the political subdivisions is already a party; (2) a criminal, civil, or administrative hearing in which the State or any prosecuting authority of the political subdivisions or their agents is a party; (3) a report, hearing, audit, or investigation of the California Legislature, the State, or any of the political subdivisions' governing bodies; or (4) the news media.

12. To the extent that there has been a public disclosure unknown to Relator, Relator is an original source under Cal. Gov't Code § 12652(d)(3)(C). Relator has voluntarily disclosed to the State the information on which this claim is based. It also has knowledge that is independent of, and materially adds to, the publicly disclosed allegations or transactions, and has voluntarily provided that information to the State before filing this complaint. *See id.*

## PARTIES

13. Relator Blackbird Special Project, LLC ("Blackbird" or "Relator") was incorporated in Delaware in March 2020 and is headquartered in San Diego. Blackbird, in conjunction with a related company called Deckard Technologies, Inc., uses proprietary technology, which implements aspects of artificial intelligence and machine learning, to review

and analyze various issues concerning real estate nationwide, including California.[2] Among the issues that Relator has analyzed is the underpayment of property taxes in California. In looking at this issue, Relator discovered that the source of much underpayment of property taxes in California was the failure of large corporate purchasers, including IH, to obtain permits for renovations of homes bought after the 2007 to 2008 financial crisis.

14.     Defendant Invitation Homes, Inc. ("IH") is a publicly traded, premier, home-leasing company headquartered in Dallas, Texas and incorporated in the state of Maryland. IH has a market cap over $10 billion and had an annual revenue of $1.72 billion in 2018. Its President and CEO is Dallas B. Tanner.

15.     IH was founded by Blackstone (formally, The Blackstone Group, Inc.) in 2012 and has grown rapidly by buying single-family homes and through acquisitions of other companies which had done the same. By June 30, 2016, IH had acquired nearly 50,000 single-family homes through the multiple listing service ("MLS"), broker sales, and bulk portfolio sales, among others. In August 2017, IH and Starwood Waypoint Homes, another owner and operator of single-family homes, merged and IH's portfolio of single-family homes increased by 34,670. IH is currently the largest owner of single-family, rental homes in the United States, with most of its homes located in California, Florida, Georgia, Texas and other Sun Belt states. As of December 31, 2019, IH owned 79,505 single-family homes in twelve states.

16.     In California, as of December 31, 2019, Defendant owned 12,461 single-family homes in over one hundred cities. Since 2020, Relator's analysis has shown that IH has owned 82 single-family homes in San Diego, 517 in Riverside, 526 in Moreno Valley, 971 in Sacramento, 56 in Compton, 1,693 in Los Angeles, 135 in Temecula, 135 in Temecula, 379 in Palmdale, 376 in Lancaster, 348 in San Bernardino, 314 in Vallejo, 286 in Fontana, 274 in Murrieta, 217 in Fairfield, 183 in Perris, 181 in Yucaipa, 180 in Corona, and 176 in Rialto.[3]

---

[2] Prior to March 2020, the references to Relator or Blackbird should be understood to encompass work done by Deckard. Post March 2020, the references to Relator or Blackbird refer solely to Blackbird, except to the extent Blackbird used Deckard's proprietary technology.

[3] The current amounts may differ depending on the amount of IH's acquisitions and disposals in those cities this year.

AMENDED COMPLAINT

## REGULATORY STRUCTURE

**A. The California False Claims Act.**

17.     The California False Claims Act, Cal. Gov't Code § 12650, *et seq.*, was enacted in 1987 and modeled after the federal False Claims Act.

18.     Among other things, the CFCA makes it unlawful to "knowingly conceal[] or knowingly and improperly avoid[], or decrease[] an obligation to pay or transmit money or property to the state or to any political subdivision." Cal. Gov't Code § 12651(a)(7).

19.     The CFCA also makes it unlawful to "knowingly make[], use[], or cause[] to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision[.]" *Id.*

20.     The CFCA defines "knowingly" as meaning that one who either has "actual knowledge of the information, [a]cts in deliberate ignorance of the truth or falsity of the information, or [a]cts in reckless disregard of the truth or falsity of the information." Cal. Gov't Code § 12650(b)(3). "Proof of specific intent to defraud is not required." *Id.*

21.     The CFCA defines "political subdivision" to include "any city, city and county, county, tax or assessment district, or other legally authorized local governmental entity with jurisdictional boundaries." Cal. Gov't Code § 12650(b)(6).

22.     The CFCA defines "obligation" as meaning "an established duty, whether or not fixed, arising from . . . a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." Cal. Gov't Code § 12650(b)(5).

23.     The CFCA contains a *qui tam* provision permitting individuals to prosecute proscribed conduct in a civil action on behalf of themselves, the State of California, and political subdivisions. Cal. Gov't Code § 12652(c)(1). The complaint is to be filed in Superior Court *in camera* and may remain under seal for 60 days, allowing the government to conduct its own investigation and determine whether to join in the suit. *See* Cal. Gov't Code § 12652(c)(2).

24.     The CFCA provides that anyone who engages in proscribed conduct "shall be liable to the state or to the political subdivision for three times the amount of damages that the state or political subdivision sustains," plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of

1990, Public Law 101–410 Section 5, 104 Stat. 891, note following 28 U.S.C. Section 2461. Cal. Gov't Code § 12651(a).

25.    The CFCA "shall be liberally construed and applied to promote the public interest." Cal. Gov't Code § 12655(c).

**B.  California Building Permits Requirements, Fees, and Penalties.**

**i.    Mandatory Permits and Fees Prior to Renovating Homes.**

26.    Under the California State Building Code, a written permit is required prior to "erection, construction, reconstruction, installation, moving or alteration of any building or structure." Cal. Code Regs. tit. 24, § 1.8.4.1; *see also* Cal. Code Regs. tit. 24, § 105.1 ("Any owner . . . who intends to construct, enlarge, alter, repair, move, demolish or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system . . . shall first make application to the [local] building official and obtain the required permit.").

