Melinda Haag (SBN: 132612)
Randall S. Luskey (SBN: 240915)
**PAUL, WEISS, RIFKIND, WHARTON &**
   **GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: (628) 432-5100
Fax: (628) 232-3101
rluskey@paulweiss.com
mhaag@paulweiss.com

*Attorneys for Defendant*
*Invitation Homes Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF MORENO VALLEY, CITY OF RIVERSIDE, CITY OF LOS ANGELES CITY OF COMPTON, CITY OF TEMECULA, CITY OF PALMDALE, CITY OF LANCASTER, CITY OF SAN BERNARDINO, CITY OF VALLEJO, CITY OF FONTANA, CITY OF MURRIETA, CITY OF FAIRFIELD, CITY OF PERRIS, CITY OF YUCAIPA, CITY OF CORONA, CITY OF RIALTO AND ROES 1-250, EX. REL BLACKBIRD SPECIAL PROJECT, LLC, <br><br>        Plaintiff-Relators, <br><br> - against - <br><br> INVITATION HOMES, INC., a Maryland Corporation, <br><br>        Defendant. | Case No. 22-CV-260-L-MDD <br><br> **DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> **No Oral Argument Pursuant to Local Rule** <br><br> Date: July 25, 2022 <br> Time: 10:30 a.m. <br> Ctrm.: 5b <br> Hon.: M. James Lorenz |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 25, 2022 at 10:30 a.m., or as soon thereafter as the matter may be heard, Defendant Invitation Homes Inc. ("Invitation Homes" or "Defendant") hereby moves the Court, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), for an order dismissing Plaintiff-Relator Blackbird Special Project LLC's First Amended Complaint (the "Complaint") in the above-captioned action, without leave to amend.

In support of this Motion, Defendant relies on, and files herewith, the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss the First Amended Complaint.

The grounds for this Motion are as follows:

*First*, Relator's claim is barred by the Public Disclosure Bar of the California False Claims Act;

*Second*, the Complaint should be dismissed for failure to state a claim;

*Third*, the Complaint fails to plead fraud with the level of particularity required by Fed. R. Civ. P. 9(b).

This Motion is based upon Defendant's Notice of Motion and the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, and such other argument and matters as the Court may consider.

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS ....................................................................4

    A.    Procedural Background.............................................4

    B.    The Parties...............................................................5

    C.    Factual Background ................................................5

LEGAL STANDARD .........................................................................7

ARGUMENT.....................................................................................8

I.    RELATOR'S CLAIMS ARE BARRED BY THE PUBLIC DISCLOSURE DOCTRINE, CAL. GOV'T CODE § 12652(D)(3).....................................................................8

    A.    The Complaint is Based Entirely Upon Publicly Available Information ............................................10

    B.    Relator Is Not an "Original Source" of the Public Disclosure...........................................................13

II.    RELATOR FAILS TO STATE A REVERSE FALSE CLAIM .................14

    A.    Relator Fails to Allege Any Specific False Claims ...........................15

        1.    Relator Fails to Allege Any Specific Renovations with the Requisite Particularity .................................15

        2.    Relator Fails to Allege with the Requisite Particularity that IH Failed to Obtain Required Permits ...............................................................17

    B.    Relator Fails to Allege a Scheme with the Requisite Particularity that Warrants the Inference of Any False Claims ...............................................................18

    C.    Relator Fails to Adequately Allege the Requisite Scienter ...............23

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE......................................................................23

CONCLUSION................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A-1 Ambulance Serv., Inc.* v. *California*,
    202 F.3d 1238 (9th Cir. 2000)................................................................11, 12, 14

*A1 Procurement, LLC* v. *Thermcor, Inc.*,
    2017 WL 9478501 (E.D. Va. Apr. 4, 2017)............................................11

*Adams* v. *Johnson*,
    355 F.3d 1179 (9th Cir. 2004)..................................................................7, 18

*Amphastar Pharms. Inc.* v. *Aventis Pharma SA*,
    856 F.3d 696 (9th Cir. 2017)....................................................................9

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ................................................................................7

*Bates* v. *Mortg. Registration Sys., Inc.*,
    694 F.3d 1076 (9th Cir. 2012)..................................................................11

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ................................................................................7, 13

*Burgis* v. *New York City Dep't of Sanitation*,
    798 F.3d 63 (2d Cir. 2015) ......................................................................20

*United States ex rel. Cafasso* v. *Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011)..................................................................14, 19, 22

*United States ex rel. Calva* v. *Impac Secured Assets Corp.*,
    2018 WL 6016152 (C.D. Cal. June 12, 2018)........................................12

*United States ex rel. Casady* v. *Am. Int'l Grp., Inc.*,
    2013 WL 1702777 (S.D. Cal. Apr. 19, 2013) ........................................8, 10, 11, 12

*United States* v. *Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011)....................................................................7, 24

*United States ex rel. D'Agostino* v. *EV3*,
    153 F. Supp. 3d 519 (D. Mass. 2015)......................................................19

*United States ex rel. Durkin* v. *County of San Diego*,
    300 F. Supp. 3d 1107 (S.D. Cal. 2018) ...................................................24

*Ebeid ex rel. United States* v. *Lungwitz*,
    616 F.3d 993 (9th Cir. 2010)....................................................................14, 18

*United States ex rel. Fine* v. *Chevron, U.S.A., Inc.*,
   72 F.3d 740 (9th Cir. 1995) ................................................................... 1

*United States ex rel. Fryberger* v. *Kiewit Pac. Co.*,
   41 F. Supp. 3d 796 (N.D. Cal. 2014) ...................................................... 9

*California ex rel. Grayson* v. *Pac Bell Tel. Co.*,
   48 Cal. Rptr. 3d 427 (Cal. Ct. App. 2006) .......................................... 1, 9

*United States ex rel. Green* v. *Serv. Contract Educ.& Training Tr. Fund*,
   843 F. Supp. 2d 20 (D.D.C. 2012) ........................................................ 12

*United States ex rel. Harper* v. *Muskingum Watershed Conserv. Dist.*,
   842 F.3d 430 (6th Cir. 2016) ................................................................ 24

*United States ex rel. Hong* v. *Newport Sensors, Inc.*,
   2016 WL 8929246 (C.D. Cal. May 19, 2016) ...................................... 12

*Integra Med. Analytics LLC* v. *Providence Health & Servs.*,
   854 F. App'x 840 (9th Cir. 2021) .................................................... 12, 13

*Leadsinger, Inc.* v. *BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ................................................................ 25

*Lesnik* v. *Eisenmann SE*,
   374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................... 7

*Manzarek* v. *St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ................................................................ 7

*United States* v. *Mariner Health Care, Inc.*,
   552 F. Supp. 3d 938 (N.D. Cal. 2021) ...................................... 19, 20, 23

