Ed Chapin (CA Bar No. 05328)
**SANFORD HEISLER SHARP, LLP**
2550 Fifth Avenue, 11th Floor
San Diego, CA 92103
Telephone: (619) 577-4251
Email: echapin@sanfordheisler.com

H. Vincent McKnight, *Pro Hac Vice* Forthcoming
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5201
Email: vmcknight@sanfordheisler.com

Leonard B. Simon (CA Bar No. 58310)
**LAW OFFICES OF LEONARD B. SIMON**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644
Email: lens@rgrdlaw.com

*Attorneys for the Plaintiff-Relator Blackbird Special Project, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF MORENO VALLEY, CITY OF RIVERSIDE, CITY OF LOS ANGELES, CITY OF COMPTON, CITY OF TEMECULA, CITY OF PALMDALE, CITY OF LANCASTER, CITY OF SAN BERNARDINO, CITY OF VALLEJO, CITY OF FONTANA, CITY OF MURRIETA, CITY OF FAIRFIELD, CITY OF PERRIS, CITY OF YUCAIPA, CITY OF CORONA, CITY OF RIALTO AND ROES 1-250, EX. REL BLACKBIRD SPECIAL PROJECT, LLC, | No. 22-CV-260-L-MDD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**Oral Argument Requested**<br><br>Date: July 25, 2022<br>Time: 10:30 a.m.<br>Ctrm.: 5b<br>Hon.: M. James Lorenz |
| Plaintiff, | |
| v. | |

1  INVITATION HOMES, INC., a
2  Maryland Corporation,

3                    Defendant.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................1

II.     STATEMENT OF FACTS ...............................................................................3

III.    ARGUMENT ....................................................................................................5

   A.  All FAC Facts Must Be Accepted as True and Read in the Light Most
   Favorable to Plaintiff, Making All Reasonable Inferences in Relator's Favor.......6

   B.  The Public Disclosure Bar Cannot Overcome the Complaint's Allegations
   and Certainly Not on a Motion to Dismiss.............................................................6

      1.   The Public Disclosure Bar does not apply because (i) the entire internet is
      not "news media," and (ii) Relator's efforts, including its A-I generated image
      analysis, could not be done from one of the statutorily enumerated public
      sources. ..............................................................................................................8

   D.  Relator's Complaint Easily Satisfies the Heightened Pleading Requirements
   of Rule 9(b)...........................................................................................................14

   E.  The FAC Adequately Alleges that Invitation Knew or Recklessly Disregarded
   Its Fraudulent Conduct. .......................................................................................18

IV.    CONCLUSION ...............................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A1 Procurement, LLC v. Thermcor, Inc.*,
5
    2017 WL 9478501 (E.D. Va. Apr. 4, 2017) ...................................10, 11, 12

6

*City of Los Angeles v. Wells Fargo & Co.*,
7
    22 F. Supp. 3d 1047 (C.D. Cal. 2014) ........................................................20

8

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) .............................................................17, 19
9

*Laymon, Jr. v. Bombardier Transp. (Holdings) USA, Inc.*,
10
    2009 WL 793627 (W.D. Pa. Mar. 23, 2009)..............................................19

11

*San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*,
12
    168 Cal. Rptr. 3d 832 (2014).......................................................................19

13

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
    563 U.S. 401 (2011) .....................................................................................9
14

*Silbersher v. Allergan Inc.*,
15
    506 F. Supp. 3d 772 (N.D. Cal. 2020) .............................................9, 12, 13

16

*Silbersher v. Valeant Pharms. Int'l., Inc.*,
17
    445 F. Supp. 3d 393 (N.D. Cal. 2020) .........................................................9

18

*State of California ex rel. Bowen v. Bank of Am. Corp.*,
19
    126 Cal. App. 4th 225 (2005).......................................................................5

20

*State of California v. Altus Fin., S.A.*,
    36 Cal. 4th 1284 (2005)............................................................................3, 5
21

22

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ...............................................................*passim*

23

*United States ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v.*
24
    *Westchester Cnty., N.Y.*,
25
     2012 WL 917367 (S.D.N.Y. Mar. 16, 2012) ..............................................5

26

*United States ex rel. Bilotta v. Novartis Pharm. Corp.*,
27
    50 F. Supp. 3d 497 (S.D.N.Y. 2014) ........................................................15

28

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017).............................................................. 11

*United States ex rel. Chin v. CVS Pharmacy, Inc.*,
  2017 WL 4174416 (C.D. Cal. Aug. 15, 2017)........................................ 14

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
  36 ITRD 697 (E.D. Pa. 2014)........................................................ 8, 10

*United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*,
  2014 WL 3729641 (W.D. Mo. July 28, 2014)........................................ 17

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.*,
  2021 WL 4502275 (N.D. Tex. Oct. 1, 2021) ......................................... 16

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009)............................................................. 16

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
  842 F.3d 430 (6th Cir. 2016)........................................................ 18, 19

*United States ex rel. Herbold v. Doctor's Choice Home Care, Inc.*,
  2019 WL 5653459 (M.D. Fla. Oct. 31, 2019)........................................ 17

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs*,
  2019 WL 3282619 (C.D. Cal. July 16, 2019) ................................... 8, 9, 11

*United States ex rel. Liotine v. CDW Govt., Inc.*,
  2009 WL 3156704 (S.D. Ill. Sept. 29, 2009) ...................................... 11

*United States ex rel. Mateski v. Raytheon Co.*,
  816 F.3d 565 (9th Cir. 2016)........................................................ 7, 8

*United States ex rel. MC2 Sabtech Holdings, Inc. v. GET Eng'g Corp.*,
  2022 WL 174021 (S.D. Cal. Jan. 18, 2022) ............................... 7, 9, 10, 11

*United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*,
  251 F. Supp. 2d 114 (D.D.C. 2003) ................................................... 5

*United States ex rel. Ormsby v. Sutter Health*,
  444 F. Supp. 3d 1010 (N.D. Cal. 2020) ........................................ 5, 17, 19

