UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, et al.,<br><br>          Plaintiff-Relators,<br><br>v.<br><br>INVITATION HOMES, INC.,<br><br>          Defendant. | Case No.:  22-cv-260-L-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 10]** |

Pending before the Court is Defendant's motion to dismiss the first amended complaint.  (ECF No. 10.)  The Court decides the matter on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d.1).  For the reasons stated below, Defendant's motion to dismiss is denied.

I.     **BACKGROUND**

*Qui tam* plaintiff Blackbird Special Project, LLC[1] ("Relator") brings this false claims action on behalf of eighteen municipalities in California and Roes 1 through 250

---

[1] The investigation leading up to this case was started by Deckard Technologies, Inc., which then transferred the investigation in March of 2020 to Blackbird Technologies, LLC, a spin-off of Deckard. (ECF No. 1-2, at 9 n.2.)  Both companies are collectively referred to as "Relator" for convenience.

(collectively, "Plaintiffs") against Invitation Homes, Inc. ("Defendant"). According to the first amended complaint, Defendant is a premier home-leasing company whose predecessor was founded in 2012. (ECF No. 1-2, at 9; ECF No. 10, at 11.) Since 2012, Defendant has bought homes for the purpose of renting them out in many states, predominantly in California. (*Id.* at 6.) In August of 2017, Defendant merged with Starwood Waypoint Homes ("Starwood"), another owner and operator of single-family homes, increasing Defendant's portfolio of single-family homes in California by about 5,500. (*Id.* at 9, 18.) As of December 31, 2019, Defendant owned almost 80,000 single-family homes in twelve states, including over 12,000 in California. (*Id.* at 7, 9.)

The first amended complaint alleges that Defendant violated the California False Claims Act ("CFCA"), Cal. Gov't Code § 12651, by renovating thousands of homes without obtaining the necessary permits thereby depriving Plaintiffs of permit fees. (*Id.* at 9, 17.) Relator alleges that Defendant's failure to obtain permits also allowed it to avoid revaluations that would have happened if permits were obtained, thus evading increased property taxes on the improved properties and further defrauding Plaintiffs. (*Id.* at 7 n.1, 17.) Relator claims that Defendant intentionally ignored permitting laws to avoid the fees and increased taxes as well as get renovated homes on the rental market as soon as possible. (*Id.* at 17.)

To support these assertions, Relator used proprietary software to scour different rental listing websites such as Zillow.com[2] and Defendant's website to identify homes owned by Defendant. Relator then used its proprietary "lookback" technology to access pre-renovation images of the homes from a multiple listing service ("MLS")[3] and compare them with post-renovation images from the rental advertisements. (*Id.* at 19–

---

[2] Zillow.com is an online rental marketplace that hosts a database of homes for sale, homes for rent, and homes not currently on the market as well as home value and rent estimates, among other home-related information. *See* Zillow, *About Us*, https://www.zillow.com/corp/About.z.

[3] A multiple listing service is a database that provides information about properties for sale in a specified geographical location. *See, e.g.*, MLS.com, *What is MLS.com?*, https://www.mls.com.

30.) Relator provides fifteen examples of the before and after comparisons to illustrate that renovations took place. (*See id.*) Relator then accessed the permit records through the Plaintiffs' websites for each of the homes in the examples and found that no permits were pulled for any of the renovations. (*See id.*)

Relator also used Plaintiffs' permit records to compare the percentage of Defendant's homes for which one or more building permits were obtained after Defendant acquired the property with the percentage of all other homes in the jurisdiction which had permits pulled in the same time period. (*Id.* at 30.) Relator provided the results of this comparison for four of the Plaintiffs and noted that Defendant obtained permits at a lower percentage in all four municipalities. (*Id.*) Relator contends that this comparison of permit rates supports an inference of a widespread fraudulent scheme taking place across the state of California. (*Id.* at 31.)

Defendant now moves to dismiss Plaintiffs' first amended complaint on two grounds: (1) the complaint is barred by the public disclosure doctrine under section 12652(d)(3) of the California Government Code, and (2) Plaintiff has failed to state a claim upon which relief can be granted and to plead such a claim with the requisite particularity pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 10.) The Court addresses each argument in turn.

