# EXHIBIT A

CONFIDENTIAL



# MASTER PLATFORM AGREEMENT

**THIS MASTER PLATFORM AGREEMENT** (" Agreement") is effective as of January 31, 2018 ("Effective Date") by and between **THR PROPERTY MANAGEMENT L.P.**, a Delaware limited partnership, on behalf of itself and its affiliates, whose principal place of business is 901 Main Street, Suite 4700, Dallas, Texas 75202, ("Customer") and **SMS ASSIST L.L.C.**, a Delaware limited liability company, whose principal place of business is 875 N. Michigan Avenue, Suite 2800, Chicago, Illinois 60611 ("SMS Assist"). Customer and SMS Assist may be referred to individually as a "party" and collectively as the "parties."

WHEREAS, SMS Assist is engaged in the business of providing facility services including, but not limited to, snow removal and salting and sanding, landscaping, periodic floor cleaning, window washing, HVAC maintenance and service, plumbing, electrical and handyman services and other maintenance services (the "Contract Services") in conjunction with certain technology and call center services as further described in this Agreement (the "Platform Services"); and

WHEREAS, Customer is engaged in the rental property business and has real estate assets across the nation which must be maintained in the course of its business; and

WHEREAS, the parties are desirous of entering into an agreement providing for the procurement of Platform Services in order to facilitate the management of the Contract Services SMS Assist performs on behalf of Customer pursuant to that certain Master Services Agreement by and between SMS Assist and Customer with an effective date of January 31, 2018 (the "Master Services Agreement").

NOW, THEREFORE, by reason of the premises and in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1. **CONTRACT SERVICES.** Commencing on the Effective Date, Customer does hereby engage SMS Assist to perform such Platform Services described in any statement of work ("Statement of Work") attached hereto or executed in accordance with the terms of this Agreement in conjunction with and in order to facilitate the Contracted Services performed under the Master Services Agreement. Each Statement of Work shall contain an Exhibit A which details: (i) the Platform Services to be provided by SMS Assist, (ii) any applicable compensation or pricing terms, and (iii) any amendments to the terms of the Agreement required as a result of such Statement of Work.

2. **PRICE AND PAYMENT TERMS.**

a) The price of the Platform Services supplied under this Agreement shall be set forth in Exhibit A to the applicable Statement of Work attached hereto. The prices set forth in Exhibit A shall not be modified during the term of this Agreement without the prior written consent of

DocuSign Envelope ID: 059B8264-3745-448C-B89C-2977397C5E139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.235   Page 3 of 15

CONFIDENTIAL

Customer. Prices do not include sales, use, excise or similar taxes which may be applicable to the Platform Services and such taxes shall be added when and where applicable.

b) SMS Assist shall invoice Customer for all Platform Services performed and each invoice shall (i) identify the Platform Services performed, the date the Platform Services were provided, the price of the Platform Services, and any applicable taxes; and (ii) specify that payment is due within 30 days of receipt of the invoice. Customer shall remit payment to SMS Assist within such terms. At the election of SMS Assist, invoiced amounts that are not paid when due will bear interest at the lesser of one and a half percent (1.5%) interest per month or the highest rate permissible under applicable law, whichever is less.

3. TERM. This Agreement shall commence on the Effective Date and shall continue coterminously with the Master Services Agreement and any actions which shall extend or terminate the Master Services Agreement shall automatically extend or terminate this Agreement simultaneously. At such time, this Agreement will terminate and be of no further effect except as set forth in Section 19.

4. TERMINATION. In the event of a material breach by either party of this Agreement or any Statement of Work, the non-breaching party shall have the right to terminate this Agreement with 7 days' advance written notice to the breaching party, provided that the non-breaching party was given a reasonable period to cure such breach (which must not be less than 30 days) and the breaching party has failed to cure such breach.