27.    The State Building Code is deemed adopted in its entirety by all California cities and counties unless a given locality expressly indicates which provisions it declines to adopt, and local authorities can only deviate from the State Building Code if they expressly find "that such modifications or changes are reasonably necessary because of local climatic, geological or topographical conditions." Cal. Health & Safety Code §§ 17958, 17958.7. Thus, cities either have the same permitting requirements as the state or slight differences through local substitution, not relevant to the substance of this Complaint.

28.    Local governments are authorized to prescribe fees for building and renovation permits. Cal. Health & Safety Code § 17951; *see also* Cal. Code Regs. tit. 24, § 1.8.4.2.

29.    For example, in the City of Los Angeles, "[n]o person shall erect, construct, alter, repair, demolish, remove or move any building or structure . . . unless said person has obtained a permit." LAMC 91.106.1.1; *see also* LAMC 91.101.1.1 (adopting portions of the State Building Code by reference).[4] Permits require advance payment of a fee, the amount of which is calculated

---

[4] *Available at* http://library.amlegal.com/nxt/gateway.dll/California/lamc/municipalcode/ chapterixbuildingregulations/article1buildingsbuildingcode?f=templates$fn=default.htm$3.0$vid =amlegal:losangeles_ca_mc$anc=JD_91.106.1.1.

AMENDED COMPLAINT

1  based on "the total value of all construction work for which the building permit is issued." *Id.* at

2  91.107.2.1. Renovations valued between $20,000 and $50,000 are subject to a minimum permit fee

3  of $170, *id.* at 91.113, Table 1-A, in addition to any applicable line-item fees, such as to replace a

4  garbage disposal ($10) or water heater ($28). *See* Los Angeles Department of Building and Safety,

5  Fee Schedules for Plumbing Permits, https://www.ladbs.org/faq/fee-schedules. There is also a

6  mandatory plan check fee, the amount of which "shall be equal to 90% of the building permit fee."

7  LAMC 91.107.3.1.1.

8    30.    In the City of Sacramento, which has adopted the State Building Code permitting

9  provisions, Sacramento City Code 15.04.050, 15.08.010, and 15.20.010 (adopting the State

10  Building Code without altering the permitting requirement),[5] permit fees cover "all aspects of

11  administration of the building permit program," including plan review and inspection, and  are

12  calculated based on either "the estimated value of the work to be done" or "an hourly rate to be

13  charged for actual time expended performing plan review or inspections." *Id.* at 15.08.050.

14  Renovations valued above $20,000, for example, are charged a mandatory fee of at least $429. *See*

15  Sacramento Community Development Department, Fee Tables, Table A.[6] Flat permit fees also

16  apply, such as for kitchen remodels ($287), roof replacements ($175), and custom patios ($300 for

17  the permit and $152 for the plan check). *Id.*

18    31.    In the City of Riverside, which has adopted the State Building Code permit

19  requirement, Riverside Municipal Code 16.08.020 and 16.08.030 (adopting the State Building

20  Code without altering the permitting provision),[7] fees for permits and plan checks are calculated

21  based on the square footage of the property. Renovations valued between $25,000 to $50,000 are

22  charged a mandatory fee of at least $267. Riverside Building & Safety Division, Building Permit

23  and Plan Check Fees.[8] For more minor electrical, plumbing, and mechanical renovations, there is

24

25    [5] *Available at* http://www.qcode.us/codes/sacramento/.

26    [6] *Available at* http://www.cityofsacramento.org/Online-Services/FeeChargeSearch.aspx?
cu_fee_id=28.

27    [7] *Available at* https://library.municode.com/ca/riverside/codes/code_of_ordinances?node
Id=PTIICOOR_TIT16BUCO_CH16.08BUCO_16.08.020CABUCOADILBUOF.

28    [8] *Available at* https://www.riversideca.gov/cedd/sites/riversideca.gov.cedd/files/pdf/buil

1  generally a $25 permit fee on top of more tailored fees, such as garbage disposal replacement ($5)
2  or water heater replacement ($9 to $56.50 based on energy efficiency). *Id.*

3      32.    In the City of Moreno Valley, which has adopted the State Building Code permit
4  requirement, Moreno Valley Municipal Code 8.20.010 (as amended via Ordinance No. 962,
5  adopted Nov. 5, 2019) (adopting the California Building Code without altering the permitting
6  provision),[9] renovation permit fees are calculated based on square footage, with a minimum plan
7  check fee of $615 and inspection fee of $770. City of Moreno Valley, Schedule of City Fees,
8  Charges and Rates, Fiscal Year 2019-20.[10] There are also miscellaneous permit fees for such
9  improvements as water heater replacement ($60), adding new windows ($305 for the plan check
10  and $576 for the inspection), and re-roofing ($41 for the plan check and at least $155 for the
11  inspection). *Id.*

12      33.    In the City of San Diego, "[n]o structure regulated by the Land Development Code
13  shall be erected, constructed, enlarged, altered, repaired, improved, converted, permanently
14  relocated or partially demolished unless a Building Permit has first been obtained from the Building
15  Official." San Diego Municipal Code §129.0202. Permit fees for remodeling of residential units
16  are calculated based on the unit's square footage, with a minimum plan check fee of $485.19 and
17  inspection fee of $1,339.15 for minor remodels, and a minimum plan check fee of $1,305.09 for
18  non-minor remodels. San Diego Development Services Department, Information Bulletin 501:
19  Construction Permits – Structures, Table 501A.[11] Building permits that require plan review and
20  inspection cost a flat "General Plan Maintenance Fee" of $451 on top of any item-specific fees,
21  such as for roof re-sheathing ($325.62 for inspection), *id.* at Table 501C, or replacement of water
22  heaters ($151.79 for first unit) or HVAC condenser units ($121.95 for first unit). San Diego

23
24

25  ding/BLDG-PERMIT-PLANCHECK-FEES.pdf.

26      [9] *Available at* http://www.moreno-valley.ca.us/cdd/pdfs/Ordinance962.pdf.

27      [10] *Available at* http://www.moreno-valley.ca.us/departments/financial-mgmt-svcs/fin-
    pdf/FeeSchedule.pdf#page=10.