*United States ex rel. Mateski* v. *Raytheon Co.*,
   816 F.3d 565 (9th Cir. 2016) .................................................................. 9

*United States ex rel. MC2 Sabtech Holdings, Inc.* v. *GET Engineering Corp.*,
   2022 WL 174021 (S.D. Cal. Jan. 18, 2022) ........................................ 12

*United States ex rel. Patriarca* v. *Siemens Healthcare Diagnostics, Inc.*,
   295 F. Supp. 3d 186 (E.D.N.Y. 2018) .................................................. 12

*United States* v. *Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .................................................................. 4

*Roe* v. *Stanford Health Care*,
   2022 WL 796798 (9th Cir. Mar. 15, 2022) .......................................... 14

*United States ex rel. Rosner* v. *WB/Stellar IP Owner, L.L.C.*,
   739 F. Supp. 2d 396 (S.D.N.Y. 2010) .................................................. 11

*Schindler Elevator Corp.* v. *United States ex rel. Kirk*,
   563 U.S. 401 (2011) .........................................................................9, 11, 13

*Semegen* v. *Weidner*,
   780 F.2d 727 (9th Cir. 1985) ................................................................ 8

*United States* v. *United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ...................................................2, 8, 16

*United States* v. *Valley Campus Pharmacy, Inc.*,
   2021 WL 4816648 (C.D. Cal. June 23, 2021) ................................. 12

*Vess* v. *Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................ 8

*United States ex rel. Wall* v. *Vista Hospice Care, Inc.*,
   2016 WL 3449833 (N.D. Tex. June 20, 2016) ............................... 21

*City of Hawthorne ex rel. Wohlner* v. *H&C Disposal Co.*,
   1 Cal. Rptr. 3d 312 (Cal. Ct. App. 2003) ......................................... 9

*United States ex rel. Worsfold* v. *Pfizer Inc.*,
   2013 WL 6195790 (D. Mass. Nov. 22, 2013) ........................... 20, 22

*United States ex rel. Zizic* v. *Q2Administrators, LLC*,
   728 F.3d 228 (3d Cir. 2013) ............................................................. 12

**Statutes**

Cal. Code Regs. tit. 24, § 105.2 ............................................................ 6, 17

Cal. Gov't Code § 12650(b)(3)..................................................................... 24

Cal. Gov't Code § 12651(a)(7) ............................................................... 14, 23

Cal. Gov't Code § 12652(d)(3)................................................................. 8, 9, 13

Moreno Valley Municipal Code § 8.20.010 ............................................ 17

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .............................................................. 1, 5, 7, 15

Fed. R. Civ. P. 201(b) .............................................................................. 4

Merriam Webster Dictionary, https://www.merriam-
   webster.com/dictionary/distressed ............................................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Defendant Invitation Homes Inc. ("IH") hereby moves to dismiss the First Amended Complaint ("Complaint") filed by Plaintiff-Relator Blackbird Special Project, LLC ("Relator"), in its entirety, because the Complaint is barred by the Public Disclosure Bar of the California False Claims Act ("CFCA"), fails to state a claim upon which relief can be granted under the CFCA, and fails to plead its CFCA claim with the requisite particularity.

## PRELIMINARY STATEMENT

The CFCA was enacted to incentivize corporate insiders who are "privy to a fraud on the government to blow the whistle." *United States ex rel. Fine* v. *Chevron, U.S.A., Inc.*, 72 F.3d 740, 742 (9th Cir. 1995). The CFCA was not designed to encourage private third-party companies without any inside information to mine publicly-available information on the internet in order to manufacture allegations of false claims. In fact, CFCA lawsuits brought by such third-party outsiders pose a serious potential for abuse:

> *[Q]ui tam* actions . . . present the danger of parasitic exploitation of the public coffers by opportunistic plaintiffs who have ***no significant information to contribute of their own***. Providing cash bounties to freeloaders does not serve the purpose of the FCA to protect the public fisc.

*California ex rel. Grayson* v. *Pac Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 430 (Cal. Ct. App. 2006) (emphasis added) (internal quotation marks and citation omitted).

That concern is on full display here. Relator, a third-party company incorporated just a few months before the filing of this lawsuit, purportedly uses "technology" to review and analyze various county websites and real estate listings nationwide, including in California. Using resources available to anybody with an internet connection, Relator simply visited some of the most popular real estate websites in the nation and the public-facing permitting websites of California

governmental agencies, repackaged the information it found there, and concocted unfounded and conclusory allegations that IH is engaged in a state-wide scheme to avoid paying permitting fees for renovations it undertakes on the single-family homes that it acquires.

The Complaint should be dismissed in its entirety for three reasons.

First, the Complaint should be dismissed under the CFCA's Public Disclosure Bar because the information about renovations and permits on which it relies has already been publicly disclosed, primarily through government reports. Courts routinely dismiss cases brought by relators who rely on publicly-available information and do not have independent knowledge of the alleged fraud.

Second, the Complaint fails to plead the necessary elements of a CFCA claim with the level of particularity required by Rule 9(b), which obligates a plaintiff to "allege the who, what, when, where, and how of the misconduct charged." *United States* v. *United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). In an effort to support the unreasonable inference that IH was engaged in a scheme to intentionally defraud municipalities throughout California, Relator presents two forms of analysis, both of which are manifestly unreliable.

As an initial matter, Relator identifies 15 residences (out of the approximately 12,000 homes owned by IH in California) where IH supposedly conducted renovations without obtaining necessary permits. Relator bases this allegation exclusively on a collection of grainy "before" and "after" photographs that it found on the internet, which purport to demonstrate that someone, at some unknown point in time, made certain renovations to each home, including new roofs, garage doors, appliances, and other renovations. But *all* of these photos are undated, no source is identified for *any* of them, and it is obvious from the face of the Complaint that certain of them actually *contradict* Relator's own allegations. Relator has also, importantly, failed to allege *when* IH acquired each property and *when* each challenged renovation took place. This pleading deficiency is fatal to

Relator's claims: the Complaint must allege—with factual particularity—that ***IH*** actually performed the allegedly unpermitted renovations on each of these 15 homes before it can state a claim that IH committed a violation of the CFCA. Moreover, certain of the challenged renovations, such as the installation of kitchen cabinets and countertops, plainly ***do not require permits*** under the California Building Code. And although the Complaint bases its brazen conclusion that IH failed to obtain permits entirely on Relator's review of the websites of California municipalities, Relator fails to mention that at least one of these cities, Temecula, ***does not even post its permitting records online***. Accordingly, all of the allegations about the 15 homes rest on unsupported factual inferences.