*United States ex rel. Reed v. KeyPoint Gov't Sols.*,
  923 F.3d 729 (10th Cir. 2019)........................................................ 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C,*
  739 F. Supp. 2d 396 (S.D.N.Y. 2010)......................................................... 12

*United States ex rel. Scott v. Actus Lend Lease,*
  2011 WL 13177635 (C.D. Cal. Apr. 22, 2011)........................................ 16

*United States ex rel. Shea v. Verizon Commc'ns., Inc.,*
  844 F. Supp. 2d 78 (D.D.C. 2012) ............................................................5

*United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.,*
  34 F.4th 507 (6th Cir. 2022)...................................................................... 15

*United States ex rel. Vatan v. QTC Med. Servs., Inc.,*
  721 F. App'x 662 (9th Cir. 2018)............................................................... 17

*United States v. Chang,*
  2017 WL 10544289 (C.D. Cal. July 25, 2017) .......................................... 14

*United States v. Honeywell Int'l, Inc.,*
  2013 WL 12122693 (C.D. Cal. Nov. 8, 2013)....................................11, 13

*United States v. Bourseau,*
  531 F.3d 1159 (9th Cir. 2008)................................................................... 19

*United States v. Paksn, Inc.,*
  2021 WL 6882171 (C.D. Cal. Nov. 15, 2021) .......................................... 14

*United States v. Quicken Loans Inc.,*
  239 F. Supp. 3d 1014 (E.D. Mich. 2017).................................................. 15

*United States v. United Healthcare Ins. Co.,*
  848 F.3d 1161 (9th Cir. 2016)...............................................6, 16, 17, 18

*United States v. Valley Campus Pharmacy, Inc.,*
  2021 WL 4816648 (C.D. Cal. June 23, 2021) ........................................9, 20

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,*
  953 F.3d at 1108 (9th Cir. 2020).........................................................16, 17

**Statutes**

31 U.S. Code § 3729................................................................................................5

Cal. Gov't Code § 12650(b)(3).........................................................................2, 18

Cal. Gov't Code § 12651(a)(7)...........................................................................3, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Gov't Code § 12652(d)(3).........................................................................7, 13

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 7

S. REP. 99-345, 1986 U.S.C.C.A.N. 5266 ............................................ 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

The Motion ("Motion") by Defendant Invitation Homes, Inc. ("Defendant," "Invitation," "IH," or "the Company") to dismiss this California False Claims Act ("CFCA") case involving about 12,000 homes in eighteen Cities in California must be denied.

*First*, it is a basic principle on a Rule 12(b)(6) motion that the Court must accept the truth of the complaint's factual allegations, and construe all reasonable inferences derived from those factual allegations in favor of the non-moving party—here, Relator Blackbird Special Project, LLC ("Relator" or "Blackbird").[1] Defendant has repeatedly ignored this rule. On each issue addressed, Defendant has presented an alternative set of facts and inferences that takes issue with the well-pled allegations of the Complaint. *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir. 2018). *See infra* § III(A).

*Second*, the Court should deny Defendant's Motion because it misapplies the so-called "Public Disclosure Bar" ("PDB") of the CFCA. This narrow defense applies only when specific conditions have been met. *First*, the matters alleged in a complaint must have been revealed (i) by the news media, (ii) in a public hearing, or (iii) in a government report—no other means will do. *Second*, the disclosure must have been available to the public. *Third*, the disclosure must reveal the same transactions or allegations of fraud alleged in the complaint. All those elements must be met to successfully raise the PDB, and Defendant has failed to carry its burden.

To advance this defense IH falsely contends that everything that is or was on the internet constitutes "news media," including data retrieved by Blackbird's "lookback" technology that is (and was when the complaint was filed) no longer

---

[1] The investigation that led to this case was started by Deckard Technologies, Inc., a small San Diego company, and most of the responsibility for the case was then assigned to a Deckard spin-off, Blackbird Special Project, LLC, which was formed by a principal of Deckard. FAC ¶¶ 13, 13 n.2. We will refer to both companies collectively as Relator for convenience.

1

publicly available except with advanced technologies. Many courts rejected the argument that the term "news media" refers to the entire internet, much less to what once was generally available on the internet, but is no longer. Thus, Defendant's Public Disclosure defense totally collapses because it relies on materials that are not considered "news media" by courts in this Circuit and were not available to ordinary citizens. *See infra* § III(B)(1).

The fragmentary permit data available on governmental websites also does not suffice to save the day for Defendant because whether it rises to the level of a "government report", a questionable assertion, standing alone it does not disclose Relator's allegations or the circumstances sufficient to show the fraud. Accordingly, this case is not precluded by the Public Disclosure Bar. *See infra* § III(B)(2).

*Third*, IH argues that the Complaint fails to meet the applicable 9(b) specificity requirement. In making this argument, Defendant ignores the overall specificity of the allegations as a whole and the inclusion of fifteen examples, preferring to nitpick five of these examples cited, while ignoring the many cases holding that a handful of examples in a fraud complaint establishes Rule 9(b) specificity. In addition to the overall allegations of misconduct and the fifteen examples, the FAC also includes comparative figures that confirm the correctness of Relator's claims and allegations that identify the who, what, when, where, and how of the fraudulent scheme. *See infra* § III(D).

*Finally*, Defendant's argument that there are insufficient allegations to state intent, which can be alleged generally under Rule 9(b), misses the mark. Assuming the facts alleged are true, as they must be on this Motion, it is reasonable to infer that IH's systematic disregard for California permitting law cannot be accidental and must rise to the level of recklessness or intentional conduct, either of which suffices. Cal. Gov't Code § 12650(b)(3); *infra* § III(E).

For these reasons, the Court should reject Defendant's Motion and allow this matter to proceed to discovery.