## II. PUBLIC DISCLOSURE DOCTRINE

The public disclosure doctrine provides that "[t]he court shall dismiss" a *qui tam* action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed."[4] Cal. Gov't Code § 12652(d)(3). This is because "where there has been a public disclosure the governmental authority is 'already in a position to

---

[4] The statute bars dismissal on public disclosure grounds when the motion is opposed by the "prosecuting authority of a political subdivision." Cal. Gov't Code § 12652(d)(3). Here, only the prosecuting authorities from the cities of Corona and Riverside filed a notice opposing dismissal on the basis of public disclosure. (ECF No. 12.) Therefore, the Court denies Defendant's motion to dismiss on public disclosure grounds only as to these two plaintiffs from the outset but must determine the doctrine's applicability as to all other plaintiffs.

vindicate society's interests, and a *qui tam* action would serve no purpose.'" *State of California v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 431 (2006) (quoting *U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003)). It follows that dismissal is only warranted if "the publicly available information is already sufficient to place the government on notice of the alleged fraud." *Id.* (quoting *U.S. ex rel. Longstaffe v. Litton Indus., Inc.*, 296 F. Supp. 2d 1187, 1192 (C.D. Cal. 2003)).

In accordance with the underlying policy, the statute does not preclude *qui tam* actions based on *any* public disclosure. Rather, the information must have been publicly disclosed in one of the specific channels identified in the statute. *See State of California v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 432–33 (2006) ("The fora identified in the statute further limit our review.") Most relevant here, the sources covered under the public disclosure doctrine include news media and government reports. *See* Cal. Gov't Code § 12652(d)(3).

Defendant asserts that Zillow.com, the MLS, and Defendant's website qualify as news media under CFCA's public disclosure bar. (ECF No. 10, at 18.) Defendant takes the position that "websites accessible to anyone on the internet meet the definition of 'news media.'" (*Id.*) Thus, Defendant claims, Plaintiffs' reliance on such websites trigger the public disclosure bar which is fatal to their claim. (*Id.*)

The Court declines to adopt Defendant's broad interpretation of the term "news media." Although the Supreme Court has held that the public disclosure bar has a "generally broad scope," it also recognized that "[b]y its plain terms, the public disclosure bar applies to some methods of public disclosure and not to others." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408, 414 (2011).[5] In other words, by

---

[5] Precedent developed under the federal False Claims Act may be considered insofar as the federal and state statutes are the same. *City of Pomona v. Superior Ct.*, 107 Cal. Rptr. 2d 710, 716 (2001); *State of California ex rel. Bowen v. Bank of Am. Corp.*, 23 Cal. Rptr. 3d 746, 758 n.11 (2005). Here, federal law is instructive because the public disclosure provisions of the two statutes are functionally identical. *Compare* Cal. Gov't Code § 12652(d)(3), *with* 31 U.S.C. § 3730(e)(4).

enumerating specific sources that narrow the definition of a public disclosure, the statute does not "capture all information that could be described as 'public' in common parlance." *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619, at *10 (C.D. Cal. July 16, 2019), *rev'd and remanded on other grounds*, 854 F. App'x 840 (9th Cir. 2021). Another court in this district found that "applying the news media provision to anything ever published publicly on the internet is contrary to the ordinary meaning of the term 'news media.'" *United States ex rel. MC2 Sabtech Holdings, Inc. v. GET Eng'g Corp.*, 580 F. Supp. 3d 876, 889 (S.D. Cal. 2022) (quoting *Integra*, 2019 WL 3282619, at *12). This Court agrees.

In *MC2 Sabtech Holdings*, the court considered whether the defendant company's website and filings with the California Secretary of State were "news media" for purposes of the federal False Claims Act. *See MC2 Sabtech Holdings*, 580 F. Supp. 3d at 889–90. In concluding that neither source was "news media," the court found that the information on the websites appeared unlikely to be considered particularly newsworthy, and the websites themselves were not "curated" but simply published information about the organizations. *Id.* at 890. The court also found that even though the websites were intended to circulate information widely, the "conveyance of this information [was] merely ancillary" to the organizations' primary businesses. *Id.* Most importantly, the court found that the websites did not fall under the "'broad ordinary meaning' of the term 'news media'" such that they "could reasonably be described as 'news media' as at least some people would [use] that term in everyday speech." *Integra*, 2019 WL 3282619, at *15 (quoting *Schindler Elevator Corp.*, 563 U.S. at 408).