5. INSURANCE. SMS Assist represents and agrees that during the term of this Agreement SMS Assist shall carry, or cause to be carried, at its own expense: (a) full Worker's Compensation Insurance providing the statutory benefits for each state in which SMS Assist and/or its contracted service providers performs work for Customer including Employer's Liability coverage with minimum limits of $1,000,000 or that statutory minimum, whichever is greater, per accident or employee illness for its employees, sub-contractors, affiliates, agents, or representatives performing Platform Services on Customer's premises; (b) commercial general liability coverage written on an occurrence form with a minimum limit of not less than two million dollars ($2,000,000) per occurrence for personal injury and property damage; (c) automobile liability coverage for all owned and non-owned vehicles, including rented and leased vehicles containing minimum limits per occurrence of $1,000,000. (d) professional liability insurance coverage in with a minimum limit of not less than two million dollars ($2,000,000) per occurrence, which shall include cybersecurity and data breach coverage for the loss or unauthorized disclosure of personally identifiable information; (e) fidelity or crime insurance coverage of its employees, sub-contractors, affiliates, agents, or representatives performing Platform Services on Customer's premises in the minimum amount of $1,000,000 per occurrence; and (f) umbrella liability coverage with a minimum limit of $50,000,000 per occurrence and in the aggregate on terms consistent with the commercial general liability insurance policy and including employer liability and automobile liability. Customer shall be named as an additional insured, for each of the policies described in Section 5(a)-(e) on a primary and non-contributory basis. SMS Assist may meet the minimum coverage limits described in this Section 5 with any combination of primary and excess coverage. All liability policies must contain a waiver of subrogation against Customer, contain such provisions as Customer deems reasonably necessary or desirable to protect its interest

DocuSign Envelope ID: 059B8264-3745-448C-B89C-2977397CFE139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.236   Page 4 of 15

CONFIDENTIAL

including endorsements providing that (i) neither SMS, Customer nor any other party shall be a co-insurer under said Policies, (ii) Customer shall receive at least thirty (30) days prior written notice of any modification, reduction or cancellation, and (iii) for a deductible per loss of an amount not more than that which is customarily maintained by prudent owners of single family residential properties with a standard of operation and maintenance comparable to and in the general vicinity of the Locations.

All insurance coverages required under this Agreement shall be written with a company or companies having a minimum A.M. Best's rating of "A-" with a financial size classification of "VII" as determined by the most recently published Best's Key Rating Guide. Within a reasonable time after the execution of this Agreement, SMS Assist shall provide certificates of insurance evidencing the insurance required under this Agreement.

6. INDEMNIFICATION. SMS Assist shall indemnify, defend and hold the Customer harmless from and against any and all claims, damages, costs, liabilities and expenses arising out of or in connection with personal injury or property damage or any other claims or costs resulting from the negligence or willful misconduct of SMS Assist, its officers, agents, or representatives while performing the services set forth herein, or SMS Assist's material breach of this Agreement, or violation of any applicable federal, state or local law by SMS Assist or the services provided hereunder.

Customer agrees to indemnify, defend, and hold SMS Assist harmless from and against all claims, demands, actions and expenses (including reasonable attorney's fees) made or brought against SMS Assist, or such as it may pay or incur, as a result of Customer's negligence or willful misconduct, Customer's material breach of this Agreement, or violation of any applicable federal, state or local law by Customer.

Notwithstanding the foregoing, neither party shall be liable to the other for, and each party hereby waives any and all rights to claims against the other party, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost revenue or profits, even if a party has knowledge of the possibility of such damages; and, except for (i) either party's indemnification obligations set forth above in this Section 6, (ii) a party's obligation to make payment for Contracted Services (as described in Section 2), or (iii) a violation of Section 7 or 8, in no event shall either party's liability hereunder exceed $1,000,000.00. The foregoing limitation shall in no way limit the reimbursement or coverage of claims covered by insurance.