28      [11] *Available at* https://www.sandiego.gov/sites/default/files/dsdib501.pdf.

AMENDED COMPLAINT

1 | Development Services Department, Information Bulletin 103: Fee Schedule for Mechanical,

2 | Electrical, Plumbing/Gas Permits, Tables 1B and 3B.[12]

3 |     34.    In the City of Temecula, which has adopted the State Building Code permit

4 | requirement, Temecula Municipal Code 15.04.010 (adopting the California Building Code without

5 | altering the permitting provision),[13] permit fees for residential remodeling are based on square

6 | footage, with a minimum fee of $241. City of Temecula, 2020-21 User Fee Schedule, Appendix

7 | 1.[14] There are also flat fees for individual renovations, such as re-roofing (at least $210) or

8 | replacing water heaters ($23.70) and air conditioners (at least $23.70, depending on efficiency). *Id.*

9 |     35.    Other communities in California with significant numbers of IH properties have

10 | adopted similar provisions regarding mandatory permitting and fees. *See, e.g.,* Lancaster Municipal

11 | Code 15.04.010 and 15.04.080 (adopting the State Building Code without altering the permit

12 | requirement);[15] Vallejo Municipal Code 12.04.010 (same);[16] Code of the City of Fontana,

13 | California Sec. Sec. 5-61 and Sec. 5-62 (same).[17]

14 | **ii.    Mandatory Penalties for Renovating Homes without Obtaining Permits.**

15 |     36.    Under the California State Building Code, there is a mandatory penalty for

16 | renovating buildings without first obtaining a permit: "Any person who commences any work on

17 | a building, structure, electrical, gas, mechanical or plumbing system before obtaining the necessary

18 | permits shall be subject to a fee established by the building official that shall be in addition to the

19 |

20 |

21 |     [12] *Available at* https://www.sandiego.gov/sites/default/files/dsdib103.pdf.

22 |     [13] *Available at* http://www.qcode.us/codes/temecula/view.php?topic=15-15_04&show

23 | All=1&frames=off.

24 |     [14] *Available at* https://temeculaca.gov/DocumentCenter/View/892/2020-21-User-Fee-Study-Handbook-PDF?bidId=.

25 |     [15] *Available at* https://library.municode.com/ca/lancaster/codes/code_of_ordinances?node Id=TIT15BUCO_CH15.04ADCO_15.04.080FE.

26 |     [16] *Available at* https://library.municode.com/ca/vallejo/ordinances/code_of_ordinances? nodeId=1005409.

27 |

28 |     [17] *Available at* https://library.municode.com/ca/fontana/codes/code_of_ordinances?node Id=CO_CH5BUBURE_ARTIIICABUCO.

AMENDED COMPLAINT

1  required fees." Cal. Code Regs. tit. 24, § 109.4; *see also id.* at § 114.4 (establishing penalties for

2  code violations).

3      37.    As with the permitting requirement, many localities have adopted the State Building

4  Code without substantively amending the penalty provisions. *See, e.g.,* Murrieta Municipal Code

5  15.08.010 (adopting State Building Code without amending the penalties provision)[18] and Perris

6  Municipal Code 16.08.050, 16.08.051 (same).[19]

7      38.    Other cities have amended the State Building Code by setting the amount of the

8  amount penalty.

9      39.    For example, in the City of Los Angeles, whenever construction commences

10 without the proper permit, the building department must impose a minimum "investigation fee" of

11 $400. LAMC 98.0402.[20]

12     40.    Similarly, in Los Angeles County, the minimum investigation fee for unpermitted

13 work is generally $396.10. Los Angeles County Code 107.13.[21] Even if it is determined that an

14 owner was unaware that permits were necessary, the investigation fee may not be less than $198.00.

15 *Id.*

16     41.    In the City of Sacramento, when work commences without a required permit, the

17 city building official "shall charge up to four times all applicable plan review and permit

18 (inspection) fees related to the required permit(s), including, but not limited to, building permits,

19 sign permits and demolition permits." Sacramento City Code 15.08.080.[22] Additionally, all

20

21      [18] *Available at* https://codelibrary.amlegal.com/codes/murrieta/latest/murrieta_ca/0-0-0-
22 22732#JD_Chapter15.08; https://codelibrary.amlegal.com/codes/murrieta/latest/murrieta_ca/0-0-
    0-36602.

23      [19] *Available at* https://library.municode.com/ca/perris/codes/code_of_ordinances?nodeId
24 =COOR_TIT16BUCO_CH16.08BUPLOTCOAD_ARTIINGE_S16.08.050AD2019CABUCO.

      [20] *Available at* http://library.amlegal.com/nxt/gateway.dll/California/lamc/municipalcode/
25 chapterixbuildingregulations/article1buildingsbuildingcode?f=templates$fn=default.htm$3.0$vid
    =amlegal:losangeles_ca_mc$anc=JD_91.106.1.1.

26      [21] *Available at* https://library.municode.com/ca/los_angeles_county/codes/code_of_ordin
27 ances?nodeId=TIT26BUCO_CH1AD_107.13INFEWOWIPE.

      [22] *Available at* https://www.qcode.us/codes/sacramento/view.php?topic=15-15_08-
28 15_08_080&frames=on.

violations of the building code (including the permit requirement) are subject to civil penalties of not less than $250 per day. *Id.* at 15.04.060.

42.    Many localities automatically double the applicable permit fees if work commences without the required permit. *See, e.g.,* Temecula Municipal Code 15.02.040 ("Any person, firm or corporation who shall proceed with or commence work for which a permit is required by these building and construction regulations without first having obtained such permit shall, if subsequently permitted to obtain a permit therefor, pay double the fee fixed for such work[.]");[23] Sacramento County Code, 16.02.080 (amending the State Building Code penalty provision such that "[t]he violation fee shall be twice the amount of the total Building Inspection fees (plan review plus building permit fees) prescribed in Chapter 16.90 of the Sacramento County Code," and "is separate and independent from other fees");[24] San Diego County Code 91.1.109.4.1 (requiring an investigation fee when work violates the building code, which "shall be equal to the amount of the permit fee required by this chapter"); Yucaipa Municipal Code 15.04.020 (same);[25] Palmdale Municipal Code 8.04.200 (same);[26] West Covina Municipal Code 7-18.3 (doubling permit fees);[27] City of Moreno Valley, Schedule of City Fees, Charges and Rates, Fiscal Year 2019-20 (same);[28] City of Burbank, Ordinance No. 19-3,922, 9-1-1-109.4 (same).[29]

## FACTUAL ALLEGATIONS

---

[23] *Available at* http://www.qcode.us/codes/temecula/view.php?topic=15-15_02-15_02_040&frames=off.