The Complaint then presents a statistical analysis purporting to show that IH obtained permits for renovations less often than other homeowners. But Relator's glib, incomplete analysis falls well short of the Rule 9(b) standard. Although Relator supposedly has access to sophisticated proprietary software, the Complaint's statistical analysis curiously covers only four of the 18 municipalities that Relator seeks to represent, suggesting that it has cherry-picked only a few examples that allegedly support its allegations. Moreover, the Complaint fails to describe its statistical analysis in a way that gives it any empirical reliability. Instead, it merely advances the simplistic assumption that IH should have applied for permits at the same or higher rates as other homeowners in each California municipality in which IH operates. The Complaint provides no credible reason, however, why the permitting activity of other homeowners is an appropriate benchmark for IH's operations, and it ignores obvious alternative explanations for the statistical disparities it claims to have identified—such as that many of the renovations IH undertakes are cosmetic in nature and do not require permits under local building codes.

Third, the Complaint fails to adequately allege the requisite scienter, resting only on the unremarkable proposition that IH generally knew about the existence

of permitting regimes nationwide. Nowhere, however, does Relator allege that anyone at IH knew that IH's contractors had failed to obtain certain permits for the 15 homes identified in the Complaint or for some larger group of homes in California. Moreover, as the Complaint acknowledges, IH acquired approximately 5,500 of its approximately 12,000 homes in California when it merged with Starwood Waypoint Homes in 2017. Although Relator claims that Starwood was engaged in the same intentional scheme to avoid paying permitting fees for renovations, the Complaint contains **no** factual allegation that ***Starwood*** knew that it had not obtained required permits.

In sum, although Relator has attempted to dress up the Complaint by using buzzwords such as "artificial intelligence" and "proprietary software," the Court should see past its flawed allegations and unreliable statistical analysis and recognize this case for what it really is: a manufactured story, unsupported by particularized allegations, that attempts to pawn off information already in the public domain as its own.

For these and the reasons set forth below, the Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

### A. Procedural Background

On August 31, 2020, Relator filed this action in the Superior Court of the State of California, San Diego County, on behalf of 18 California municipalities.[2]

---

[1] In addition to the Complaint, the facts below are drawn from Invitation Homes' website and its 2019 Form 10-K ("Form 10-K"), both of which are incorporated by reference into the Complaint or are otherwise judicially noticeable. Fed. R. Civ. P. 201(b); *United States* v. *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The same is true for the property rental and municipal websites referred to below, *infra* nn. 4-8, which Relator relies on to plead its claims, Compl. ¶¶ 53-93. *See Ritchie*, 342 F.3d at 908.

[2] Compton, Corona, Fairfield, Fontana, Lancaster, Los Angeles, Moreno Valley, Murrieta, Palmdale, Perris, Rialto, Riverside, Sacramento, San Bernardino, San Diego, Temecula, Vallejo, and Yucaipa.

On October 20, 2020, Relator filed its First Amended Complaint. The Attorney General and the municipalities on whose behalf the Complaint was brought either expressly declined to intervene in this Action or did not do so within the statutorily prescribed time period. On January 28, 2022, after the Complaint was unsealed, Relator served IH. On February 25, 2022, IH removed the case to this Court. IH now moves to dismiss the action under Fed. R. Civ. P. 9(b) and 12(b)(6).

**B.    The Parties**

Invitation Homes Inc., a publicly traded company, is a leading owner and operator of single-family rental homes for lease. *Id.* ¶ 14; Form 10-K at 6. IH's predecessor entity was founded in 2012.[3] IH owns more than 12,000 homes in cities across California, approximately 5,500 of which were acquired in 2017 as a result of IH's merger with Starwood Waypoint Homes ("Starwood"). Compl. ¶¶ 16, 96; Form 10-K at 6.

Relator Blackbird Special Project, LLC is a Delaware Limited Liability Corporation that was incorporated in March 2020, just five months before the filing of the initial Complaint. Compl. ¶ 13. Relator, in conjunction with a related company called Deckard Technologies, Inc., uses purportedly proprietary technology to mine data concerning real estate. *Id.* Relator claims that it used this technology to "scour[] different rental listing websites to find IH-owned homes" and then "accessed the county and city databases of permits and identified what permits were pulled for each property, and when the property was purchased by IH." *Id.* ¶ 54 & n.31.

**C.    Factual Background**

The California State Building Code, which has been adopted in identical or near-identical form by the relevant municipalities in this Action, requires written permits for certain types of renovation work performed on a building. Compl. ¶ 26. Payment of a fee is required to obtain these permits, and the costs might vary

---

[3] Invitation Homes, Our Story, https://www.invitationhomes.com/about-us.

depending on the value of the renovation. *Id.* ¶¶ 28-34.  A person who undertakes construction work on a building without a permit, where a permit was required, is subject to a penalty in addition to the required fees. *Id.* ¶ 36.  Not all renovations require permits, however.  Indeed, the statute contains numerous exceptions for certain cosmetic changes and minor repairs and replacements. *See* Cal. Code Regs. tit. 24, § 105.2.  For example, the California Building Code exempts "[p]ainting, papering, tiling, carpeting, cabinets, countertops and similar finish work" from the permitting requirement. *Id.*  It also exempts certain work on one-story detached structures, retaining walls, fences, sidewalks, driveways, movable fixtures, and window awnings, as well as minor repair and maintenance of electrical equipment, portable heating and cooling appliances, and stoppage of leaks in plumbing systems. *Id.*

Many, but not all, building permits obtained by homeowners are made publicly available on the websites of the relevant municipal entities. *See* Compl. ¶ 54 n.31.  These government records contain information such as address, permits pulled, type of work, contractor name, total fees, and often owner.[4]

Relator alleges that IH has "systematically failed" to obtain required permits at thousands of its properties in 18 California municipalities, thus knowingly depriving the state of permitting fees and related penalties. *See id.* ¶¶ 1-7, 43, 52-53.  The Complaint also alleges that IH's failure to apply and pay for permits resulted in unpaid property taxes because county assessors were not alerted to improvements on IH's properties that would have triggered reassessment and resulted in higher property valuations. *Id.* ¶ 7 n.1.

Relator claims that it used "proprietary technology" to "discover and then confirm" IH's alleged failure to secure permits. *Id.* ¶ 44.  Relator identified 15

---

[4] *See, e.g.*, City of Riverside, Permit Records, https://aquarius.riversideca.gov/permits/Browse.aspx?dbid=0 ("<u>Riverside Permit Database</u>"); City of Moreno Valley, Permit Records, https://aca-prod.accela.com/moval/default.aspx ("<u>Moreno Valley Permit Database</u>").

homes that purportedly have un-permitted renovations, and also provides statistical analysis supposedly showing that IH pulled fewer permits on average than other homeowners in four jurisdictions. *Id.* From those examples and the alleged statistical disparities, Relator then attempts to extrapolate that IH knowingly engaged in a statewide scheme to defraud the government. *Id.* But Relator's statistical analysis is not detailed or rigorous enough to support these sweeping conclusions, as discussed in more detail below.