## II.   STATEMENT OF FACTS

Relator Blackbird initiated this action to "protect the public fisc" and to protect tenants who may live in unsafe, uninspected homes. *State of California v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1297 (2005). Relator (encompassing both Blackbird and its related company and predecessor-in-interest Deckard, *see* footnote 1, *supra*) is a data analysis company in San Diego working in the real estate field and elsewhere. FAC ¶ 13. It uses highly advanced computer techniques, including artificial intelligence and machine-learning, to sift through various data. *Id.* ¶ 13. Its proprietary technology includes "lookback" abilities, so that it can access information that once was on the internet but no longer is accessible through ordinary means. *Id.* ¶ 57. A few years ago, Relator was looking at the massive purchases of homes during and after the housing crisis of 2008, among many other projects. Relator's research using this technology led to further investigation and ultimately to the filing of this case. *Id.* ¶ 13.

The FAC alleges that Defendant Invitation Homes violated the "reverse false claims" provision of the CFCA, Cal. Gov't Code § 12651(a)(7), by illegally renovating thousands of homes it had just acquired but failing to obtain the necessary permits and pay permit fees to the Cities named in the Complaint. This is called a "reverse" false claim because IH did not present a false bill to the Cities, rather, it avoided paying the Cities what it owes. *See Id*.

The FAC lays out the scheme, reflecting the analysis Relator has done on the overall California activities of Defendant and also provides fifteen representative examples in four cities of Invitation's fraud. FAC ¶¶ 60–87. With specific addresses and photographic evidence, these examples document that the Company made renovations requiring permits and fees yet simply ignored these obligations. For instance, Riverside requires a permit and fees for demolishing part of a home. *Id.* ¶¶ 31, 62. At 4488 Jones Avenue in Riverside, IH demolished the back-left corner of its home (*see* the below before and after images). *Id.* ¶ 62. But Defendant evaded the

RELATOR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT

Case No. 22-CV-260-L-MDD

1   required permit, disregarding its obligation to pay the permit fee. *Id.* ¶¶ 62–63.

| Before | After IH's Unpermitted Demolition |
|---|---|
|  |  |

The FAC also includes other reliable indicia that support an inference of statewide fraud. Invitation acquired over 12,000 California homes from 2012 to the present, *Id.* ¶¶ 4, 5, 15, and admits that it spent an average of $25,000 to $38,000 per acquired home on renovations. *Id.* ¶¶ 46–49. Reference to the California Code, and the permitting laws of each City, plus some common sense, indicates that it would be hard to spend over $25,000 on a middle-class home without a permit and for only what IH calls "cosmetics." Mot. at 3:24–25; FAC ¶¶ 26–42. Since $25,000 to $38,000 is the average, one would expect that more than half of the 12,000 homes required that amount or more, supporting an inference of thousands of legal violations and millions of dollars of avoided fees.

Data analysis for certain cities confirmed the paucity of permits obtained by IH. IH got permits on less than 7% of its homes and substantially less than other homeowners did in the same timeframe and municipalities. *Id.* ¶¶ 6, 89–91. These facts further support the inference of thousands of legal violations. *Id.* ¶¶ 44, 92–93. It is inconceivable that, with those averages in the context of the representative examples, 93% of IH's purchases and renovations did not require permits.

The Complaint alleges that Defendant engaged in this fraudulent scheme not only to avoid permit fees, but also to avoid the necessary time taken in permitting, so as to "get the properties into the rental market as quickly as possible" and to "avoid property tax increases." *Id.* ¶¶ 4; *see also id.* ¶ 7 n. 1.

These allegations, which must be accepted as true, with all inferences drawn in Relator's favor, certainly state a claim and put IH on notice of the allegations sufficiently for it to present a defense.

## III.   ARGUMENT

The federal False Claims Act ("FCA"), 31 U.S. Code § 3729, on which the CFCA was based, was enacted to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266; *see also Altus Fin.*, 36 Cal. 4th at 1297 ("[T]he ultimate purpose of the [CFCA] is to protect the public fisc.").[2] To do so, Congress "encourage[d] *any individual* knowing of Government fraud to bring that information forward." S. Rep. No. 99-345, at 2, 1986 U.S.C.C.A.N. at 5266–67 (emphasis added). The statute "contains no . . . requirement" that Relator be an insider. *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 119 (D.D.C. 2003). Numerous "outsiders," often relying on their research and analysis, have recovered hundreds of millions for governments under the FCA. *See, e.g.*, *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 844 F. Supp. 2d 78, 82 (D.D.C. 2012) (discussing outsider relator's analytical contributions to $93.5 million settlement); *United States ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty., N.Y.*, No. 06 CIV. 2860, 2012 WL 917367, at *3 (S.D.N.Y. Mar. 16, 2012) (relator, a public interest organization, brought FCA case that settled for $30 million).

To succeed under the CFCA, Relator will need to show that IH: "(1) concealed or improperly avoided . . . an obligation to pay the government" municipalities, and "(2) did so knowingly." *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1056 (N.D. Cal. 2020). At the pleading stage, Relator's FAC needs only to

---

[2] The CFCA was "patterned largely" on the federal False Claims Act and "[f]ederal decisions are persuasive on the meaning" of the CFCA. *State of California ex rel. Bowen v. Bank of Am. Corp.* 126 Cal. App. 4th 225, 240 n.11 (2005).

proffer factual allegations with "facial plausibility," *i.e.*, enough for the Court to reasonably infer Defendant's liability, taking the well pled facts as true. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1179 (9th Cir. 2016); *see also* Fed. R. Civ. P. 8. With respect to "circumstances constituting fraud," these factual allegations must also be stated "with particularity, *United Healthcare*, 848 F.3d at 1180, but as Defendant acknowledges, Mot. 23:20-22, the required specificity does not apply to allegations of Invitation's knowledge, which can be pled generally. *United Healthcare*, 848 F.3d at 1184.

For the reasons stated below, Defendant's Motion should be denied, and the case should proceed to discovery. The factual issues Invitation is disputing must be resolved at trial, or at the earliest, on summary judgment.