The same analysis applies here. The content contained in the websites that Relator relies on, mainly rental listings, is unlikely to be considered newsworthy rather than informational. Further, although the websites are intended to circulate information widely, the conveyance of information on the websites is ancillary to the organizations' primary businesses of providing a marketplace for real estate and information about

rental homes.  As such, the Court finds that the websites Relator relied on do not fit into the broad ordinary meaning of the term "news media."  Accordingly, the Court finds that the disclosures in the first amended complaint are not public disclosures for purposes of the statute.

Defendant also argues that the municipal records reviewed by Relator are government reports and are thus public disclosures under the statute.  (ECF No. 10, at16–17.)  Even assuming that a disclosure qualifies as a public disclosure under the statute, dismissal is only warranted where such disclosure reveals the "allegations or transactions" underlying the complaint.  Cal. Gov't Code § 12652(d)(3).  In analyzing whether the transactions underlying a relator's complaint were publicly disclosed, the Ninth Circuit adopted the following analysis:

> If $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1015 (9th Cir. 2001) (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)).

Here, X represents actions taken by Defendant that would require a permit, while Y represents Defendant's failure to obtain one.  Taken together, one may infer that fraud was committed.  The Court has already found that the websites Relator used to demonstrate that Defendant performed permit-requiring renovations were not public disclosures.  So, assuming *arguendo* that the databases Relator used to show Defendant failed to obtain permits are government reports for purposes of the statute, these disclosures by themselves are not enough to implicate the public disclosure doctrine because X is still missing from the equation.  Without X, an inference of fraud cannot be made, and the government is not put on notice of the alleged fraud.  Consequently, the

Court declines to dismiss Plaintiff's complaint on public disclosure grounds as to all Plaintiffs.

### III. FAILURE TO STATE A CLAIM

Having determined that dismissal is not warranted under the public disclosure doctrine, the Court turns to Defendant's motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

**A. Legal Standards**

**i. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

> ii. **Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)**

In addition to meeting the pleading demands of Rule 8, Federal Rule of Civil Procedure 9(b) requires a plaintiff bringing a claim grounded in fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).[6] The allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted). This is accomplished by describing the "who, what, when, where, and how" of the charged misconduct. *Vess*, 317 F.3d at 1106 (quotation omitted). While "mere conclusory allegations of fraud are insufficient," *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**B.   Count One—Violation of California False Claims Act (Cal. Gov't Code § 12651(a)(7))**

Relator alleges a violation of the "reverse false claims" provision of the CFCA. *See State of California ex rel. Bowen v. Bank of Am. Corp.*, 23 Cal. Rptr. 3d 746, 750 (2005). To state a claim under such provision, Relator must allege with particularity that Defendant (1) concealed or improperly avoided or decreased an obligation to pay the government, and (2) did so knowingly. Cal. Gov't Code § 12651(a)(7).

The use of representative examples is one means for a plaintiff to meet the pleading obligation under Rule 9. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *see also Aflatooni ex rel. U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) ("Evidence of an actual false claim is the *sine qua non* of a False Claims

---

[6] Neither party disputes the applicability of Rule 9 to Plaintiff's claim under the CFCA. (*See generally* ECF Nos. 10, 11.)

Act violation." (internal quotation omitted)). [7] Relator need not "identify representative examples of false claims to support *every* allegation," but must "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted," or in this case, not submitted despite an obligation to do so. *Ebeid*, 616 F.3d at 998–99 (emphasis added) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Defendant maintains that the first amended complaint falls short on both aspects of a well-pled claim for fraud. First, Defendant argues that Relator failed to allege any specific false claim with the requisite particularity. (ECF No. 10, at 21–24.) Defendant addresses the photos in the complaint and notes that Relator excluded facts that establish Defendant or its predecessor owned the homes depicted in the photos when the purported renovations occurred. (*Id.* at 21.) Defendant also provides reasons to doubt the completeness of the online permitting records Relator used, arguing that even if it is established that the renovations took place Relator cannot prove that Defendant failed to obtain the necessary permits based on such unreliable sources. (*Id.* at 24.) Because of these deficiencies, Defendant asserts that Relator has not identified a representative example of a false claim and thus fails to allege particular details of a scheme to survive a motion to dismiss. (*Id.* at 21–24.)