7. CONFIDENTIAL INFORMATION.

a) For the purposes of this Agreement, confidential information ("<u>Confidential Information</u>") shall mean all proprietary, secret or confidential information, materials or data which are not generally known to the public and are identified at the time of disclosure, or would reasonably be understood by the receiving party, to be proprietary or confidential, and which the receiving party observes or learns in connection with this Agreement, including any information that may have been provided prior to the Effective Date of this Agreement. Such Confidential Information may include, but is not limited to, financial information, details of operations, processes and procedures, including without limitation, pricing and fees information, current and

DocuSign Envelope ID: 059B8264-3745-448C-B89C-2977397C5E139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.237   Page 5 of 15

CONFIDENTIAL

prospective customers, partners or investors, asset procurement methods, discussions, notes, studies, business plans, software, databases, trade secrets, contracts, designs, concepts, inventions, developments, decision technology, software programs and code, research and development, and all data, reports, models, strategies, ideas, interpretations, forecasts and records containing or otherwise reflecting information concerning the disclosing party.

      b)      Customer and SMS Assist acknowledge that either party may disclose Confidential Information in connection with this Agreement. If a party receives Confidential Information it shall: (i) limit disclosure of Confidential Information to those of its employees, agents, or subcontractors that have a need to know such portion of the Confidential Information to accomplish the purposes contemplated by this Agreement; (ii) use at least the same degree of care in maintaining the secrecy of the Confidential Information as the receiving party uses in maintaining the secrecy of its own proprietary, secret or confidential information, but in no event less than a reasonable degree of care; (iii) use Confidential Information only to fulfill its obligations under this Agreement; (iv) return or destroy all documents, copies, notes or other materials containing any portion of the Confidential Information upon request by the disclosing party; and (v) shall not reverse engineer, decompile, disassemble or otherwise attempt to discover any source codes, object codes, data, information, copyrights, trademarks, patents, inventions, trade secrets, or prototypes delivered to it by the other party or attempt to do so.

      c)      The receiving party shall have no obligation concerning any portion of the Confidential Information which: (i) was known to the receiving party before disclosure of the Confidential Information; (ii) is lawfully obtained, directly or indirectly, by the receiving party from a third party and such third party is under no obligation of confidentiality; (iii) is or becomes publicly available other than as a result of an act or failure to act by the receiving party; or (iv) is independently developed without the use of Confidential Information or; (v) is required to be disclosed by applicable law or legal process.

      d)      The receiving party acknowledges and agrees that in the event of any breach of this Section 7, the disclosing party would be irreparably and immediately harmed and could not be made whole by monetary damages alone. Accordingly, the parties agree that in the event the receiving party uses or discloses the disclosing party's Confidential Information in breach of this Section 7, or (in the disclosing party's sole opinion) the receiving party is likely to use or disclose the disclosing party's Confidential Information in breach of this Section 7, the disclosing party, in addition to any other remedy to which it may be entitled in law or equity, shall be entitled to seek equitable relief, including temporary and permanent injunctive relief and specific performance without the requirement of having to post a bond or other security. The prevailing party shall be entitled to the recovery of its reasonable attorney's costs, fees and expenses as part of such action.

      8.      INTELLECTUAL PROPERTY.

      a)      Platform. SMS Assist's facility and property management technology platform includes, but is not limited to SMS Assist's proprietary online databases commonly referred to as "SMS One," the Integrated Voice Recognition system, SMS Assist's mobile applications, map-layering technology, weather-layering technology, mobile embodiments of the platform, and all source code, object code, information, design, copyrights, trademarks, patents, inventions and

DocuSign Envelope ID: 059B8264-3745-448C-B89C-2977397C5E139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.238   Page 6 of 15

CONFIDENTIAL

trade secrets embodied therein (collectively, the "Platform").  Customer acknowledges and agrees that the Platform is Confidential Information subject to the terms of Section 7 of this Agreement. SMS Assist warrants to Customer no part of the Platform does or will infringe upon, misappropriate or violate any patent, copyright, trade secret or other right of a third party, and SMS Assist will indemnify, defend and hold Customer harmless from and against any loss, cost, liability or expense (including reasonable counsel fees) arising out of any breach or claimed breach of this warranty. SMS Assist warrants to Customer that the Platform and SMS Assist maintain adequate internal controls to ensure compliance with applicable statutes, ordinances, rules, regulations, orders or determinations of any governmental authority, including, but not limited to, federal, state and local data privacy laws, and covenants to maintain such controls and produce available SOC 1, SOC 2 or other reports reaonably requested by Customer during or after the term of Agreement.