[24] *Available at* https://qcode.us/codes/sacramentocounty/view.php?topic=16-16_02-16_02_080&frames=on.

[25] *Available at* http://www.qcode.us/codes/yucaipa/ (see additional "109.7.2 Fee.").

[26] *Available at* https://www.codepublishing.com/CA/Palmdale/#!/Palmdale08/Palmdale0804.html#8.04.200 (see additional "107.13 Investigation Fee for Work without Permit.")

[27] *Available at* https://library.municode.com/ca/west_covina/codes/code_of_ordinances?nodeId=MUCO_CH7BUBURE_ARTIIBUCO_S7-18.3FE.

[28] *Available at* http://www.moreno-valley.ca.us/departments/financial-mgmt-svcs/fin-pdf/FeeSchedule.pdf#page=10 ("For work that is under construction for which no permit has been obtained, the investigation fee shall be equal to the value set forth in this Resolution for permit fees (building, electrical, mechanical, plumbing, etc.)."

[29] *Available at* https://www.burbankca.gov/home/showdocument?id=52334.

AMENDED COMPLAINT

1      43.    Defendant IH has intentionally ignored permitting laws in renovating the homes it

2 purchased to get them on the rental market as soon as possible. This allowed Defendant to evade

3 both permitting fees and increased real estate taxes, and the company avoids carrying an

4 unoccupied home while awaiting permitting approval, allowing Defendant to enter this market with

5 far less expenses than it should have absorbed.

6      44.    Relator has run multiple analyses using proprietary technology to discover and then

7 confirm that Defendant has conducted this fraudulent activity in California and has therefore

8 defrauded cities and counties in California of millions of dollars in permitting fees.[30]

9 **A. IH Made Substantial Structural Renovations on Many of its Single-Family Homes.**

10      45.    When Defendant acquired a home, it began a detailed process to determine the scope

11 and substance of the renovations. As detailed by Defendant in its 2019 10-K:

> [O]ur in-house teams begin the renovation process by preparing a detailed renovation budget and scope of work based on an assessment of each property's major systems and structural features. These include HVAC, roofs, pools, and plumbing and electrical systems. In addition, we also evaluate other features of our homes' fit and finish, including appliances, landscaping, decks and/or patios, and fixtures. During our initial assessment, we also determine the potential for, and potential return on, any value-additive upgrades that may reduce future operating costs or enhance rental demand and, by extension, our ability to realize more attractive rental, occupancy, or turnover rates."

17      46.    Defendant's 'budget' for renovations has been substantial, as shown in the table

18 below.

| Year Ending | Average Renovation Expenditure |
|---|---|
| 2012–2017 | ~$25,000 |
| 2018 | ~$35,000 |
| 2019 | ~$38,000 |

47.    In total, by December 31, 2019, Defendant and its predecessors had invested

approximately $2.3 billion in upfront renovations nationwide in their homes. Defendant typically

performed these renovations in-house.

---

[30] As explained above, permitting fees can encompass plan-check fees, inspection fees, record-keeping and other administrative fees, in addition fees for specific renovations.

AMENDED COMPLAINT

48.     In 2017, Defendant acquired 5,511 single-family homes in California from its merger with Starwood Waypoint Homes ("Starwood"), a real estate investment trust.

49.     Starwood, like Defendant, performed substantial renovations on the properties after purchasing them. In Starwood's Form 10-K for the year ending December 31, 2016, Starwood estimated its "upfront renovation costs [amounted to] 10% to 20% of the purchase price." Considering the average acquisition cost for Starwood was approximately $178,000, that means Starwood spent an average of $26,000 on renovations per home.

50.     As illustrated and explained below, the nature and scope of Defendant's renovations triggered permitting requirements. Defendant demolished sections of its single-family homes, erected additions onto homes, performed substantial electrical and plumbing work, filled and constructed pools, installed permanent air conditioning units, and refurbished the insides of homes. Defendant systematically ignored the required permits for most of its renovations.

**B. IH Knew of the Requirement to Obtain Permits for its Renovations.**

51.     Defendant is a highly sophisticated company that knew of the permit requirements, and has admitted in its SEC submissions that permits for renovations are required by local laws. For example, Defendant wrote in its Form 10-K for the 2019 fiscal year:

> *Compliance with governmental laws, regulations, and covenants that are applicable to our properties or that may be passed in the future, including affordability covenants, permit, license, and zoning requirements, may adversely affect our ability to make future acquisitions, renovations, or dispositions, result in significant costs, delays, or losses, and adversely affect our growth strategy.*
>
> Rental homes are subject to various covenants and local laws and regulatory requirements, including permitting, licensing, and zoning requirements. Local regulations, including municipal or local ordinances, restrictions, and restrictive covenants imposed by community developers may restrict our use of our properties and may require us to obtain approval from local officials or community standards organizations at any time with respect to our properties, including prior to acquiring any of our properties or when undertaking renovations of any of our existing properties. . . Such local regulations may cause us to incur additional costs to renovate or maintain our properties in accordance with the particular rules and regulations. . . We cannot assure you that existing regulatory policies will not adversely affect us or the timing or cost of any future acquisitions, renovations, or dispositions, or that additional regulations will not be adopted that would increase such delays or result in additional costs or losses. Our business and growth strategies may be materially and adversely affected by our ability to obtain permits, licenses

and approvals. Our failure to obtain such permits, licenses, and approvals could have a material adverse effect on us and cause the value of our common stock to decline."