## LEGAL STANDARD

Relator is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

For purposes of a ruling on a 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek* v. *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams* v. *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Nor must the court "accept as true allegations contradicted by judicially noticeable facts, and it may look beyond the plaintiff's complaint to matters of public record without converting the Rule 12(b)(6) motion into a motion for summary judgment." *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 937 (N.D. Cal. 2019) (quotation marks and citations omitted).

CFCA claims are also subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) (with the exception of the scienter element, which can be plead generally). *United States* v. *Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). Rule 9(b) provides that, in all averments of fraud, the circumstances constituting fraud must be stated with particularity. To satisfy this standard, the

allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen* v. *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see United States ex rel. Casady* v. *Am. Int'l Grp., Inc.*, 2013 WL 1702777, at *6 (S.D. Cal. Apr. 19, 2013) ("The particularity requirement is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations."). Accordingly, under Rule 9(b), Relator "must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United Healthcare Ins. Co.*, 848 F.3d at 1180. When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading standard, the complaint may be dismissed. *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## ARGUMENT

## I. RELATOR'S CLAIMS ARE BARRED BY THE PUBLIC DISCLOSURE DOCTRINE, CAL. GOV'T CODE § 12652(D)(3)

The CFCA requires the Court to dismiss *qui tam* claims based on certain categories of publicly disclosed information unless the plaintiff is an original source of the information. This prohibition, known as the Public Disclosure Bar, is codified in Cal. Gov't Code § 12652(d)(3), which provides that "[t]he court shall dismiss an action or claim under this section, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in" a government report or in the news media (among other places). Accordingly, to plead a claim under the CFCA, relators must demonstrate either: (1) that their allegations are not based upon a public disclosure of information in one of the enumerated sources; or (2) that they are an "original source" of the information. *Id.*

The CFCA's Public Disclosure Bar is intended to prevent "parasitic or opportunistic actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud." *City of Hawthorne ex rel. Wohlner* v. *H&C Disposal Co.*, 1 Cal. Rptr. 3d 312, 317-18 (Cal. Ct. App. 2003) (quotation marks and citation omitted); *see, e.g.*, *Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d at 431, 435 ("[W]here there has been a public disclosure[,] the governmental authority is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose. . . . [A] relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed." (quotation marks and citation omitted)).

Because the CFCA's Public Disclosure Bar is "substantially identical" to the federal False Claims Act, federal case law is instructive. *United States ex rel. Fryberger* v. *Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 803 (N.D. Cal. 2014). Under the federal precedent, the Supreme Court has repeatedly observed that the public disclosure bar applies with a "broa[d] scope" to the source in which the disclosure occurs, and that the phrase "allegations or transactions" is "wide-reaching." *Schindler Elevator Corp.* v. *United States ex rel. Kirk*, 563 U.S. 401, 408 (2011). In the Ninth Circuit, "for a relator's allegations to be based upon a prior public disclosure, the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." *United States ex rel. Mateski* v. *Raytheon Co.*, 816 F.3d 565, 573 (9th Cir. 2016) (internal quotation marks and citation omitted). "Nor does a disclosed allegation need to contain every specific detail to constitute a disclosure." *Amphastar Pharms. Inc.* v. *Aventis Pharma SA*, 856 F.3d 696, 704 (9th Cir. 2017).

Because the Complaint has "failed to provide specific facts that are not based on publicly available information to support its conclusory assertions of

fraud," *Casady*, 2013 WL 1702777, at \*4, it is barred by the Public Disclosure Bar and should be dismissed.

### A. The Complaint is Based Entirely Upon Publicly Available Information

Relator bases its conclusion that IH did not comply with permit requirements on two separate factual analyses. First, Relator alleges that it identified 15 specific examples of "homes where IH performed substantial renovations" but "failed to seek a permit." Compl. ¶ 54. This allegation is based on an analysis of municipal permitting databases and "rental listing websites" like Zillow.com, Invitationhomes.com, and Multiple Listing Service ("MLS") listings. *See id.* ¶¶ 54 n.31, 57. Second, in an attempt to show a fraudulent scheme affecting all of the approximately 12,000 homes that IH owns in California, Relator alleges that it performed a "data analysis" for certain municipalities comparing the percentage of homes for which IH obtained permits with the percentage of other homes that obtained permits during the same period and that this analysis predicts that IH failed to obtain necessary permits throughout the state. *See id.* ¶¶ 55, 56 n.32. This data analysis was based exclusively on an examination of "county and city databases." *See id.* ¶ 54 n.31. Both sets of factual allegations in the Complaint are based on publicly available information and are thus precluded by the Public Disclosure Bar. *See Casady*, 2013 WL 1702777, at \*3 (Public Disclosure Bar applied because "most of the information relied upon by [relator] ha[d] been made publicly available").

The county and city permitting databases that Relator consulted are easily accessible on the internet, and do not require "proprietary software" to view and understand. The information found on municipal websites plainly constitutes a government report under the CFCA, which the Supreme Court has defined as "something that gives information" or a "notification," or is "an official or formal statement of facts." *Schindler Elevator Corp.*, 563 U.S. at 408 (finding that a

"broad" definition of government reports was "consistent with the generally broad scope of the FCA's public disclosure bar"). The municipal records reviewed by the Relator are formal notifications on official government websites of the permitting records for the properties searched. In analogous cases, courts have held that similar records are government reports under the Public Disclosure Bar. *See, e.g., A1 Procurement, LLC* v. *Thermcor, Inc.*, 2017 WL 9478501, at *9 (E.D. Va. Apr. 4, 2017) (certifications on government websites "generate a report which is then available to the public at large"); *United States ex rel. Rosner* v. *WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010) (tax abatement database on city department's website is a government report where the "database is readily available to the public; any individual may look up the [tax] benefit history of any building in the City, the searches are free and unlimited, and both the database and the [city department's] website are easily navigable").

Relator cannot create a viable CFCA case by "merely add[ing] the words 'false claim' or 'fraud' . . . to information that has already been previously disclosed." *Casady*, 2013 WL 1702777, at *4; *see also A-1 Ambulance Serv., Inc.* v. *California*, 202 F.3d 1238, 1243 (9th Cir. 2000) (public disclosure of material elements of alleged fraud "need not contain an explicit 'allegation' of fraud" to bar CFCA claim). The government is certainly able to view these records on its own, without assistance from Relator, to determine if some homeowners were pulling permits at a lower rate than others. *Bates* v. *Mortg. Registration Sys., Inc.*, 694 F.3d 1076, 1081 (9th Cir. 2012) (Public Disclosure Bar applies "when the prior public disclosures are sufficient to place the government on notice of the alleged fraud or practice prior to the filing of the *qui tam* action." (internal quotation marks and citation omitted)).