**A. *All FAC Facts Must Be Accepted as True and Read in the Light Most Favorable to Plaintiff, Making All Reasonable Inferences in Relator's Favor.***

At the motion to dismiss stage, a court "evaluate[s] whether the factual allegations, together with all reasonable inferences, state a plausible claim to relief." *WellPoint*, 904 F.3d at 676. In doing so, a court "accept[s] as true all well-pleaded allegations of fact in the complaint[,]" while "construing them in the light most favorable to the Relator," *id.*, and "[t]aking all reasonable inferences in [Relator's] favor[.]" *Id.* at 680. Here, Relator's allegations—that Invitation knowingly or recklessly avoided or concealed thousands of permit fee obligations to California municipalities, involving millions of dollars and a threat to public safety—suffice to state plausible claims for relief.

**B. *The Public Disclosure Bar Cannot Overcome the Complaint's Allegations and Certainly Not on a Motion to Dismiss.***

Staring down Relator's well pled allegations, Defendant tries to escape by raising the Public Disclosure Bar, essentially arguing that the allegations were already public before the Complaint and that Relator is an opportunist with nothing to bring to the table. But the facts summarized above rebut this argument, and

Defendant cannot prove the mandatory elements of the PDB, certainly not from the face of the complaint under Rule 12.

To successfully maintain the Public Disclosure Bar, the moving party must prove each element of this narrow exception, and here, must demonstrate that from the face of the Complaint.[3] The defense is not demonstrated for purposes of Rule 12(b)(6), nor do we believe it can be demonstrated at all in this case.

*First*, as a threshold matter, IH must show that matters alleged in the complaint were previously disclosed publicly through one of the three statutorily enumerated channels (news media, public hearing, or government report). If they were not disclosed publicly through one of these channels, the public disclosure bar does not apply. *See United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016); *United States ex rel. MC2 Sabtech Holdings, Inc. v. GET Eng'g Corp.*, No. 19-CV-1249, 2022 WL 174021, at *10 (S.D. Cal. Jan. 18, 2022) (holding that because the "purported disclosures" did not "occur[] through any channel specified by the . . . statute, Relator's FCA claims are not barred by the public-disclosure bar").

*Second*, what must be disclosed through one of the three enumerated categories must reveal allegations and transactions of *fraud, not simply some of the underlying*

---

[3] Under the Public Disclosure bar, a court shall dismiss a CFCA action, "unless opposed by the Attorney General or prosecuting authority of a political subdivision," **only if**:

> substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in any of the following:
>
> (i) A criminal, civil, or administrative hearing in which the state or prosecuting authority of a political subdivision or their agents are a party[;]
>
> (ii) A report, hearing, audit, or investigation of the Legislature, the state, or governing body of a political subdivision[; **or**]
>
> (iii) The news media.

Cal. Gov't Code § 12652(d)(3)(A).

*facts*. *Mateski*, 816 F.3d at 571. Public access to one quarter or one half of the key elements of this case does not inform the Cities, or the public, of the fraud alleged here. For the public disclosure bar to apply, the fraud's "material elements" must have been disclosed before the lawsuit. *Id*.

To illustrate this, courts, including in the Ninth Circuit, have used a mathematical illustration:

> [I]f X + Y = Z, **Z represents the allegation of fraud and X and Y represent its essential elements**. In order to disclose the fraudulent transaction publicly, the **combination** of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the **conclusion** that fraud has been committed.

*Id.* (emphasis added); *e.g.*, *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co. ("Victaulic I")*, 36 ITRD 697 (E.D. Pa. 2014) (applying formula for reverse false claims).

Here, "X" is the fact that Invitation performed renovations that required permits on a substantial number of the 12,000 homes it purchased in California, while "Y" is the failure to obtain permits and pay the permit fees on those homes. For Defendant to prevail, public knowledge must extend to both, and thus to "Z," *i.e.*, "the conclusion that fraud has been committed." *Mateski*, 816 F.3d at 571. Invitation cannot meet that burden for either X or Y, much less both, from information disclosed through the three statutory sources.

1. *The Public Disclosure Bar does not apply because (i) the entire internet is not "news media," and (ii) Relator's efforts, including its A-I generated image analysis, could not be done from one of the statutorily enumerated public sources.*

Defendant argues that information about the homes on its website, InvitationHomes.com, on Zillow, and on the Multiple Listing Service are "news media" because that information is (more accurately was) on the internet. Mot. 12:12–13:7. However, the overbroad assertion that the entire internet is meant by "news media" has been roundly rejected. *See United States ex rel. Integra Med*

8

1   *Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694, 2019 WL 3282619,

2   at *12 (C.D. Cal. July 16, 2019), *rev'd on other grounds and remanded sub nom.*

3   *Integra Med Analytics LLC v. Providence Health & Services*, 854 Fed. App'x. 840

4   (9th Cir. 2021); *MC2 Sabtech Holdings*, 2022 WL 174021, at *9.[4] And since much

5   of the data Relator relied on is no longer available on the internet without specialized

6   and sophisticated technology, the argument is doubly flawed.

7   　　　　Courts have recognized that "applying the news media provision to anything

8   ever published publicly on the internet **is contrary to the** ordinary meaning of the

9   term 'news media.'" *Integra*, 2019 WL 3282619, at *12 (emphasis added).[5]  Instead,

10   consistent with the natural reading of "news media," these courts weigh the following

11   factors to analyze when a source of information, online or in print, fits the term "news

12   media":[6]

13   　　　　[1] the extent to which the information typically conveyed by a source
14   　　　　would be considered newsworthy is relevant . . . .;

15   　　　　[2] a news media entity is ordinarily viewed as one that collects
16   　　　　information from outside sources, **exercises some editorial judgment**
17   　　　　in deciding what to publish, and then transmits the published