Second, Defendant argues that Relator failed to allege a scheme with the requisite particularity that warrants the inference of any false claims. (ECF No. 10, at 24–29.) Specifically, Defendant states that Relator's statistical analysis contains none of the rigor or detail required to withstand a motion to dismiss, as it contains scant explanation of its data analysis and states only in vague and conclusory terms that it "implemented artificial intelligence and machine learning." (*Id.* at 26.) Defendant also attacks the inference of

---

[7] Like the public disclosure doctrine, the reverse false claims provisions of the federal and state statutes are the same. *Compare* Cal. Gov't Code § 12651(a)(7), *with* 31 U.S.C. § 3729(a)(1)(G).

fraud by noting that the complaint presents statistics for only four of the eighteen municipalities.  (*Id.*)

The Court finds that Relator has sufficiently alleged specific evidence of unlawful conduct.  Relator provides details including that "who" (the Defendant company) (*see generally* ECF No. 1-2); the "what" (undertaking renovations that require a permit and failing to obtain such a permit) (*id.* at 17–30); the "when" (since the Defendant company was founded in 2012 and started purchasing homes following the 2007 to 2008 financial crisis) (*id.* at 9); the "where" (in each of the named eighteen municipalities including fifteen specific addresses described in the complaint) (*id.* at 9, 20–30); and the "how" (intentionally ignoring permitting laws) (*id.* at 17).  The ownership of the homes at issue, the nature and value of any renovations performed including whether they necessitated a permit, and the reliability and completeness of the permit databases are all factual determinations to be resolved at a later stage of the proceedings.  Here, the allegations in the complaint, when taken as true, fill in the details necessary to plead particular instances of fraud.  *See, e.g.*, *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1026 (S.D. Cal. 2017) (finding sufficient pleading under Rule 9 where the complaint included the who, what, when, where, and how of the alleged fraud).

Moreover, Relator's allegations provide reliable indicia to support a strong inference of a fraudulent scheme.  Relator described its process of comparing the rates at which permits were pulled for Defendant's properties with other properties in the same jurisdiction and gave a plausible explanation for the results.  The alleged disparities between the rates leads to a strong inference that Defendant engaged in a pattern of fraudulent activity beyond the specific examples in the complaint.  This reliable indicia of fraud in combination with the examples are sufficient to state a claim under Rule 9.  *See United States v. Mariner Health Care, Inc.*, 552 F. Supp. 938, 948 (N.D. Cal. 2021) ("[Relator's] statistical models, combined with the particular details it has provided regarding the 'who, what, when, where, and how' of the fraudulent scheme, are sufficient to state a claim under the FCA.").

Although Defendant provides alternative explanations for the statistical disparities, (ECF No. 10, at 28–29), where there are "two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  In fact, a "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Id.*  While Defendant's explanations for the statistical disparities may also be plausible, they do not undermine Relator's theories to the point of implausibility.

Defendant also asserts that Relator failed to adequately plead that Defendant *knowingly* concealed or avoided an obligation, which is required to state a claim under the CFCA.  (ECF No. 10, at 29); Cal. Gov't Code § 12651(a)(7).  Under the CFCA's scienter requirement, "innocent mistakes, mere negligent misrepresentations and differences in interpretations will not suffice to create liability." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011).  Instead, Relator must allege actual knowledge of falsity or reckless disregard of the truth.  *See id.*

Allegations that Defendant "buried [its] head in the sand and failed to make simple inquiries which would alert [it] that false claims are being submitted" is sufficient to plead scienter.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1211 (9th Cir. 2019) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (9th Cir. 2016)).  Therefore, Relator can sufficiently plead scienter either by alleging that Defendant knew of its obligation to obtain a permit and did not do so, or by alleging that Defendant did not inquire as to whether its renovations required permits in the first place.

Defendant was allegedly aware of local laws and regulations requiring permits as evidenced by its statement on its 10-k form.  (*See* ECF No. 1-2, at 18–19.)  By showing that Defendant failed to obtain permits despite general awareness of the existence of permitting laws and regulations, Relator has sufficiently pled that, at the very least, Defendant was unaware that a permit was required due to its own lack of inquiry.  Thus, the complaint satisfies the scienter pleading requirement.  Whether Defendant knew the

laws existed and reasonably believed it was in compliance is a factual dispute not ripe for resolution on a motion to dismiss. (*See* ECF No. 10, at 30.)

Defendant's arguments that Relator did not plead scienter as to Defendant's independent contractors and Starwood are likewise unavailing. (ECF No. 10, at 30.) Neglecting to hold a contractor or Starwood responsible for investigating whether a permit is required employs the same state of mind as failing to do the investigating itself. Therefore, Relator has met all requirements to sufficiently state a claim under the CFCA.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 3, 2023

_____
Hon. M. James Lorenz
United States District Judge