   b) Grant of License.  Subject to the terms and conditions of this Agreement, SMS Assist hereby grants to Customer a limited, nonexclusive, nontransferable license to access and use (and allow its Authorized Users, as defined below, to access and use) the Platform and its functionality in accordance with the SOW or SOWs. For purposes hereof, "Authorized Users" mean employees of Customer who have been specifically granted authority by Customer (in accordance with Section 7 of this Agreement) to access the Platform, have agreed to abide by the terms of this Agreement, and have a need to access such information available on the Platform. Customer's rights to access and use the Platform shall terminate automatically upon the termination of this Agreement for any reason.

   c) Transaction Data. The Platform will capture data and information regarding applicable transactions and services ("Transaction Data"). Such Transaction Data (other than aspects which are not Confidential Information) will be Customer's information, and will be made available by SMS Assist to Customer in an archival database for at least sixty (60) days following the date created and following termination of this Agreement in a reasonable format established by SMS Assist. In the event sixty (60) days is insufficient with regards to transition after termination of the Agreement, the parties shall agree on a reasonable amount of time to make the Transaction Data available. SMS Assist may retain and use the Transaction Data for: (i) the management of SMS Assist's billing of Customer; (ii) for purposes of maintaining the archival database for Customer as provided in the prior sentence; (iii) for SMS Assist's legitimate business purposes, including to develop, use, aggregate and distribute trend and experiential information; provided the information does not specifically identify the Customer; and (iv) for legal and compliance purposes.

   d) Prohibited Activities.  Customer shall have no right to use the Platform, in whole or in part, for any purpose other than for the purpose of procuring and managing the Contract Services and for the purposes for which the Platform is intended. Without limiting the generality of the foregoing, Customer may not: (i) make the Platform available in any form to any person or entity who is not an Authorized User without the prior written consent of SMS Assist, except as permitted under this Agreement; (ii) rent, sublicense, sell or lease, directly or indirectly, the Platform or any portion of the Platform to any third party; and (iii) alter, modify, decompile, create derivative works, disassemble, or reverse engineer the Platform or any part of the Platform or the

DocuSign Envelope ID: 059B8264-3745-448C-B89C-297397C5E139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.239   Page 7 of 15

CONFIDENTIAL

Platform's source code, object codes, data, information, trade secrets, design elements, or programming, or attempt to do so.

e) Proprietary Rights. SMS Assist retains all rights, title and interest in and to the Platform, including all source code, object code, data, information, copyrights, trademarks, patents, inventions and trade secrets embodied therein. Nothing in this Agreement constitutes a waiver of any of SMS Assist's rights under the intellectual property laws of the United States or any other jurisdiction or under any other federal, state, or foreign laws. Any attempt to use, copy, or convey the Platform in a manner contrary to the terms of this Agreement or in competition with SMS Assist or in derogation of SMS Assist's proprietary rights, whether such rights are stated herein or determined by law or otherwise, will result in this Agreement being subject to termination by SMS Assist without any applicable cure periods for Customer. SMS Assist shall have all rights and remedies available to it under applicable law, including without limitation, the right to immediate injunctive relief.

f) Security. Customer and its Authorized Users may access the Platform only through use of one or more passwords, security devices or other access methods as provided by SMS Assist (collectively, "Access Methods"). Customer is solely responsible for ensuring that Customer's Access Methods are kept confidential by Customer and its Authorized Users and only known to and used by Authorized Users. Customer acknowledges that, in SMS Assist's sole discretion, SMS Assist may deny access to the Platform to any user of Customer's Access Methods if SMS Assist has reason to believe that the Access Methods have been lost, stolen or compromised, such user is violating any of the terms of this Agreement or poses a threat to the Platform or any user thereof. Customer will be (A) solely responsible for all acts or omissions of any person using the Platform through Customer's Access Methods; and (B) without limitation of the foregoing or any other provision of this Agreement, bound by the terms of any and all transactions executed and/or Work Orders placed via the Platform using Customer's Access Methods. All transmissions and Work Orders generated by use of Customer's Access Methods will be deemed to be authorized by Customer and made by an Authorized User. If any of Customer's Access Methods have been lost, stolen or compromised, then Customer will promptly notify SMS Assist. Upon SMS Assist's receipt of this notice, such Access Methods will be cancelled or suspended as soon as is reasonably practicable, but Customer is responsible for any actions taken through the use of such Access Methods prior to such cancellation.