52.     Despite its affirmative disclosure that it understood that there were permitting requirements, Defendants intentionally failed to obtain permits for the vast majority of its renovations.

**C. Relator's Data Analytic Program Uncovered that Defendant Did Not Comply with Permit Requirements.**

53.     Relator identified underpayment of property taxes on many homes acquired in this period, and from further analysis suspected that Defendant had systematically failed to obtain permits in California.

54.     To test the thesis, Relator used proprietary technology to identify specific examples of single-family homes where IH performed substantial renovations that trigger the permit requirement, but failed to seek a permit.[31]

55.     Relator also used proprietary software to compare the percentage of IH's homes for which one or more building permits had been obtained after IH acquired the property, with the percentage of all other homes in the jurisdiction which had had permits pulled in the same period. Relator discovered that IH rarely procured permits for its multi-thousand-dollar renovations, particularly in comparison with rates for other homeowners in the same localities irrespective of the nature of their renovations. That is, IH's large renovations generated substantially fewer permits than the general public's renovations of all sizes.

56.     Both approaches that Relator used to test its thesis confirmed that IH failed to obtain a substantial number of the permits required by law.[32]

---

[31] The software implemented artificial intelligence and machine learning. The software scoured different rental listing websites—i.e., Zillow.com and Invitationhomes.com—to find IH owned homes (generally by identifying the address where the renter is required to send rental payments). The software then accessed the county and city databases of permits and identified what permits were pulled for each property and when the property was purchased by IH. The properties were determined by the Access Parcel Number ("APN"), not the address, to ensure consistency.

[32] This data analysis was done in San Diego, Sacramento, Riverside, Temecula, Moreno Valley and Compton. Los Angeles has also been named as a plaintiff because of IH's organizational structure and its geographical proximity to Compton. IH California employees are organized in 'pods' in close geographical region, and these pods are likely to have the same

14                    Case No. 37-2020-00030619-CU-MC-CTL

### i. The Relator Identified Specific Renovations That Required Permits, But IH Failed to Obtain Them.

57.　Relator sought visual confirmation that a sample of Defendant's homes did receive significant renovations but obtained no permits. Relator's proprietary "lookback" technology was able to access images of homes from the MLS (before the renovations) to compare them with images from the rental advertisements (after the renovations).

58.　For each example illustrated below, Defendant failed to obtain required permits for the renovation. The missing permits identified here may not be a complete list of permits required for each house, but they were clearly required by what the images show.

59.　For each house, Defendant has fraudulently withheld permit related fees—including inspection fees, plan check fees, and administrative fees—and penalties and interest; and deprived the county of increased property taxes.

**Example 1: 5056 College Ave, Riverside CA 92505**

| Before: | After IH installed a new roof (no permits issued): |
|---|---|

 

60.　At 5056 College Avenue in Riverside, California, IH removed shingles from the roof and replaced them. Replacing a roof requires a permit in the City of Riverside. *See* Riverside Building & Safety Division, Building Permit and Plan Check Fees at 2 (listing permit valuation metrics for re-roofing).[33]

operating processes, so fraudulent procedures would persist across the pod. Accordingly, finding fraud in Compton, Riverside, Temecula, and Moreno Valley would presumably lead to the same findings in Los Angeles, Palmdale, Lancaster, San Bernardino, Fontana, Murrieta, Yucaipa, Corona, Perris and Rialto. And finding fraud in Sacramento would presumably lead to the same findings in Fairfield and Vallejo.

[33] *Available at* https://www.riversideca.gov/cedd/sites/riversideca.gov.cedd/files/pdf/building/BLDG-PERMIT-PLANCHECK-FEES.pdf.

1    61.    IH did not obtain a permit for this renovation or any other renovation done on 5056

2    College Avenue.

3    **Example 2: 4488 Jones Avenue, Riverside, CA 92505**

| *Before:* | *After IH added an extension (no permits issued):* |
|---|---|
|  |  |
|  |  |
|  |  |

22

23    62.    At 4488 Jones Avenue, Riverside, CA 92505, Defendant demolished the back-left

24    corner of the house, altered the electrical work in the garage, filled the pool, installed a sliding glass

25    door, and reframed the interior. These renovations require permits in the City of Riverside. *See id.*

26    at 2, 4 (listing permit valuation metrics for general permits, demolition, and swimming pools).[34]

27

28    [34] *See also* Riverside Municipal Code 16.08.020 and 16.08.030 (adopting the State Building
     Code, which requires a permit for demolition, and declining to exempt additional renovations).

AMENDED COMPLAINT

63.     IH did not obtain a permit for this renovation or any other renovation done on 4488 Jones Avenue.

**Example 3: 4378 Snowberry Street, Riverside, CA 92504**

| *Before:* | *After Patio Cover Removed (no permits issued):* |
|---|---|

 

64.     At 4378 Snowberry Street in Riverside, California, IH demolished the home's outdoor patio. Demolition of a structure requires a permit in the City of Riverside. *See id.*

65.     IH did not obtain a permit for this renovation or any other renovation done on 4378 Snowberry Street.

**Example 4: 4490 Jones Avenue, Riverside, CA 92505**

| *Before:* | *After Patio Cover Removed (no permits issued):* |
|---|---|



66.     In March 2013, 4490 Jones Avenue in Riverside, California, had a patio and arbor. After IH purchased the home, it removed the arbor. Again, demolition of a structure requires a permit in the City of Riverside. *See id.* at 2.

67.     IH did not obtain a permit for this renovation or any other renovation done on 4490 Jones Avenue.

AMENDED COMPLAINT

**Example 5: 5351 Central Avenue, Riverside, CA 92504**

| Before: | After Kitchen Remodel (no permits issued): |
|---|---|
|  |  |
|  |  |

68.     At 5351 Central Avenue, Riverside, CA 92504, Defendant obtained no permits for electrical or plumbing and remodeling kitchen, including installing new cabinets, countertops, kitchen island, and appliances. Neither did Defendant obtain a demolition permit for removing kitchen door leading to the storage area. These renovations require permits in Riverside. *See id.* at 2, 4 (listing fees for demolition, electrical, and plumbing permits, including for replacing sinks, garbage disposals, and dishwashers).[35]

69.     IH did procure a permit for the reroofing (not pictured above), but only after the city-imposed Stop Work notice on its work. The stop order and required permit should have alerted IH personnel to the fact that other personnel were choosing to ignore permitting requirements, but no change in approach can be discerned after this date.