While Relator may argue that it performed a new and extensive statistical analysis on these publicly available government reports in order to reveal an alleged fraudulent scheme, the law is clear that such allegations are insufficient to

overcome the Public Disclosure Bar. *Casady*, 2013 WL 1702777, at *4 (Public Disclosure Bar applies where relator merely applies its "unique expertise or training" to publicly disclosed information); *see also A-1 Ambulance Serv., Inc.*, 202 F.3d at 1245 (same); *United States ex rel. Zizic* v. *Q2Administrators, LLC*, 728 F.3d 228, 240 (3d Cir. 2013) (same); *United States ex rel. Calva* v. *Impac Secured Assets Corp.*, 2018 WL 6016152, at *7 (C.D. Cal. June 12, 2018) (irrelevant that relator spent significant time analyzing publicly available information); *United States ex rel. Patriarca* v. *Siemens Healthcare Diagnostics, Inc.*, 295 F. Supp. 3d 186, 197 (E.D.N.Y. 2018) ("A relator likewise does not overcome the bar by simply decoding or translating publicly available complex or technical information into a digestible form.").

To the extent that the Complaint relies on information from Zillow, the MLS, and IH's website, such sources qualify as news media under the CFCA's Public Disclosure Bar. Courts in this district and the Central District of California have held that websites accessible to anyone on the internet meet the definition of "news media." *United States ex rel. Hong* v. *Newport Sensors, Inc.*, 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016) ("Information publicly available on the Internet generally qualifies as 'news media'" (citing *United States ex rel. Carter* v. *Bridgeport Educ., Inc.*, 2015 WL 4892259, at *6 n.4 (S.D. Cal. Aug. 17, 2015))); *cf. United States ex rel. Green* v. *Serv. Contract Educ.& Training Tr. Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012) (information gleaned from "readily accessible websites" barred by Public Disclosure Bar); *but see United States ex rel. MC2 Sabtech Holdings, Inc.* v. *GET Engineering Corp.*, 2022 WL 174021, at *10 (S.D. Cal. Jan. 18, 2022) (corporate website is not "news media") (citing *United States ex rel. Integra Med Analytics LLC* v. *Providence Health & Servs.*, 2019 WL 3282619, at *14-15 (C.D. Cal. July 16, 2019), *rev'd on other grounds*, 854 F. App'x 840 (9th Cir. 2021)); *United States* v. *Valley Campus Pharmacy, Inc.*, 2021 WL 4816648, at *8 (C.D. Cal. June 23, 2021) (same). The cases defining "news

media" expansively are the more persuasive line of authority, given that the Supreme Court has held that the public disclosure bar has a "generally broad scope," *Schindler Elevator Corp.*, 563 U.S. at 408, and the Ninth Circuit has not narrowed it, *see Integra Med. Analytics LLC* v. *Providence Health & Servs.*, 854 F. App'x 840, 841-42 & n.1 (9th Cir. 2021) (declining to address certified question of whether "all online information material [] is 'from the news media' for the purpose of the FCA's public-disclosure bar").

## B.   Relator Is Not an "Original Source" of the Public Disclosure

Under the CFCA, if a relator's claims rely on publicly available information, the relator may nevertheless proceed if it is an "original source of the information." Cal Gov't Code § 12652(d)(3).  A person is an "original source" if, ***prior to the public disclosure***, that person has voluntarily disclosed to the government the information on which the transactions in a claim are based, or that person has knowledge that is independent of, and materially adds to, the publicly disclosed transactions.  *Id.*  Here, Relator is not an original source of any of the information underlying its claims.

Relator claims that to the extent there has been a "public disclosure unknown to the Relator, Relator is an original source" of that information because it "voluntarily disclosed . . . the information on which this claim is based" and "has knowledge that is independent of, and materially adds to, the publicly disclosed allegations or transactions."  Compl. ¶ 12.  These are conclusory and circular allegations.  Merely stating that the required elements are met is not enough to establish that Relator is an original source.  *See Twombly*, 550 U.S. at 545 (a "formulaic recitation of a cause of action's elements" is not sufficient to state a claim).

Relator could not possibly plead that it is an original source with more specificity because Relator does not have information that is "independent of" and "materially adds to" the publicly disclosed transactions.  Relator has simply

repackaged information that was available online long before it filed its Complaint, and it has done nothing to expose the alleged fraud beyond what was already publicly disclosed. Its purported use of "proprietary technology" and "artificial intelligence" does not amount to the type of independent knowledge required under the "original source" provision of the CFCA. *Roe* v. *Stanford Health Care*, 2022 WL 796798, at *1 (9th Cir. Mar. 15, 2022) (finding plaintiff's "specialized expertise" did not "materially add" to the public data); *see A-1 Ambulance Serv., Inc.*, 202 F.3d at 1245 ("The mere fact that [relator's] own expertise . . . may have enabled it to formulate its novel legal theory of fraud" does not make it an original source.); *infra* Section II.A-B.

Accordingly, Relator's sole legal claim cannot overcome the CFCA's Public Disclosure Bar and should be dismissed.

## II.   RELATOR FAILS TO STATE A REVERSE FALSE CLAIM

Relator also fails to plead the necessary elements of its CFCA claim with the requisite particularity. Relator's claim is brought under Cal. Gov't Code § 12651(a)(7), which imposes liability where a person "***knowingly*** conceals or ***knowingly*** and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision." *See* Compl. ¶ 100 (emphasis added). This is known as a "reverse false claim" because the defendant allegedly retained money owed to the government (as opposed to a traditional false claim, in which a defendant improperly caused the government to make a payment).

A relator may plead a reverse false claim in one of two ways: by alleging specific instances of concealment or avoidance with particularity, or pleading a pattern of conduct warranting an inference that false claims were part of the alleged scheme. *See United States ex rel. Cafasso* v. *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056-57 (9th Cir. 2011); *see also, e.g.*, *Ebeid ex rel. United States*

v. *Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010). Relator has not met either requirement here.

### A. Relator Fails to Allege Any Specific False Claims

Using undated, black-and-white pictures culled from the internet and its review of online permitting databases, Relator attempts to state a CFCA claim with respect to 15 properties for which it asserts that IH undertook renovations and failed to obtain required permits. But Relator has completely failed to make such allegations with the level of particularity required by Rule 9(b). Nor has Relator satisfied the Rule 12(b)(6) standard, because these allegations rely on unwarranted factual inferences.

#### 1. Relator Fails to Allege Any Specific Renovations with the Requisite Particularity

Relator claims to have "sought visual confirmation that a sample of Defendant's homes did receive significant renovations but obtained no permits." Compl. ¶ 57. The allegations concerning these supposed renovations rely almost exclusively on "before" and "after" photos of properties, which Relator purportedly assembled by comparing images from the public MLS with images from "rental advertisements." *Id.* ¶ 57. Relator claims that permits were "clearly required by what the images show." *Id.* ¶ 58. But the images plainly do not support Relator's allegations.