18   [4] Defendants' scattered citations for its expansive definition of "news media" all
19   predate *Integra*. Since *Integra*, courts in the Ninth Circuit have given the term "news
   media" its ordinary meaning. *E.g.*, *United States v. Valley Campus Pharmacy, Inc.*,
20   No. 2:16-cv-04777, 2021 WL 4816648, at *8 (C.D. Cal. June 23, 2021) (company
21   website was not news media); *MC2 Sabtech*, 2022 WL 174021, at *10 (neither
   government nor corporate website were news media); *Silbersher v. Allergan Inc.*,
22   506 F. Supp. 3d 772, 807 (N.D. Cal. 2020) (docket sheets for patents were news
23   media); *Silbersher v. Valeant Pharms. Int'l, Inc.*, 445 F. Supp. 3d 393, 406 (N.D.
   Cal. 2020) (Law360 article was news media).
24   [5] While Defendant claims *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401
25   (2011), supports its reading, *Integra* disagreed. 2019 WL 3282619, at *13 (ruling that
   the broad definition "improperly strays from the Supreme Court's instruction that
26   interpretation of the undefined term 'news media' must begin with its ordinary
27   meaning").
   [6] *Id.* at *14–15; *e.g.*, *MC2 Sabtech*, 2022 WL 174021, at *9; *Allergan*, 506 F. Supp.
28   3d at 806–07; *Valley Campus*, 2021 WL 4816648, at *8.

RELATOR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT

Case No. 22-CV-260-L-MDD

information to an audience—put more simply, it **curates** information—in contrast to an entity that simply publishes information about itself;

[3] a source's intent to disseminate information widely, as opposed to only to a few individuals, is relevant . . . .;

[4] the more that an online source **functions like . . . traditional [news media] outlets**, the more likely it is to be news media under the FCA;

[5] whether the source in question falls within the 'broad ordinary meaning' of the term 'news media'—in other words, whether it could reasonably be described as 'news media' as at least some people would [use] that term in everyday speech.

*MC2 Sabtech*, 2022 WL 174021, at *9 (emphasis added).

These factors decisively classify the real estate and marketing websites as narrow sources of information aimed at home renters or purchasers—not "newsworthy" to the public. Advertisement of homes cannot be "considered newsworthy," nor are they "described as 'news media'" in any ordinary sense. *MC2 Sabtech*, 2022 WL 174021, at *9; *see also A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-CV-00015, 2017 WL 9478501, at *9 (E.D. Va. Apr. 4, 2017), *report and recommendation adopted*, No. 2:15CV15, 2017 WL 2881350 (E.D. Va. July 5, 2017) (holding that pictures on "Defendants' social media accounts" that "led" relator to believe of the fraud were not news media). These are instead routine marketplaces. *See Victaulic I*, 36 ITRD 697 ("[S]ales listings" on eBay "do[] not qualify as 'news media' under even a generous interpretation[.]"). Nor does InvitationHomes.com, the MLS, or Zillow purport to be a news media company or do any curating.

Further, contrary to Defendant's assertion that Relator "use[d] resources available to anybody with an internet connection," Mot. 1:26–27, much of what Relator relies on is not generally available on the internet and has not been for years. That is why Relator used "lookback" and other technologies. FAC ¶ 57. While Defendant repeatedly mocks, without support, Relator's proprietary technology, *e.g.*,

Mot. 10:23–25, the FAC's allegations must be "accepted as true." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898 (9th Cir. 2017).

If IH wishes to press this issue beyond this Motion, it must, at best, await summary judgment. *E.g.*, *Integra*, 2019 WL 3282619, at *16 (fact development needed to adjudicate "news media" issue); *see also United States, ex rel. Liotine v. CDW Gov't, Inc.*, No. 05-33-DRH, 2009 WL 3156704, at *6 (S.D. Ill. Sept. 29, 2009) (article on university website was not "news media": "several steps had to be taken to even locate the article as it [was] . . . archived on the . . . website" and "not easily available to the public"); *United States v. Honeywell Int'l, Inc.*, No. LACV1202214, 2013 WL 12122693, at *9 (C.D. Cal. Nov. 8, 2013) (distinguishing websites that are "password-protected or otherwise inaccessible to the public" from publicly available URL sites).

Using the Ninth Circuit's X, Y, and Z formulation, that these homes were renovated sufficiently to require permits was not publicly disclosed, means that X is missing. That is enough, but Y is at least partly missing as well, since the online permit information is fragmentary, indeed it is something that Invitation elsewhere in its Motion claims is flawed and/or nonexistent. Mot. 18:1-10; *See A1 Procurement*, 2017 WL 9478501, at *9 (holding that "part of the transaction was not publicly disclosed," so "the transaction itself was not publicly disclosed."); *MC2 Sabtech*, 2022 WL 174021, at *10 ("Because the Court concludes that none of the purported disclosures revealing the allegedly 'true' state of affairs . . . occurred through any channel specified by the . . . statute, Relator's FCA claims are not barred by the public-disclosure bar."). The Court may end its analysis of the public disclosure bar here.

To view it another way, although Invitation often conflates disclosure of some underlying facts with disclosure of the alleged fraud, it unconsciously slips up by acknowledging that what is available publicly must be "substantially similar to Relator's **allegations**." Mot. 9:19–21 (emphasis added). No news media, and no

11

government report, contain anything like Relators "allegations" of fraud and massive non-compliance with permitting rules.

> *2. The "Government Report" prong of the Public Disclosure Bar also does provide a defense sustainable under Rule 12 because (i) the permit databases do not constitute a "report," and (ii) standing alone, the permit information does not reveal the allegations, the fraud, or one of the two key elements of the fraud.*

IH also argues that the fraud was disclosed through a "government report," one of the three proper methods of presenting this defense. It claims that city websites with permit information (which they elsewhere hypothesize to be incomplete or non-existent) "plainly constitute[] a government report under the CFCA." Mot. 10:25-26. But the plain meaning of "report" is "report," and in any event, this information reveals only portions of Y but not Z.