g) PII Security. Customer owns and/or retains all rights in and to Personally Identifiable Information ("PII") that Customer provides to SMS Assist. For the purposes of this Agreement, PII means any information that identifies or can be used to identify, contact, locate, or can be traced back to the specific person to whom such information pertains, or from which identification or contact information of an individual person can be derived regardless of the media in which it is contained. PII includes, without limitation, a person's name, postal address, telephone number, fax number, e-mail address, financial profile, medical profile, social security number, and credit card information. SMS Assist will only access PII for the sole purpose of carrying out its obligations as expressly set forthi in this Agreement. SMS Assist shall (i) prevent the unauthorized use, dissemination, or publication of PII by the use of methods intended to keep PII strictly confidential in accordance with industry standards for information of such type, and (ii) take appropriate measures in accordance with industry standards for information of such type

DocuSign Envelope ID: 059B8264-3745-448C-B89C-2977397C5E139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.240   Page 8 of 15

CONFIDENTIAL

intended to secure and protect PII against unauthorized, unlawful or accidental access, disclosure, transfer, destruction, loss or alteration of PII by SMS Assist employees, agents, or contractors. SMS Assist will promptly notify Customer in writing of an actual breach of PII and take all reasonable steps to prevent, mitigate and rectify any such breach and cooperate fully with Customer in the event of any governement, regulatory or other enforcement or privacy proceeding relating to its PII handling practices.

9.   NON-SOLICITATION.  During the term of this Agreement, neither party shall directly or indirectly, alone or as an agent, independent contractor, partner, shareholder of or in any corporation, partnership, proprietorship, firm association, person or entity, (i) employ, retain or negotiate with respect to the employment or retention of, any person engaged as an employee of the other party at any time during the term of the Agreement, or (ii) induce or influence or attempt to induce or influence, any person engaged as an employee of the other party at any time during the term of the Agreement, to terminate his or her relationship with that party.

10.   INDEPENDENT CONTRACTORS.  Each party is an independent contractor in connection with this Agreement and neither party has authority to bind or commit the other in any contractual arrangement with any third party. Nothing herein shall be deemed or construed to create a joint venture, partnership or agency relationship between the parties for any purpose.

11.   NOTICES.   All notices, requests, demands and determinations under the Agreement (other than routine operational communications), shall be in writing and shall be deemed duly given: (a) when delivered personally (against a signed receipt); (b) on the designated day of delivery (other than a weekend or US Federal government holiday) after being timely given to an express overnight courier with a reliable system for tracking delivery; or (c) on the next business day when sent by confirmed facsimile with a copy sent by another means specified above, and addressed as follows:

>   In the case of Customer:
>   THR Property Management L.P.
>   1717 Main Street, Suite 2000
>   Dallas, TX 75201
>   Attn:  Ernest M. Freedman
>
>   With a copy to Customer's Chief Legal Officer at the same address.
>
>   With a copy to Justin Iannacone
>   8665 E Hartford Drive, Suite 200
>   Scottsdale, AZ 85255
>   Attn: Justin Iannacone
>
>   In the case of SMS Assist:
>   SMS Assist, L.L.C.
>   875 N. Michigan Ave., Ste. 2800
>   Chicago, IL 60611
>   Attn:  Marc Shiffman

DocuSign Envelope ID: 059B8264-3745-44BC-B89C-2977397C5E139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.241   Page 9 of 15

CONFIDENTIAL

With a copy to:
SMS Assist, L.L.C.
875 N. Michigan Ave., Ste. 2800
Chicago, IL 60611
Attn: General Counsel
notice@sms-assist.com

12. **ENTIRE AGREEMENT.** This Agreement and the Master Services Agreement constitute the entire understanding between SMS Assist and Customer, superseding and replacing any and all prior agreements between the parties hereto. No modification or amendment of this Agreement shall be effective unless reduced to writing and signed by Customer and an authorized officer of SMS Assist.