---

[35] *See also* Riverside Municipal Code 16.08.020 and 16.08.030 (adopting the State Building Code, which requires a permit for demolition, and declining to exempt additional renovations)

Case No. 37-2020-00030619-CU-MC-CTL

AMENDED COMPLAINT

**Example 6: 10480 Hole Ave, Riverside, CA 92505**

| *Before:* | *After Air Conditioner Removed (no permits issued):* |
|---|---|
|  |  |

70.     At 10480 Hole Avenue in Riverside, Defendants removed the air conditioner on the outside of the building. Upon information and belief, IH installed a central air conditioner inside the house. Installing permanent central air conditioners requires a permit in Riverside. *See id.* at 4 (listing fees for "A/C Units").[36]

71.     IH did not obtain a permit for this renovation or any other renovation done on 10480 Hole Avenue.

**Example 7: 4089 Lively Street, Riverside, CA 92505**

| *Before:* | *After Garage Door Replaced (no permits issued):* |
|---|---|
|  |  |

72.     At 4089 Lively Street in Riverside, Defendant installed new metal roll up garage door. Installing a new garage door requires a permit in the City of Riverside. *See id.*

---

[36] *See also* Riverside Municipal Code 16.08.020 and 16.08.030 (declining to exempt renovations in addition to the State Building Code exemptions)

AMENDED COMPLAINT

73.     IH did not obtain a permit for this renovation or any other renovation done on 4089 Lively Street.

**Example 8: 3483 Hiawatha Place, Riverside CA 92505**

| *Before:* | *After Substantial Plumbing Work (no permits issued):* |
|---|---|
|   |  |

74.     At 3483 Hiawatha Place in Riverside, Defendant moved the sink from one side to the other. This would require a substantial change to the house's plumbing system. Plumbing permits are required in Riverside. *See id.* (listing fees for plumbing permits, including replacing sinks and garbage disposals).[37]

75.     IH did not obtain a permit for this renovation or any other renovation done on 3483 Hiawatha Place.

---

[37] *See also* Riverside Municipal Code 16.08.020 and 16.08.030 (declining to exempt the above renovations in addition to the State Building Code exemptions)

AMENDED COMPLAINT

**Example 9: 15180 Rio Grande Drive, Moreno Valley CA 92551**

| *Before:* | *After Solar Panel Removed (no permits issued):* |
|---|---|
|  | |

76.     At 15180 Rio Grande Drive in Moreno Valley, Defendant removed a solar water heater from home. This action requires a permit in the City of Moreno Valley. *See* City of Moreno Valley, Schedule of City Fees, Charges and Rates, Fiscal Year 2019-20 (listing permit fee for replacing water heater).[38]

77.     IH did not obtain a permit for this renovation or any other renovation done on 15180 Rio Grande Drive.

**Example 10: 24884 Lorna Drive, Moreno Valley, CA 92553**

| *Before:* | *After Renovation (no permits issued):* |
|---|---|
|  |  |

---

[38] *Available at* available at http://www.moreno-valley.ca.us/departments/financial-mgmt-svcs/fin-pdf/FeeSchedule.pdf#page=10.

*See also* Moreno Valley Municipal Code 8.20.010 (as amended via Ordinance No. 962, adopted Nov. 5, 2019) (adopting the California Building Code without exempting water heater replacements), *available at* http://www.moreno-valley.ca.us/cdd/pdfs/Ordinance962.pdf.

AMENDED COMPLAINT



78.     At 24884 Lorna Drive, Moreno Valley, CA 92553, Defendant installed a new stove and dishwasher, refurbished the kitchen counter, replaced the cabinets, and installed a new garage door. These actions require permits in Moreno Valley. *See id.* (listing permit fees for dishwashers, electric ranges, and other renovations).[39]

79.     IH did not obtain a permit for this renovation or any other renovation done on 24884 Lorna Drive.

**Example 11: 25433 Renoir Avenue, Moreno Valley CA 92553**

| *Before:* | *After New Garage Door Installed (no permits issued):* |
| --- | --- |
|  | |

80.     At 25433 Renoir Avenue in Moreno Valley, Defendant installed a new automatic garage door. This action requires a permit in the City of Moreno Valley. *See id.* (listing permit fees for door replacements).[40]

---

[39] *Available at* available at http://www.moreno-valley.ca.us/departments/financial-mgmt-svcs/fin-pdf/FeeSchedule.pdf#page=10.

*See also* Moreno Valley Municipal Code 8.20.010 (as amended via Ordinance No. 962, adopted Nov. 5, 2019) (adopting the California Building Code without exempting any of the above renovations), *available at* http://www.moreno-valley.ca.us/cdd/pdfs/Ordinance962.pdf.

[40] *Available at* available at http://www.moreno-valley.ca.us/departments/financial-mgmt-svcs/fin-pdf/FeeSchedule.pdf#page=10.

1    81.    IH did not obtain a permit for this renovation or any other renovation done on 25433

2   Renoir Avenue.

3   **Example 12: 30361 Red River Circle, Temecula, CA 92591**

| *Before:* | *After New Central Air Conditioner Installed (no permits issued):* |
|---|---|
|  |  |

11    82.    At 30361 Red River Circle, Temecula, CA 92591, Defendant installed new central

12   air conditioner. This action requires a permit in the City of Temecula. *See* City of Temecula, 2020-

13   21 User Fee Schedule, Appendix 1 at 35 (listing the permit fees for air conditioners).[41]

14    83.    IH did not obtain a permit for this renovation or any other renovation done on 30361

15   Red River Circle.

16   **Example 13: 32456 Hupp Drive, Temecula, CA 92592**

| *Before:* | *After Pool Filled (no permits issued):* |
|---|---|
|  |  |

---

26    *See also* Moreno Valley Municipal Code 8.20.010 (as amended via Ordinance No. 962, adopted Nov. 5, 2019) (adopting the California Building Code without exempting garage door replacements)

27    [41] *Available at* https://temeculaca.gov/DocumentCenter/View/892/2020-21-User-Fee-Study-Handbook-PDF?bidId=.