To begin with, none of the "before" or "after" images that Relator relies on are dated, and the Complaint does not specify from where any particular photo was taken (*e.g.*, Zillow, IH's website, or the MLS). Just as important, the Complaint is devoid of any temporal allegations concerning either when IH acquired the homes or when the alleged renovations occurred. Relator has thus failed to allege facts sufficient to establish that IH or its pre-merger predecessor, Starwood, ***owned any of the 15 homes when the purported renovations occurred***. *See* Compl. ¶¶ 60-87. Indeed, the Zillow listings on which Relator claims to rely reveal that many of

these homes were sold multiple times before being listed for rent by IH, allowing for the possibility that the renovations in question were conducted by a prior owner.[5]  Such allegations fall well short of satisfying Rule 9(b)'s rigorous standard, which requires specificity regarding the "who, what, when, where, and how" of the allegedly improper renovations.  *United Healthcare Ins. Co.*, 848 F.3d at 1180.

That deficiency alone is enough to warrant dismissal, but the Complaint's failings do not end there.  Even the slightest scrutiny of Relator's supposed "visual confirmation[s]," Compl. ¶ 57, reveals obvious errors and unfounded inferences. For instance:

- **Example 8:  3483 Hiawatha Place, Riverside:**  The "before" image that Relator uses in Example 8 is the ***exact same photo*** that it uses as the "after" image in Example 9.  *See id.* ¶¶ 73-77.  Moreover, the interior images for Example 8 plainly disprove Relator's allegations.  Relator alleges that these photos show that IH moved a sink from one side of the kitchen to the other side.  But the "before" and "after" interior images are clearly taken from opposite sides of the room.  In both photos, the kitchen sink ***remains in the same place***—under the same window— demonstrating that it has not, in fact, been moved.  *See id.* ¶¶ 73-75.

- **Example 9:  15180 Rio Grande Drive, Moreno Valley:**  In Example 9, Relator alleges that IH removed a "solar water heater" and that a permit was required for such work.  *Id.* ¶ 76.  But the "before" photo ***does not show a solar water heater***; rather, it shows a single solar panel on the roof.

---

[5] *See, e.g.*, Example 12: Zillow, 30361 Red River Circle, Temecula, CA 92591, https://www.zillow.com/homedetails/30361-Red-River-Cir-Temecula-CA-92591/18169495_zpid/; Example 9: Zillow, 15180 Rio Grande Drive, Moreno Valley CA 92551, https://www.zillow.com/homedetails/15180-Rio-Grande-Dr-Moreno-Valley-CA-92551/18013455_zpid/.

- **Example 10:  24884 Lorna Drive, Moreno Valley**:  In Example 10,
  Relator alleges, among other things, that IH "installed a new stove,"
  "refurbished the kitchen counter" and "replaced the cabinets."  *Id.* ¶ 78.
  Both images appear to **show the same stove**—the "before" image simply
  has pots and a dishrag on it—and the cabinets appear to be the same in
  both images, just with a different paint color and new handles.  In any
  event, the California Building Code explicitly exempts "[p]ainting, . . .
  cabinets, countertops and similar finish work" from the permitting
  requirement.  Cal. Code Regs. tit. 24, § 105.2; *see* Moreno Valley
  Municipal Code § 8.20.010 (adopting the California Building Code).
- **Example 14:  25834 Brodiaea Avenue, Moreno Valley**:  In Example
  14, Relator presented only one photo of an allegedly remodeled kitchen,
  but there is no "before" photo with which to compare it, and Relator
  alleged only "upon information and belief" that IH installed new
  appliances there.  Compl. ¶ 85.  No facts anywhere in the Complaint
  provide support for that belief.
- **Example 15:  1311 South Cliveden Avenue, Compton**:  In Example
  15, there are no images at all, only the bare conclusory allegation that IH
  "installed a new garage door with no permits."  *Id.* ¶ 87.

These examples illustrate the Complaint's shortcomings with regard to the
15 properties for which reverse false claims are alleged, but they are all deficient.
The court should find that Relator has failed to plead with particularity the
circumstances surrounding the alleged fraud for any one of the 15 properties.

### 2.      *Relator Fails to Allege with the Requisite Particularity that IH Failed to Obtain Required Permits*

Even if the Complaint adequately alleged that IH undertook renovations that
required permits in the 15 specific examples, which it does not, Relator has not
pled with the requisite particularity that IH in fact failed to obtain permits for those

renovations.  By Relator's own account, it used "proprietary technology" that "accessed the county and city databases of permits and identified what permits were pulled for each property."  Compl. ¶ 54 n.31.  But one of the cities for which Relator claims to have analyzed permitting data, Temecula, ***does not even maintain online building permit records***.[6]  In other cities, the online permitting records appear to be incomplete.  For instance, the records for several properties at issue suggest that no permits were obtained for many decades.[7]  Other online permit records have no entries whatsoever for the properties at issue.[8]  In short, there is good reason to doubt the completeness of online permitting records, and the inference that such records are reliable is unwarranted.  *Adams*, 355 F.3d at 1183 ("[U]nwarranted inferences are insufficient to defeat a motion to dismiss.").

## B. Relator Fails to Allege a Scheme with the Requisite Particularity that Warrants the Inference of Any False Claims

Relator likewise fails to plead any facts giving rise to an inference of a scheme to conceal or avoid obligations to the municipalities.  As set forth above, in the absence of allegations of any particular false claim, it is sometimes sufficient to allege particular details of a scheme to submit false claims, paired with reliable indicia that lead to a strong inference that false claims were made.  *Ebeid*, 616 F.3d

---

[6] *See generally* City of Temecula Municipal Website, http://temeculaca.gov.

[7] *E.g.*, Example 1:  5056 College Ave, Riverside CA 92505; Example 2:  4488 Jones Ave, Riverside, CA 92505; Example 3:  4378 Snowberry St, Riverside, CA 92504; Example 4:  4490 Jones Avenue, Riverside, CA 92505; and Example 7: 4089 Lively Street, Riverside, CA 92505.  *See generally* Riverside Permit Database.

[8] *E.g.*, Example 6:  10480 Hole Ave, Riverside, CA 92505, *see* Riverside Permit Database; Example 9:  15180 Rio Grande Drive, Moreno Valley CA 92551; Example 10:  24884 Lorna Drive, Moreno Valley, CA 92553; Example 11:  25433 Renoir Avenue, Moreno Valley, CA 92553; and Example 14:  25834 Brodiaea Ave, Moreno Valley, CA 92553, *see* Moreno Valley Permit Database; Example 15:  1311 S. Cliveden Ave, Compton, CA 90220, *see* City of Compton Online Portal, https://www.citizenserve.com/Portal/PortalController?Action=showSearchPage&ctzPagePrefix=Portal_&installationID=202&original_iid=0&original_contactID=0.

at 998-99.  In an effort to bolster its 15 examples—which fail as a matter of pleading for the reasons discussed above and do not alone provide a sufficient basis for extrapolating alleged wrongdoing to more than 12,000 IH properties statewide—Relator purports to rely on statistical analysis in an attempt to show that IH engaged in a far-reaching scheme to ignore its obligations to pay permitting fees.  Specifically, Relator claims that its artificial intelligence software compared (1) the percentage of IH's homes for which one or more building permits had been obtained after IH acquired the property with (2) the percentage of all other homes in the jurisdiction which had permits pulled in the same time period, and found meaningful disparities.  Compl. ¶ 55.  The Complaint presents a chart that features purported statistical disparities for four of the 18 jurisdictions that Relator claims to represent.  *Id.* ¶ 91.  But none of this analysis is plausible or reliable.