While there is a split of authority on whether government databases may be viewed as "reports," the authority in the Ninth Circuit holds that government databases are "reports" under the FCA only if they analyze, gather, or otherwise curate information but not if they merely collect it. In *Allergan*, the court analyzed whether a patent application database was a government report under the Public Disclosure Bar of FCA, much like our issue here. 506 F. Supp. 3d at 800, 792. The court found it was not, *id*. at 802, because it merely compiled documents, but did not "synthesize" them. *Id*. at 803–05. *Allergan* distinguished *United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*, relied on by Defendant here, because the *Rosner* database did not "present raw, unanalyzed data" but instead "present[ed] *synthesized* tax benefit histories . . . organized by block and lot number." *Id*. at 804 (citing 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010) (emphasis added).[7]

There is no synthesis that we are aware of in any of the quite-varied city permit

---

[7] Defendant also cites *A1 Procurement*, which is about a company certification but which did not hold anything. 2017 WL 9478501, at *9–10. The court merely "presume[d]" such a certification met the standard for the sake of argument because other elements of a public disclosure were in any event not present. *Id*.

websites, which are raw and unanalyzed collections of permits (and flawed and incomplete according to Invitation). Under the controlling authority of *Allergan*, these permit collections on some of the affected Cities' websites cannot be called government "reports" for these purposes.

Even if the permit databases were "reports," the permit databases alone do not disclose the fraud. Mot. 10:17–11:13. Permit history alone does not show fraudulent conduct. *See Honeywell*, 2013 WL 12122693, at \*9 ("Nonetheless, the . . . report does not qualify as a public disclosure because it does not reveal either the allegation of fraud or the critical elements of the fraudulent transaction." (Internal quotation marks omitted)). These permit databases are equally innocuous without other information.

### C. *The Complaint also avoids the Public Disclosure Bar because Relator qualifies as an Original Source.*

Even if the other standards of the Public Disclosure Bar had been met, the PDB is avoided if Relator qualifies as the original source of the information. A relator is an original source if it has "knowledge that is [1] independent of, and [2] materially adds to, the publicly disclosed allegations or transactions, and [3] has voluntarily provided the information to the [government entity] before filing" suit. Cal Gov't Code § 12652(d)(3)(C)(ii). Here, Relator fits the bill.

*First*, the Relator was aware of information sources "independent of" anything publicly disclosed in a statutory channel: the non-public images of renovations are an example, as well as the sale advertisements, and listings on MLS, that are long removed from the normally accessible internet. *Id*. ¶ 54 n.31; *supra* § III(B)(1). *Second*, that information "materially added" to the allegations by revealing IH's fraud. *Id*. ¶¶ 60-87; *e.g.*, *U.S. ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 756 (10th Cir. 2019) ("[M]aterially adds" means information that "would affect a person's decision-making, is significant, or is essential."). *Third*, Relator "voluntarily disclosed" the information to the government. FAC ¶ 12. Accordingly, Relator is an

RELATOR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT                                                      Case No. 22-CV-260-L-MDD

original source.

Defendant's argument that Relator's proprietary technology alone does not make it an original source is wrong. Mot. 13:8–14:12. The images, ads, and other data scraped from old internet sources materially added to the claims and Relator's basis for filing this Complaint. FAC ¶¶ 60-8. Neither the Cities nor any member of the general public could have brought this claim without the unique information obtained by Relator's special data analytic abilities.

**D. *Relator's Complaint Easily Satisfies the Heightened Pleading Requirements of Rule 9(b).***

IH improbably argues that the Complaint is not specific enough for Rule 9(b). But leaving aside the overall assertions about Invitation's 12,000 purchases in California, and other evidence, IH fails to grapple with the fact that fifteen examples were provided, ten of which are not seriously challenged.[8] Many courts have held that representative examples can be used to meet Rule 9(b) and that as few as four examples are sufficient to allege a broad violation of the FCA. *See WellPoint*, 904 F.3d at 678–79 ("We do not require the complaint to identify representative examples of actual false claims, though **that is one way to satisfy the heightened pleading requirement**[.]" (emphasis added)); *United States ex rel. Chin v. CVS Pharm., Inc*, CV 09-1293, 2017 WL 4174416, at *7 (C.D. Cal. Aug. 15, 2017) **("[F]our specific examples . . . state[d] a plausible claim** that [defendant] engaged in a widespread fraudulent scheme[.]" (emphasis added)); *United States v. Paksn, Inc.*, 2:15-CV-09064-SB-AGR, 2021 WL 6882171, at *3–4 (C.D. Cal. Nov. 15, 2021) (**seven examples sufficed** to allege fraud on thousands of claims); *United States v. Chang*,

---

[8] Defendant asserts that Examples 8, 9, 10, 14, and 15 are insufficient, but, taking the facts in the light most favorable to Blackbird, each of these examples demonstrates that significant renovations occurred that would have required permits. Further, Invitation has waived other challenges for purposes of this motion as to the other ten examples. *Carreno v. 360 Painting LLC.*, 319-CV-02239, 2020 WL 4673826, at *2 (S.D. Cal. Aug. 12, 2020) ("[A]rguments raised for the first time in a reply brief are waived.") (citing *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010)).

14

No. CV 13-3772-DMG, 2017 WL 10544289, at *10 (C.D. Cal. July 25, 2017) ("While Defendants find this '**single occasion**' to be insufficient, the Court concludes it is a representative example in support of their claim (emphasis added)); *United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs, Inc.*, 34 F.4th 507, 514 (6th Cir. 2022) (**Four** examples of fraud sufficed to allege "a complex and far-reaching fraudulent scheme": "If a relator alleges a widespread fraud, then **a single adequately pled claim of this nature would allow relators to satisfy Rule 9(b)'s pleading requirement** and proceed to discovery on the entire scheme." (emphasis added and cleaned up)).[9]

The Relator also finds further comfort, and the Court should too, from the figures showing that IH obtains far fewer permits than the average homeowner in four of the nineteen Cities involved here. This evidence is not offered as a stand-alone sophisticated statistical analysis, as Invitation suggests, but as confirmatory evidence that the fifteen examples demonstrate a statewide scheme.

In that regard, that Invitation admits that it spent an average of $25,000 to $38,000 on renovations, *id.* ¶ 46–49, is further evidence of the violation. One would think that a corporation buying thousands of homes and making tens of thousands of dollars in renovations would have proportionally more permits than John Q. Homeowner, but IH has far fewer, *id.* at 55, 88–93.