13. **APPLICABLE LAW.** This Agreement shall be governed by and construed in accordance with the internal law, and not the law of conflicts, of the State of Illinois. Except as otherwise described in Section 14, the parties hereto consent to sole jurisdiction of the courts of Cook County, Illinois or the U. S. Federal District Court for the Northern District of Illinois with respect to any disputes which may arise out of this Agreement and the parties will not object to such venue. THE PARTIES HEREBY WAIVE TRIAL BY JURY FOR ANY DISPUTE RELATING TO THIS AGREEMENT OR THE SERVICES PROVIDED HEREUNDER.

14. **ARBITRATION.** All disputes arising out of or relating to this Agreement shall be resolved by binding arbitration administered by the JAMS under its JAMS Streamlined Arbitration Rules and Procedures then in effect in Cook County, Illinois, or if that entity is unavailable or declines, a similar impartial tribunal. The ruling or said tribunal shall be binding and non-appealable. Judgment upon an award rendered by the arbitrator may be entered in any court of competent jurisdiction. Nothing in this provision shall prohibit a party from seeking an injunction or order of specific performance in a court of competent jurisdiction to the extent that such equitable remedy may exist.

15. **INVALIDITY.** If any provision in this Agreement shall be held to be invalid, illegal or unenforceable in any respect, such invalid, illegal or unenforceable provision shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16. **NON-WAIVER.** Continuation of the performance of this Agreement is not to be construed as a waiver of an alleged breach, and such continuation is done at all times with a reservation of all rights under this Agreement.

17. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In addition, the parties agree that (i) an electronic signature shall be considered an original signature, and (ii) a complete copy of the Agreement shall be considered an original instrument, and each, together or separately, shall become binding and enforceable as if original and the parties may rely on the same to prove the authenticity of the Agreement.

DocuSign Envelope ID: 0E9B8264-3745-448C-B89C-207797CFF139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.242   Page 10 of 15

CONFIDENTIAL

18. **ASSIGNMENT.** This Agreement may not be assigned by either party without the written approval of the other party. Any attempted assignment by a party without such approval shall be void and of no force and effect. A change in ownership, control, or a change in operating officers shall not be deemed an assignment. This Agreement shall be binding upon and inure to the benefit of the successors and valid assigns of each party.

19. **SURVIVAL.** The provisions of Sections 5, 6, 7, and 8 of this Agreement shall survive the expiration or early termination of this Agreement, as well as any other provisions that, by their nature, are intended to survive termination of this Agreement.

20. **FORCE MAJEURE.** Neither party will incur any liability to the other party resulting from any delay or failure to perform all or any part of this Agreement if such delay or failure is caused, in whole or in part, by events, occurrences, or forces beyond the reasonable control or without the negligence of such party.

**IN WITNESS WHEREOF,** the parties, intending this Agreement to be effective on the Effective Date, have caused this Agreement to be executed by their duly authorized representatives.

**THR PROPERTY MANAGEMENT L.P.:**

Signature: *Mark Solls* (DocuSigned by: 96DCE195C32A4C0...)
Name: Mark Solls
Title: EVP & CLO
Date: 01-25-2018 | 10:04:57 AM MST

**SMS ASSIST, L.L.C.:**

Signature: *Marc Shiffman* (DocuSigned by: 8EA2C4B975D045C...)
Name: Marc Shiffman
Title: CFO
Date: 01-24-2018 | 9:06:59 PM MST

DocuSign Envelope ID: 0E9B8264-3745-448C-B89C-207797CFF139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.243   Page 11 of 15

CONFIDENTIAL

# SOW1
# Statement of Work 1 for
# Platform and Call Center Services

This Statement of Work for Facilities Maintenance (this "SOW1") is entered into as of January 31, 2018, by and between THR PROPERTY MANAGEMENT L.P ("Customer") and SMS ASSIST, L.L.C. ("SMS Assist"). This SOW1 is hereby incorporated by reference and made a part of the Master Platform Agreement effective January 31, 2018 by and between Customer and SMS Assist ("Agreement"). Except as otherwise defined in this SOW1, all capitalized terms used in this SOW1 shall have the same meanings assigned to them in the Agreement.