84.   At 32456 Hupp Drive Temecula, Temecula, CA 92592, Defendant filled the pool without a valid permit. Digging up the earth and filling a large pool requires a permit in the City of Temecula. *See id.* at 31 (listing the permit fees associated with pools). IH did not obtain a permit for this renovation. There was an inspection after the pool was filled without a permit, and IH failed that inspection.

**Example 14: 25834 Brodiaea Ave in Moreno Valley, CA 92553**

Photos from a 2013 Listing Showing a
Remodeled Kitchen



85.   At 25834 Brodiaea Ave in Moreno Valley, CA 92553, Defendant failed to obtain a permit for remodeling the kitchen. Upon information and belief, Defendant installed appliances including a stove/oven. On August 21, 2018, a code case was issued to the home because of a non-working stove/oven with a possible gas leak. Remodeling a kitchen and installing kitchen appliances require permits in Moreno Valley. *See* City of Moreno Valley, Schedule of City Fees, Charges and Rates, Fiscal Year 2019-20 (listing permit fee for ovens and ranges).[42]

86.   IH did not obtain a permit for this renovation or any other renovation done on 25834 Brodiaea Ave.

_____

[42] *Available at* available at http://www.moreno-valley.ca.us/departments/financial-mgmt-svcs/fin-pdf/FeeSchedule.pdf#page=10.

*See also* Moreno Valley Municipal Code 8.20.010 (as amended via Ordinance No. 962, adopted Nov. 5, 2019) (adopting the California Building Code without exempting water heater replacements), *available at* http://www.moreno-valley.ca.us/cdd/pdfs/Ordinance962.pdf.

AMENDED COMPLAINT

1 **Example 15: 1311 S. Cliveden Ave. in Compton, CA 90220**

2      87.    In another example, at 1311 S. Cliveden Ave., Compton, CA 90220, Defendant

3 installed a new garage door with no permits. This action requires a permit in the City of Compton.

4     **ii.    IH Has Procured Far Fewer Permits Than Other Homeowners.**

5      88.    Relator also compared the percentage of Defendant's homes for which one or more

6 building permits had been obtained after Defendant acquired the property with the percentage of

7 all other homes in the jurisdiction which had had permits pulled in the same time period. The data

8 confirms the hypothesis that Defendant rarely obtained required permits.

9      89.    For example, in Moreno Valley, 20.1% of all homes had pulled building permits in the

10 time frame analyzed, while IH had pulled permits on only 3.6% of its homes.

11      90.    As illustrated above, Defendant IH frequently performed the type of renovations that

12 require a permit in Moreno Valley. Further, IH spend an average of approximately $25,000 per

13 renovation.

14      91.    This suggests that IH should have obtained permits on a very substantial number of

15 its homes, rather than only 3.6% of them. The disparity in the rate at which IH pulls permits compared

16 to other single-family homeowners is consistent across the other cities in California, as shown in the

17 table below:

18
19

| County/City | IH Owned Single-Family Homes[43] | Permits on IH Owned Homes (%) | Non-IH Owned Single-Family Homes in the County | Permits for Non-IH Owned Homes | Difference |
|---|---|---|---|---|---|
| Riverside (since 2013) | 517 | 12 (2.3%) | 31,144 | 3,087 (9.9%) | 7.6% |
| Moreno Valley (since 2012) | 526 | 12 (3.6%) | 17,703 | 3,553 (20.1%) | 16.5% |
| San Diego (since 2012) | 82 | 13 (15.9%) | 59,287 | 14,870 (25.1%) | 9.2% |
| Sacramento (since 2012) | 971 | 99 (10.2%) | 98,073 | 20,341 (20.7%) | 9.5% |

27   [43] The current number of IH single-family homes may differ depending on whether IH acquired

28 or sold houses after the analyses were completed. Relator completed the analyses between April
and June 2020 and therefore includes the Starwood homes acquired homes.

92.     This comparison, compelling as it is, very likely understates the gross disparity between Defendant's conduct and others' conduct because Defendant spent $25,000 to $38,000 to renovate homes that may have been in distressed conditions when purchased after the financial crisis, while the other homes in the each city include many owned by laypersons who would have been less likely to spend heavily on renovations, or to need them at all.

93.     In addition, the non-Defendant group of single-family homes includes homes that were not distressed when purchased, which do not usually require any major work. As a general practice, Defendant did not acquire these types of homes, but focused on purchasing foreclosed properties and "bargain" buys. Accordingly, one may reasonably infer that IH properties would be *more* likely to require permits than the general population. Instead, IH has a starkly lower percentage than its peers.

**D. IH Has Caused Substantial Damage to the Public Through This Conduct in terms of Avoided Fees, Underpaid Taxes, and Safety Risks to Residents.**

94.     Defendant's fraudulent business practices have harmed many cities and counties in California, and their residents. Defendant has harmed cities and counties by depriving them of inspection and permit fees, property taxes, penalties and interest.

95.     By failing to obtain permits, Defendants have also created great risks to tenants by avoiding safety oversight for renovations to their homes. Permits are required for structural renovations, electrical work and other important renovations because errors in this work expose residents to physical and financial harm. Thus, permits are among the most important building requirements under California and municipal law.

96.     As of December 31, 2019, Defendant IH owned 12,461 California properties. Defendant sharply increased its amount of properties owned in California in 2017 (primarily as a result of the Starwood merger), as shown in the table below:

| Year Ending | IH Single-Family Homes Owned |
|---|---|
| 2012 – 2016 | 7,509 |
| 2017 | 12,990 |
| 2018 | 12,822 |
| 2019 | 12,461 |

97. As "the average range [of permit cost] is between $441 and $2,001,"[44] and IH unlawfully failed to obtain required permits on most of its homes, IH has defrauded the states and counties of millions of dollars in permitting fees. This does not include inspection fees or property taxes, or the interest and penalties on these amounts.