In FCA cases, the court evaluates whether the complaint warrants an inference that false claims were part of the scheme alleged, analyzing whether the pleading contains a plausible claim for relief and meets Rule 9(b)'s heightened requirement of particularity.  *Cafasso*, 637 F.3d at 1056.  When assessing the plausibility of an inference, the court draws on judicial experience and common sense, and considers "obvious alternative explanations."  *Id.*  If relying on statistical analysis, Relator must plead "with specificity allegations which support the empirical reliability and probative value of its statistical study" to survive a motion to dismiss.  *United States* v. *Mariner Health Care, Inc.*, 552 F. Supp. 3d 938, 947-49 (N.D. Cal. 2021) (reliable statistical analysis provided equation it used for model, detailed explanation of variables used, and particular details of the alleged scheme's "who, what, when, where, and how").

Courts have dismissed FCA claims at the pleading stage where the proffered statistical analysis was not sufficiently rigorous.  *See United States ex rel. D'Agostino* v. *EV3*, 153 F. Supp. 3d 519, 537 n.38 (D. Mass. 2015) (dismissing FCA complaint where "[Relator's] back-of-the-envelope 'statistical analyses' fall

well short of the particularity requirement of Rule 9(b), much less the evidentiary standards governing the admissibility of statistical proofs"); *United States ex rel. Worsfold* v. *Pfizer Inc.*, 2013 WL 6195790, at *8 (D. Mass. Nov. 22, 2013) (dismissing FCA complaint where "the purported statistical evidence advanced by Relator" was "conclusory" and "fail[ed] to create the requisite inference of fraud").[9]  The *Pfizer* case, which involved alleged false claims to government healthcare programs based on off-label marketing, is instructive here.  In that case, the Relator asserted, "in conclusory fashion," that because "80% of [the] sales [of one drug] were for off-label . . . purposes" at one medical center, the court could reasonably infer that off-label marketing caused false claims to be submitted to Medicare and Medicaid.  *Pfizer*, 2013 WL 6195790, at *8.  The Court rejected that statistical analysis under Rule 9(b).  *Id.*  The same result is compelled here.

Indeed, the Complaint's statistical analysis contains none of the rigor or detail that courts require to withstand a motion to dismiss.  In *Mariner Health Care*, for instance, the relator analyzed millions of hospital admissions, broke billing down into diagnosis types and groups, provided defendant with the actual equation it used, explanations of the variables used, and included the statistical significance of the disparity between defendant and other hospitals.  *Id.* at 947-49.  Relator here does no such thing.  The Complaint contains scant explanation of its data analysis, stating only in vague and conclusory terms that it "implemented artificial intelligence and machine learning."  Compl. ¶ 54 n.31.

The Complaint also lacks sufficient rigor and detail because it presents statistics for only four municipalities, with no explanation for why or how they

_____

[9] In other contexts, courts have also rejected statistical analysis at the pleading stage where the analysis is insufficiently rigorous. *See Burgis* v. *New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (dismissing racial discrimination case because "[t]o show discriminatory intent . . . based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but . . . must also be of a level that makes other plausible non-discriminatory explanations very unlikely").

were chosen, and no explanation for why it does not provide statistical comparisons for the other 14 jurisdictions, even though Relator purportedly has access to sophisticated data mining technology. And although the permitting rates for non-IH homes vary significantly in the four jurisdictions for which Relator has actually provided data, from 9.9% in Riverside to 25.5% in San Diego, *see* Compl. ¶ 91, the Complaint never acknowledges these disparities across municipalities. Nor does it discuss controlling for any variables that might explain the disparities.[10]

The Complaint further alleges that IH "rarely procured permits for its multi-thousand-dollar renovations, particularly in comparison with rates for other homeowners in the same localities irrespective of the nature of their renovations." Compl. ¶ 55. Relator, however, fails to provide any credible basis for the simplistic, conclusory assumption that the rates of homes for which IH obtained permits should equal the rates for other homeowners in the same municipalities.

According to Relator, its statistical analysis "very likely understates the gross disparity between Defendant's conduct and others' conduct because Defendant spent $25,000 to $38,000 to renovate homes that may have been in distressed conditions when purchased after the financial crisis." *Id.* ¶ 92. This argument misapprehends the meaning of the term "distressed." Although IH purchased many homes that were "distressed" as a result of the financial crisis, the term "distressed" as commonly used in this context refers to economic circumstances, not to the physical condition of the property.[11] Further, although Relator claims that "the other homes in [] each city include many owned by

---

[10] Courts have found statistical evidence "unreliable" where the "model did not select from a random sample and failed to control for variables." *United States ex rel. Wall* v. *Vista Hospice Care, Inc.*, 2016 WL 3449833, at *13-14 (N.D. Tex. June 20, 2016) (dismissing FCA claims at *Daubert* stage because statistical projections were unreliable).

[11] *See, e.g.*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/distressed (defining "distressed" as "of, relating to, or experiencing economic decline or difficulty").

laypersons who would have been less likely to spend heavily on renovations, or to need them at all," it offers no support for such conclusory assumptions. *Id.* Indeed, if anything, IH purchases homes that are more likely to be in better, not worse, condition than other homes in the jurisdiction given the company's focus on acquiring high-quality homes in desirable neighborhoods. *See* Form 10-K at 6, 9.

Because of the flaws identified above, Relator has not provided an empirically rigorous foundation sufficient to support extrapolating from its data analysis the conclusion that IH's purported failures to obtain necessary permits are "consistent across the other cities in California." Compl. ¶ 91. On this point, the Complaint offers only the superficial assertion that "IH California employees are organized in 'pods' in close geographical regions, and these pods are likely to have the same operating processes, so fraudulent procedures would persist across the pod. Accordingly, finding fraud in [one city] would ***presumably*** lead to the same findings in [other cities]." *Id*. ¶ 56 n.32 (emphasis added). These are precisely the type of conclusory allegations that fail to satisfy the heightened standard of Rule 9(b). *See Pfizer Inc.*, 2013 WL 6195790, at *8.