Invitation's efforts at casting doubt on the allegations are ineffective against this evidence. Most of IH's five-figure renovation projects are not likely to be "cosmetic," Mot. 3:24–25, nor is its pattern of failing to obtain permits likely

---

[9] *See also United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014, 1027 (E.D. Mich. 2017) (four examples sufficed); *United States ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 517–18 (S.D.N.Y. 2014) ("[i]n cases where the alleged fraudulent scheme is extensive and involves 'numerous transactions that occurred over a long period of time, ... it [is] impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct [to comply with Rule 9(b)].'").

"innocent," as it also suggests, Mot. at 23:21, given this pattern of thousands of large renovations and a paucity of permitting. *See Winter ex rel. U.S. v. Gardens Reg'l Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1120 (9th Cir. 2020), cert. denied sub nom. *RollinsNelson LTC Corp. v. U.S. ex rel*. Winters, 141 S. Ct. 1380 (2021) (suspect trends and alleged statistics, including comparative statistics, supported plausibility of false claims). As pled, it is more a pattern and practice than an innocent oversight.

As in *United Healthcare*, 848 F.3d at 1181, "[t]hese allegations, in the context of the complaint as a whole, adequately allege the who, what, when, where and how of the alleged fraud."[10] Who committed the fraud is Invitation, including its pre-merger predecessor Starwood.[11] FAC ¶¶ 15, 48, 49, 91 n.43. What and how they engaged in their fraudulent scheme is by buying and substantially renovating thousands of homes while ignoring their obligation to pay permit fees for the renovations.[12] *Id.* ¶¶ 45–59. When this happened is from 2012 to the present.[13] *Id.* ¶¶ 5, 46. Where includes thousands of home addresses across many California municipalities. *See e.g.*, *id.* ¶¶ 60–87.

Defendant also challenges the FAC's specificity by ignoring the allegations that the examples show the homes before and after Invitation renovated them and demanding the dates of the photos. Mot. 15:21–16:3. But the Complaint alleges that

---

[10] *But see U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) ("[T]he 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)[.]"); *see also United States ex rel. Scott v. Actus Lend Lease*, No. CV 08-07940, 2011 WL 13177635, at *7–8 (C.D. Cal. Apr. 22, 2011) (alleged particulars for false claims satisfied Rule 9(b)).

[11] *See Actus Lend Lease*, 2011 WL 13176749 (C.D. Cal. Apr. 22, 2011) (Relator lacking insider knowledge satisfies party-identification by naming corporations involved in fraud).

[12] *See United States ex rel. Frey v. Health Mgt. Sys., Inc.*, 3:19-CV-0920, 2021 WL 4502275, at *6 (N.D. Tex. Oct. 1, 2021) (Relator sufficiently provided the "what" to satisfy Rule 9(b) by stating the defendant "kept 'add' fees owed to New York").

[13] *See id.*, (Rule 9(b) satisfied by stating the "when" "as 2006 to 2013 and possibly to the present").

they are photos from before and after Invitation did renovations, and that should be enough, as are other allegations in a complaint on a Rule 12 motion. *See e.g.*, *United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, No. 4:12-CV-0876, 2014 WL 3729641, at *3 (W.D. Mo. July 28, 2014) (five representative examples sufficed under Rule 9(b) even though they lacked exact dates or other information because defendant had enough for identification purposes).

Similarly, the operative standard "does not require absolute particularity or a recital of the evidence," and "a complaint need not allege a precise time frame." *United Healthcare*, 848 F.3d at 1180 (cleaned up). This is particularly so when a false claim turns not on any actual statement but rather the failure to act. *See United States ex rel. Herbold v. Doctor's Choice Home Care, Inc.*, No. 8:15-CV-1044, 2019 WL 5653459, at *15 (M.D. Fla. Oct. 31, 2019) (even without an affirmative statement, a knowing avoidance of an obligation states a reverse false claim); *Ormsby*, 444 F. Supp. 3d at 1080–81 (same). So long as IH had an obligation to obtain a permit by paying a permit fee, and "knowingly" avoided it, the exact date of the renovation is not essential. *Herbold*, 2019 WL 5653459, at *15 (reverse claim false stated by only alleging retention of an overpayment).

Defendant also complains that the municipal permit records Relator relied on *might* be unreliable, Mot. 18:4–10, or that some cities may have no records, *id.* 18:3–5. "[A] motion to dismiss is too early a stage to render a judgment on the reliability" of evidence, *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1210 (9th Cir. 2019), especially when the information is contained in official government records. *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 664 (9th Cir. 2018) (A "hypothesis" contesting evidence "proffers a defense," but "speculation does not prevent [relator] from . . . withstand[ing] a motion to dismiss."). The well-pled availability of municipal permit data to Relator's proprietary technology must also be accepted on a motion to dismiss. *Winter*, 953 F.3d at 1114, 1119. And even if the municipal records are not perfect, they consistently show significantly fewer permits

17

1
2
3

for Invitation's properties than for typical homeowners across four different municipalities. This is an appropriate subject for further proceedings, including discovery.

4
5

**E. *The FAC Adequately Alleges that Invitation Knew or Recklessly Disregarded Its Fraudulent Conduct.***

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Defendant is wrong that the FAC fails to sufficiently plead scienter. Mot. 23:14-15. For a reverse false claim, scienter can be established if the Defendant "knowingly conceal[ed] or knowingly and improperly avoid[ed]" its obligation. Cal Gov't Code § 12651(a)(7). The "knowingly" for scienter requires a showing that Defendant acted: (1) with "actual knowledge of the information," (2) in "deliberate ignorance of the truth or falsity of that information", or (3) in "reckless disregard of the truth or falsity of that information." Cal Gov't Code § 12650(b)(3). "Proof of specific intent to defraud is not required." *Id*. And, most important, a relator may plead scienter generally. *United Healthcare*, 848 F.3d at 1180 (citing Fed. R. Civ. P. 9(b)). The FAC includes numerous allegations and supporting evidence that shows Defendant—at a minimum—acted recklessly by failing to pay permit fees. The FAC alleges that Defendant knew its rental properties were subject to permit laws but that it failed to obtain them. FAC ¶¶ 4, 51, 60–87. Although not necessary to support this allegation, IH even received at least one stop-work notice for renovating without a permit, which "should have alerted IH" that it was "choosing to ignore permitting requirements," but the Company refused to change course. *Id*. ¶ 69. The overall and general allegations of scienter, the specifics of the wide-ranging and lengthy misconduct, and this stop-work notice each independently suffice to show that scienter has been adequately pled.[14] *See WellPoint*, 904 F.3d at 680 (holding scienter