1. **Scope of Services.** SMS Assist shall provide Customer with the Platform Services set forth on SOW1 - Exhibit A attached to and made a part of the Agreement.

2. **Services.** SMS Assist shall follow all processes and procedures as outlined in this SOW1.

3. **Payment Terms, Fees, Expense and Taxes.** SMS Assist agrees to provide billing in accordance with Section 2 "Price and Payment Terms" of the Agreement.

**IN WITNESS WHERE OF,** the parties hereto have caused this SOW1 to be duly executed the day and year first above written.

| THR PROPERTY MANAGEMENT L.P: | SMS ASSIST, L.L.C.: |
|---|---|
| Signature: *Mark Solls* (DocuSigned by: 96DCE195C32A4C0...) | Signature: *Marc Shiffman* (DocuSigned by: 8EA2C4B975D045C...) |
| Name: Mark Solls | Name: Marc Shiffman |
| Title: EVP & CLO | Title: CFO |
| Date: 01-25-2018 \| 10:04:57 AM MST | Date: 01-24-2018 \| 9:06:59 PM MST |

10

CONFIDENTIAL

# SOW1 - Exhibit A

# Scope of Services

**PLATFORM SERVICES.** In order to facilitate the management of the services performed under the Master Services Agreement, SMS Assist shall provide the following Platform Services to manage work orders (each, a "Work Order") for all Contract Services performed on behalf of Customer. Customer will not dispatch requests through the Platform or the Call Center (defined below) or otherwise use the Platform or Call Center if a request for services has been made through another service provider.

1. **Call Center Services:**

    a. SMS Assist shall provide a call center ("Call Center") staffed to support and respond to Customer's reasonable needs regarding the Contract Services. The Call Center will be staffed 24 hours a day, 7 days a week, 365 days a year with appropriate level of support personnel ("Call Center Personnel") to meet the Call Center performance requirements.
    b. Call Center will receive calls and electronic Work Orders from Customer's personnel and will log/assign/generate/dispatch Work Orders. Call Center Personnel will be generally knowledgeable about maintenance related to the Contract Services, Customer equipment and assets, and Customer's operations. Prior to dispatching a Work Order, Call Center Personnel will take reasonable steps to review the Work Order in accordance with the obligations of this SOW1.
    c. Call Center will also receive calls and respond to concerns from residents (each a "Resident") of Customer properties. The Call Center will engage the Resident in an interactive process calibrated to efficiently resolve the issue. If the interactive process cannot resolve the Resident issue, then the Call Center will enter a Work Order into the Platform.
    d. Work Order management:
        i. Create and dispatch the Work Orders, as needed;
        ii. Monitor Work Order status and manage suppliers through work completion; and
        iii. Provide real time updates of issues/resolution to Customer and/or the applicable Resident.

2. **Information Technology/Data Management:**

    a. Through SMS Assist's Platform, SMS Assist will track and report the status of all Work Orders for the Contract Services and all labor utilization.
    b. In conjunction with the Contract Services, SMS Assist shall provide the Platform as described in this Agreement. The Platform is designed to create, manage and update Work Orders and related invoicing through a web based portal that will be available to Customer and its Residents. The Platform will enable Customer to request, monitor, approve, review, engage, and report on maintenance related issues to the Contract Services that SMS Assist is performing or has performed for the Customer.

DocuSign Envelope ID: 0E9B82643745-448C-B89C-207797GFF139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.245   Page 13 of 15

CONFIDENTIAL

    c. Provide tracking and management of relevant Customer property information in the Platform.
    d. Track and maintain requests for information regarding Work Orders and/or Contract Services by property in the Platform.
    e. Provide Work Order and/or Contract Services information and metrics as requested.
    f. Provide assignment and tracking of Work Orders and/or Contract Services.
    g. Provide training and technical support for Customer in relation to the Platform.
    h. Update Platform as required. Data security patches shall be implemented and applied as necessary.
    i. Ensure no changes/updates are made to online tools, work flow tools, look or function of software that would impact the Customer or Resident portal without proper notice to Customer.