## VI. CLAIMS FOR RELIEF

## COUNT ONE

*Cal. Gov't Code 12652(a)(7)*
*On Behalf of the Cities of San Diego, Sacramento, Moreno Valley, Riverside, Los Angeles,*
*Compton, Temecula, Palmdale, Lancaster, San Bernardino, Vallejo, Fontana, Murrieta,*
*Fairfield, Perris, Yucaipa, Corona, Rialto and Roes 1–250*

98. Plaintiff-Relator repeats and realleges each and every allegation contained herein.

99. This is a claim for penalties and treble damages under the California False Claims Act, Cal. Gov't Code § 12650, *et seq.*

100. By virtue of the acts described above, Defendant knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State or to any political subdivision within the meaning of Cal. Gov't Code § 12651(a)(7).

101. Defendant committed the fraudulent conduct in hundreds of political subdivisions of the State of California.

102. As a result, monies from the political subdivisions were lost through Defendant's concealment, avoidance, and/or decrease of its obligation to pay or transmit money to the State and its political subdivisions.

103. Therefore, the political subdivisions have been damaged in an amount to be proven at trial.

104. Additionally, the political subdivisions are entitled to the maximum penalty of $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Public Law

---

[44] *How Much Does a Building Permit Cost?* ANGIE'S LIST (Mar. 1, 2018),
https://www.angieslist.com/articles/how-much-does-building-permit-cost.htm ("The typical [building permit's] price is $1,221 while the average range is between $441 and $2,001.")

101–410 Section 5, 104 Stat. 891, note following 28 U.S.C. Section 2461, for each and every act of concealment, avoidance, and decreased obligation committed by Defendants described herein.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants as follows:

    a.  That Defendants cease and desist from violating Cal. Gov't Code § 12650 *et seq.*;

    b.  That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the political subdivisions have sustained because of Defendants' actions, plus a civil penalty for each violation of Cal. Gov't Code § 12651 proven at trial;

    c.  That Relator be awarded the maximum amount allowed pursuant to Cal. Gov't Code § 12652(g), including the costs and expenses of this action and reasonable attorneys' fees; and

    d.  Such other, further and different relief, whether preliminary or permanent, legal or equitable, as the Court deems just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff-Relator hereby demands a trial by jury on all issues so triable.

Dated: October 20, 2020

Respectfully submitted:

Ed Chapin (CA Bar No. 05328)
**SANFORD HEISLER SHARP, LLP.**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4251
Facsimile: (619) 577-4250
Email: echapin@sanfordheisler.com

H. Vincent McKnight, *Pro Hac Vice forthcoming*
**SANFORD HEISLER SHARP, LLP.**
700 Pennsylvania Ave. SE, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5201
Email: vmcknight@sanfordheisler.com

AMENDED COMPLAINT

Leonard B. Simon (California Bar No. 58310)
**LAW OFFICES OF LEONARD B. SIMON**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644
Email: lens@rgrdlaw.com

*Attorneys for the Plaintiff-Relator Blackbird Special
Project, LLC*

AMENDED COMPLAINT



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

<u>NOTICE:</u> **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
**(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
**(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and***
**(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Gives parties more control over the dispute resolution process and outcome | |
| • Preserves or improves relationships | |

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration,* they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration,* any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution program is funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
   For Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | | *FOR COURT USE ONLY* |
|---|---|---|
| STREET ADDRESS: 330 West Broadway | | |
| MAILING ADDRESS: 330 West Broadway | | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | | |
| BRANCH NAME: Central | | |
| PLAINTIFF(S): City of San Diego et.al. | | |
| DEFENDANT(S): INVITATION HOMES INC | | |
| SHORT TITLE: CITY OF SAN DIEGO VS INVITATION HOMES INC [IMAGED] | | |
| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | | CASE NUMBER: 37-2020-00030619-CU-MC-CTL |

Judge: Eddie C Sturgeon                                             Department: C-67

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                     ☐ Non-binding private arbitration

☐ Mediation (private)                                   ☐ Binding private arbitration

☐ Voluntary settlement conference (private)     ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                        ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                         Date: _____

_____                         _____
Name of Plaintiff                                             Name of Defendant

_____                         _____
Signature                                                      Signature

_____                         _____
Name of Plaintiff's Attorney                                Name of Defendant's Attorney

_____                         _____
Signature                                                      Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

IT IS SO ORDERED.

Dated: 09/01/2020                                             _____
                                                                JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)          **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**                     Page: 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:     330 W Broadway
MAILING ADDRESS:    330 W Broadway
CITY AND ZIP CODE:  San Diego, CA 92101-3827
BRANCH NAME:        Central
TELEPHONE NUMBER:   (619) 450-7067

PLAINTIFF(S) / PETITIONER(S):     City of San Diego et.al.

DEFENDANT(S) / RESPONDENT(S):  INVITATION HOMES INC

CITY OF SAN DIEGO VS INVITATION HOMES INC [IMAGED]

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2020-00030619-CU-MC-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Eddie C Sturgeon                    Department: C-67

**COMPLAINT/PETITION FILED:** 08/31/2020

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|

Due to the COVID-19 pandemic, all hearings will be conducted remotely until further notice. Absent an order of the court, personal appearances at the hearing will not be allowed. For information on arranging telephonic or video appearances, contact CourtCall at (888)882-6878, or at www.courtcall.com. Please make arrangements with CourtCall as soon as possible.

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

**NOTICE OF CASE ASSIGNMENT**



# Superior Court of California
## County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.

This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.



## Superior Court of California
## County of San Diego

# NOTICE OF ASSIGNMENT
# TO IMAGING DEPARTMENT

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website. This Program will be expanding to other civil courtrooms over time.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

# Please refer to the General Order - Imaging located on the San Diego Superior Court website at:

http://www.sdcourt.ca.gov/CivilImagingGeneralOrder