There are also numerous obvious alternative explanations for the statistical disparities that Relator purports to have identified within the four municipalities it cherry-picked to analyze. *See Cafasso*, 637 F.3d at 1056 (in assessing plausibility of an inference, court looks to "obvious alternative explanations"). As set forth in the Form 10-K, when IH acquires a home, it evaluates potential renovations, such as removing carpet from high-traffic areas, testing plumbing and pipes, and upgrading the level of fit and finish (*e.g.*, new cabinet and countertop finishes). *See* Form 10-K at 10. Many such cosmetic renovations do not require permits pursuant to state and local building codes. As discussed above, the state code exempts "[p]ainting, papering, tiling, carpeting, cabinets, countertops and similar finish work" from the permitting requirement. Accordingly, one obvious alternative explanation for the rates at which IH allegedly obtained permits is that

many of the renovations it undertook simply did not require permits.

Another obvious alternative explanation is that the municipal permitting records on which Relator has relied are incomplete. As explained above, *supra* p. 18, there are reasons to doubt the completeness of the data for the cities that maintain online databases of permitting information. Without assurances that the relevant data is up to date and comprehensive, there is no basis for concluding that Relator's statistical analysis is reliable.

In sum, the Complaint does not feature the kind of statistical analysis that has the "empirical reliability and probative value" sufficient to meet the requirements of Rule 9(b). *Mariner Health Care, Inc.*, 552 F. Supp. 3d at 948. For these reasons, Relator's vague and conclusory allegations regarding a purported scheme to avoid or conceal obligations to the government should be dismissed.[12]

## C. Relator Fails to Adequately Allege the Requisite Scienter

Relator has not adequately pleaded that IH knowingly concealed or avoided an obligation. The CFCA requires that such conduct must occur "knowingly." Cal. Gov't Code § 12651(a)(7). To satisfy that requirement, Relator must plead that a person either (A) has actual knowledge of the information; (B) acts in deliberate ignorance of the truth or falsity of the information; or (C) acts in reckless disregard of the truth or falsity of the information. *Id*. § 12650(b)(3).

Under the CFCA's scienter requirement, knowledge can be pled generally, but "innocent mistakes, mere negligent misrepresentations and differences in interpretations" will not suffice to create liability. *Corinthian Colleges*, 655 F.3d at 996 (quotation marks and citation omitted). It is not enough merely to allege knowledge as to the existence of regulatory requirements; relators must instead allege knowledge **as to the false claim.** *See United States ex rel. Durkin* v. *County*

---

[12] Relator has also alleged in a footnote that IH has defrauded the government of additional property taxes, claiming that revaluations should have occurred when IH allegedly improved the property through renovations, but these allegations are too cursory to adequately plead a systematic scheme to underpay property taxes.

*of San Diego*, 300 F. Supp. 3d 1107, 1128-30 (S.D. Cal. 2018); *see also United States ex rel. Harper* v. *Muskingum Watershed Conserv. Dist.*, 842 F.3d 430, 437 (6th Cir. 2016) (in reverse false claim action, explaining that "unless the circumstances of a case show that a defendant knows of, or 'acts in deliberate ignorance' or 'reckless disregard' of, the fact that he is involved in conduct that violates a legal obligation . . . the defendant cannot be held liable").

Relator alleges that IH has "intentionally" ignored permitting laws and that IH is a "highly sophisticated company" that knows it is subject to permitting laws based on the company's acknowledgement to that effect in its Form 10-K. Compl. ¶¶ 43, 51-52. That is not enough. The company's alleged general knowledge that permitting laws exist does nothing to show that it knew or acted with reckless disregard or indifference *to avoid or conceal an obligation to the government* in this case. A defendant can know that certain laws exist and reasonably believe that it is in compliance with them. *See Harper*, 842 F.3d at 437.

As stated in IH's Form 10-K, IH typically relies on independent contractors to undertake renovations of the homes it acquires. Form 10-K at 10, 19. But the Complaint makes no factual allegations that IH actually knew (or was reckless in not knowing) that its independent contractors were deliberately failing to obtain necessary permits to avoid paying fees to California cities. Further, the Complaint fails to grapple with IH's merger with Starwood. As a result of this merger, IH acquired approximately 5,500 homes in California. Relator suggests in cursory fashion that Starwood was also engaging in a statewide intentional scheme to avoid paying for permits necessary for renovations, alleging that "Starwood, like Defendant, performed substantial renovations on the properties after purchasing them" and that Starwood "spent an average of $26,000 on renovations per home." Compl. ¶ 49. The Complaint is devoid, however, of any allegations that seek to establish scienter on the part of Starwood. For example, although the Complaint includes a long quote from IH's Form 10-K concerning IH's knowledge "that

permits for renovations are required by local laws," *id.* ¶ 51, the Complaint does not quote from any securities filings or corporate statements of Starwood concerning permitting requirements, much less allege Starwood had actual knowledge that it was failing to obtain necessary permits.

In sum, the Complaint should be dismissed for failing to plead scienter.

## III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

If the Court determines that a complaint should be dismissed, it must decide whether to grant leave to amend. Leave to amend should be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking leave has acted in bad faith. *Leadsinger, Inc.* v. *BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Amendment here would be futile, as additional factual pleadings could not remedy Relator's failures. Relator's entire basis for its reverse CFCA claim rests in data mined from public sources; there could be no amendment that would cure the deficiency that it is barred by the public disclosure doctrine. Accordingly, amendment in this instance would be futile and Relator's claim should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Invitation Homes respectfully requests that the Court grant its Motion to Dismiss the First Amended Complaint with prejudice.

DATED: April 29, 2022                    Respectfully submitted,


                                         By: */s/ Melinda Haag*
                                             Melinda Haag (SBN: 132612)
                                             Randall S. Luskey (SBN: 240915)
                                             PAUL, WEISS, RIFKIND, WHARTON
                                                 & GARRISON LLP
                                             535 Mission Street, 24th Floor
                                             San Francisco, CA 94105
                                             Tel: (628) 432-5100
                                             Fax: (628) 232-3101
                                             rluskey@paulweiss.com
                                             mhaag@paulweiss.com

                                             *Attorneys for Defendant*
                                             *Invitation Homes Inc.*

## <u>SIGNATURE ATTESTATION</u>

Under Section 2.f.4 of the Court's CM/ECF Administrative Policies, I hereby certify that authorization for filing this document has been obtained from each of the other signatories shown above, and that all signatories have authorized placement of their electronic signature on this document.

By: */s/ Melinda Haag*
Melinda Haag (SBN: 132612)

*Attorney for Defendant*
*Invitation Homes Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 29, 2022, I filed the foregoing NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT with the Clerk of Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, which will serve electronic notification of this filing to all counsel of record.

By: */s/ Melinda Haag*
Melinda Haag (SBN: 132612)

*Attorney for Defendant*
*Invitation Homes Inc.*