25
26
27
28

[14] Defendant misleadingly cites *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 439 (6th Cir. 2016) to claim that defendant's knowledge of the law does not demonstrate defendant knowingly violated it, but the *Harper* relator did not even know the law. Mot. at 24:13–14. In contrast to here,

RELATOR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT                    Case No. 22-CV-260-L-MDD

1    sufficiently alleged when relator claimed that errant signatures on reports "should
2    have tipped off the defendant organizations"); *Laymon, Jr. v. Bombardier Transp.*
3    *(Holdings) USA, Inc.*, 2009 WL 793627, at *12 (W.D. Pa. Mar. 23, 2009) (holding
4    "a jury could find that there 'is simply no possibility that [defendant] could have
5    'mistaken' the fictional payments'" when defendant "knew that these costs were not
6    to be included [in the reports, and the company] was responsible for reviewing and
7    verifying the reports before they were submitted").

8         Defendant also tries to shirk responsibility for its widespread violations by
9    pinning the blame on its contractors. Mot. 24:19–25:4. The contractors are its agents,
10   and the homeowner remains responsible for the permitting. It also begs credulity to
11   suggest multiple contractors around the state would disregard permitting laws
12   without the instruction, knowledge, and/or approval of Invitation. Plus, Invitation's
13   Form-10-K states that its "in-house team of dedicated personnel . . . oversee our
14   upfront property renovation process." It appears that IH had knowledge of this
15   activity, but as the Ninth Circuit has noted, the FCA sought "to reach what has
16   become known as the 'ostrich' type situation where an individual has 'buried his head
17   in the sand' and failed to make simple inquiries which would alert him [of] false
18   claims[.]" *United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008) (citing S.
19   Rep. No. 99–345, at 21 (1986)); *San Francisco Unified Sch. Dist. ex rel. Contreras*
20   *v. First Student, Inc.*, 168 Cal. Rptr. 3d 832, 847 (2014) (The "plain language of the
21   CFCA reflects similar legislative intent [as the FCA knowledge definition]."); *see*
22   *also Bourseau*, 531 F.3d at 1168 (president acted with "deliberate ignorance," by
23   "undert[aking] no inquiry into the cost reports, let alone a reasonable and prudent
24   one"); *see also Ormsby*, 444 F. Supp. 3d at 1081 (failing to make simple inquiries
25   constitutes scienter under the FCA); *Godecke*, 937 F.3d at 1212 (same).

26        Lasty, Defendant alleges that the Complaint did not allege scienter for the
27
28   where IH admitted it knew of the permitting laws, the relator in Harper merely
     alleged a "theoretical possibility" that the defendant did. *Harper*, 842 F.3d at 439.

homes initially purchased by Starwood, a company Invitation later acquired by merger, through which it also acquired all of Starwood's homes. Mot. 24:19–25:4. The Complaint alleged that Starwood also made substantial renovations, averaging $26,000, very much parallel to Invitation. FAC ¶ 49; *see also, e.g.*, *WellPoint*, 904 F.3d at 677 (for pleading 9(b) specificity: "a complaint need not distinguish between defendants that had the exact same role in a fraud"). Whether one says that Invitation has stepped into Starwood's shoes by acquiring it and its liabilities by merger, or that Invitation independently violated the law when it acquired Starwood and its homes without doing the due diligence through which it would have discovered the lack of permits (or ignoring the results of that due diligence), the liability remains with Invitation. *See City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014) (successor liability applies "to a consolidation or merger"). We did not name Starwood as a defendant because they no longer exist as an independent company. FAC ¶ 48. Taking the Complaint's factual allegations as true, there is no basis to treat the homes initially acquired by Starwood, and now owned by IH, any differently from the rest.

## IV.   CONCLUSION

For the above reasons, the Court should deny Defendant's Motion to Dismiss and allow this important public interest case to move forward.

If the FAC is dismissed for the errant omission of any underlying facts, Relator should plainly be granted an opportunity to replead. The facts discovered by Relator here suffice to raise an inference of widespread wrongdoing against these Cities, but if anything is deemed missing it can surely be remedied. *Valley Campus*, 2021 WL 4816648, at \*14 ("The Ninth Circuit has a policy of granting leave to amend with extreme liberality." (cleaned up)). Defendant's argument to the contrary, Mot. 25:7–16, is entirely conclusory.

Dated: June 27, 2022

Respectfully submitted:

*/s/ Ed Chapin*
Ed Chapin (CA Bar No. 05328)
**SANFORD HEISLER SHARP, LLP**
2550 Fifth Avenue, 11th Floor
San Diego, CA 92103
Telephone: (619) 577-4251
Email: echapin@sanfordheisler.com

*/s/ Vince McKnight*
H. Vincent McKnight, *Pro Hac Vice* Pending
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5201
Email: vmcknight@sanfordheisler.com

*/s/ Len Simon*
Leonard B. Simon (CA Bar No. 58310)
**LAW OFFICES OF LEONARD B. SIMON**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644
Email: lens@rgrdlaw.com

RELATOR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT

Case No. 22-CV-260-L-MDD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **SIGNATURE CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to H. Vincent McKnight and Leonard B. Simon, counsel for the Plaintiff-Relator Blackbird Special Project, LLC, and that I have obtained Mr. McKnight's and Mr. Simon's authorization to affix their electronic signatures to this document.

By: */s/ Ed Chapin*
           Attorney for the Plaintiff-Relator
           echapin@sanfordheisler.com