3. **Reporting:**

    a. SMS Assist will provide reporting in a mutually agreed upon format using data points, tables and graphs as needed, and will correspond with Customer's reasonable requests. Provide daily/weekly/monthly/yearly reporting in the Platform as mutually agreed upon by the parties.
    b. Provide invoice accrual information in real time.
    c. Invoicing to be itemized and electronic.
    d. Provide access to data for Customer reporting purposes.
    e. Provide proactive quarterly reporting of Customer spending trends and period over period statistics .

4. **Platform Development:**

    a. SMS Assist will work in good faith to further develop additional features to the following functions of the Platform:
        i. Resident portal enhancements
        ii. In-House technician routing
        iii. Enhanced advanced reporting

5. **Additional Services:**

    a. Asset Management Requirements. The Platform may also be used by Customer to track, record, and maintain certain asset information for each property.
    b. The Platform may also track, provide and maintain warranty information, if applicable.
    c. Integration of the Platform with Customer's information and technology systems and solutions throughout the term.

**FEES**.

Customer agrees to pay the fees for the Platform Services in accordance with the table below (provided Customer and SMS Assist agree that any monthly fees paid hereunder shall result in a

DocuSign Envelope ID: 0E9B8264-3745-448C-B89C-207797CFF139
Case 3:22-cv-00260-BAS-MMP   Document 21-1   Filed 03/07/23   PageID.246   Page 14 of 15

CONFIDENTIAL

corresponding credit toward monthly fees payable under Statements of Work issued under the Master Services Agreement as set forth therein):

| Platform Services | $ 1,666,667 (following the roll-out described below) |

Incremental Increase of Fees During Location and Region Roll-out.  During the Location and Region roll-out period as described in the Master Services Agreement, the Platform Fee shall be increased as additional locations are added to the Platform in accordance with the attached Exhibit A-1 and shall be billed in 4 equal installments of 25% of the monthly Platform Fee each month.  The parties agree to adjust the monthly Platform fee if the number of locations added each month differ materially from Exhibit A-1.

The parties understand and agree that Customer and SMS Assist may review and adjust, as mutually agreed to, the Fees no more than once per year during the Term.

DocuSign Envelope ID: 0E9B8264-3745-448C-B89C-297797CFE139

CONFIDENTIAL

## SOW1 – Exhibit A-1
### Location Roll-out Incremental Platform Fees

| | January-18 | February-18 | March-18 | April-18 | May-18 | June-18 | July-18 | August-18 | September-18 | October-18 | November-18 | December-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # Homes | 35,000 | - | - | - | - | - | - | - | - | - | - | - |
| New Locations | - | 6,500 | 10,000 | 13,000 | 7,500 | 11,000 | - | - | - | - | - | - |
| Cumulative Location Count | 35,000 | 41,500 | 51,500 | 64,500 | 72,000 | 83,000 | 83,000 | 83,000 | 83,000 | 83,000 | 83,000 | 83,000 |
| Platform Cost - Per Year | $ 8,400,000 | $ 9,960,000 | $ 12,360,000 | $ 15,480,000 | $ 17,280,000 | $ 20,000,000 | $ 20,000,000 | $ 20,000,000 | $ 20,000,000 | $ 20,000,000 | $ 20,000,000 | $ 20,000,000 |
| Platform Cost - Per Month | $ 700,000 | $ 830,000 | $ 1,030,000 | $ 1,290,000 | $ 1,440,000 | $ 1,666,667 | $ 1,666,667 | $ 1,666,667 | $ 1,666,667 | $ 1,666,667 | $ 1,666,667 | $ 1,666,667 |
| Platform Cost - Per Week | $ 175,000 | $ 207,500 | $ 257,500 | $ 322,500 | $ 360,000 | $ 416,667 | $ 416,667 | $ 416,667 | $ 416,667 | $ 416,667 | $ 416,667 | $ 416,667 |

14