# EXHIBIT D

*Execution Version*

### AMENDED AND RESTATED AUTHORIZED BUYER SERVICES AGREEMENT

This Amended and Restated Authorized Buyer Services Agreement is entered into this ___ day of May, 2013 and is made in reference to that certain Authorized Buyer Services Agreement, dated as of May 9, 2012 (the "Effective Date") (as amended, supplemented or otherwise modified to the date hereof, this "Agreement") by and between ColFin American Homes, LLC, a Delaware limited liability company (together with any nominee, "CAH"), having an address at 2450 Broadway, 6th Floor, Santa Monica, CA 90404, Attention: Richard Welch, and Pintar Investment Company, LLC ("Authorized Buyer"), having an address at 27372 Calle Arroyo, San Juan Capistrano, CA 92675.

WHEREAS, CAH and Authorized Buyer entered into the Authorized Buyer Services Agreement, dated as of May 9, 2012 (as amended, supplemented or otherwise modified from time to time, the "Original Agreement");

WHEREAS, CAH and Authorized Buyer desire to amend and restate the Original Agreement in its entirety to make the modifications set out in this Agreement; and

WHEREAS, CAH wishes to continue to engage Authorized Buyer to provide services with respect to the purchase by CAH of certain assets, and Authorized Buyer wishes to be so engaged, subject to and in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, CAH and Authorized Buyer hereby amend and restate the Original Agreement as follows:

1.  Services. Authorized Buyer is hereby engaged by CAH to source, locate and present to CAH for purchase and to facilitate the acquisition of and conduct due diligence and underwriting activities with respect to (including, without limitation, the negotiation and execution of purchase agreements on behalf of CAH, as agent for CAH, coordinating the opening of escrow, the procurement of title policies and coordinating the closing and conveyance to CAH of fee or other applicable ownership of approved Qualifying Homes (hereinafter defined)), as well as certain Renovation Services (as defined in Section 27) (collectively, the "Services") single family homes, available for purchase from time to time in Inland Empire Metropolitan Area, Riverside County, San Bernadino County, San Diego County and Orange County, California (collectively, the "Territory"), which meet the criteria set forth by CAH in Exhibit A hereto as such Exhibit may be amended from time to time by CAH, either individually or in bulk sales of multiple homes (collectively, the "Qualifying Homes"). The term Qualifying Homes may include both Foreclosure Homes and Performing Homes (as such terms are hereinafter defined) to the extent such homes satisfy the standard for Qualifying Homes.   Except as specifically permitted in Sections 2(d) and 3(b) below, Authorized Buyer shall perform the Services exclusively for CAH and shall not provide the Services with respect to any single family homes to any third party or for its own account. Authorized Buyer agrees to first present available Qualifying Homes to CAH, to the exclusion of any other potential third party or affiliated buyers or for its own account.

2.  Performing Homes

    (a)   For any Qualifying Homes that are listed on the MLS System ("MLS Homes") and for bulk sales of multiple homes ("Bulk Purchases"), which are not also Foreclosure Homes (hereinafter defined) or GSE Homes (hereinafter defined) (collectively, "Performing Homes"), Authorized Buyer shall deliver to CAH a written summary of any offer made (an "Offer Notice") or a copy of any purchase agreement entered into in accordance with

Section 2(b) (a "Purchase Notice"), in each case, along with an underwriting report with respect to such Performing Home, promptly (and in any event on the same day) after the making or entering into, as applicable, of the same. In addition, Authorized Buyer shall provide CAH with access to a shared underwriting database in which CAH can view all assumptions related to such Performing Homes.

(b)     Authorized Buyer shall have, and hereby is granted, the authority to make offers and/or to enter into purchase contracts that have a fully refundable deposit and due diligence period of at least one week on behalf of CAH to acquire any Performing Homes. In the event that Authorized Buyer delivers a Purchase Notice for any Performing Home in accordance with Section 2(a), CAH shall have the exclusive option (exercisable in accordance with Section 11(b)) to approve or disapprove such Performing Home in its sole and absolute discretion during the applicable due diligence period provided in the applicable purchase contract entered into by Authorized Buyer on CAH's behalf (the "Contract Period"). Authorized Buyer agrees that in no event shall it enter into (and it has no authority to enter into) any such purchase contract which does not provide for a fully refundable deposit and due diligence period of at least one week without the prior written consent of CAH, which may be granted or withheld in the sole discretion of CAH. CAH shall execute and deliver any power of attorney or other document which is reasonably necessary to evidence Authorized Buyer's authority under this Section 2(b). If CAH does not approve such Performing Home in writing within the Contract Period, then CAH shall be deemed to have rejected such Performing Homes and Authorized Buyer shall promptly arrange for the refund of the deposit. CAH may (but shall not be obligated to), by written notice to Authorized Buyer, advise Authorized Buyer that from and after the date of such notice until the date Authorized Buyer is notified otherwise by CAH, CAH shall be deemed to have approved any such Performing Homes unless it advises Applicable Buyer of its disapproval in accordance with this Section 2(b).

(c)     In the event that Authorized Buyer delivers an Offer Notice for any Performing Home in accordance with Section 2(a), then for a period of five (5) days from the date the Offer Notice is received by CAH, which period may be extended pursuant to a written notice delivered to Authorized Buyer for a reasonable period of time (collectively, the "Offer Period"), CAH shall have the exclusive right to elect to purchase any such Performing Homes by notifying Authorized Buyer in writing of its election to enter into negotiations to purchase the applicable Performing Home(s) with the owners of such properties (the "Buyer's Notice"). If CAH does not so elect to enter into such negotiations within the Offer Period, then CAH shall be deemed to have rejected such Performing Homes. CAH may (but shall not be obligated to), by written notice to Authorized Buyer, advise Authorized Buyer that from and after the date of such notice until the date Authorized Buyer is notified otherwise by CAH, CAH shall be deemed to have approved any such Performing Homes unless it advises Applicable Buyer of its disapproval in accordance with this Section 2(c).

(d)     During any Offer Period or Contract Period, and during any period of negotiation by CAH (or Authorized Buyer on CAH's behalf) to purchase any Performing Home, Authorized Buyer shall not offer, present or advertise any of the Performing Homes presented to CAH in an Offer Notice or Purchase Notice, as applicable, to third parties, nor shall Authorized Buyer itself purchase or enter into any written agreement or negotiations to purchase the applicable Performing Homes other than on behalf of CAH. After the expiration of the Offer Period, if CAH has not delivered a Buyer's Notice, Authorized Buyer may purchase any such Performing Homes for its own account. After

the expiration of the Contract Period, if CAH has not approved any applicable Performing Home in accordance with Section 2(b), Authorized Buyer may purchase any such Performing Homes for its own account.

(e)     During any Offer Period or Contract Period, if requested by CAH, Authorized Buyer shall assist CAH in further evaluating and analyzing the proposed acquisition of such Performing Homes as directed by CAH, including, without limitation, performing more detailed underwriting of the proposed acquisition of such Performing Homes and/or preparing detailed financial models relating to the operations thereof.

(f)     With respect to any Bulk Homes available for purchase from any government-sponsored enterprises or money-center banks (e.g. Fannie Mae, Freddie Mac, Bank of America) in connection with broadly distributed bulk purchase opportunities ("GSE Homes"), Authorized Buyer shall give CAH a written right of first offer with respect to the acquisition of such Bulk Homes on terms to be mutually agreed by the parties, which CAH may exercise in its sole discretion from time to time in accordance with Section 11(b). In the event that CAH declines to exercise such right, Pintar Member may solicit such Bulk Homes to third parties and/or purchase such Bulk Homes for its own account.

3.   Foreclosure Homes.

(a)     CAH shall have the exclusive right to elect to purchase any homes that are being offered at a trustee sale or foreclosure auction ("Foreclosure Homes") presented to CAH by Authorized Buyer. Authorized Buyer shall deliver to CAH a bid list of Foreclosure Homes (the "Bid List") and a proposed maximum bid for each such Foreclosure Home in accordance with the underwriting guidelines mutually agreed between the parties. On each business day, prior to CAH making a bid for any such Foreclosure Home at any trustee sale or foreclosure auction, CAH and Authorized Buyer shall attend a phone call at a time to be mutually agreed to review the bid list and proposed maximum bids. Unless CAH advises Authorized Buyer on such call or otherwise in writing prior to the commencement of the applicable auction or trustee sale that it approves the acquisition of any Foreclosure Home, CAH shall be deemed to have disapproved such Foreclosure Home (a "Rejected Home"). CAH may (but shall not be obligated to), by written notice to Authorized Buyer, advise Authorized Buyer that from and after the date of such notice until the date Authorized Buyer is notified otherwise by CAH, CAH shall be deemed to have approved any Foreclosure Homes unless it advises Applicable Buyer of its disapproval in accordance with this Section 3(a).

(b)     Authorized Buyer may purchase any such Rejected Homes for its own account

4.   Effectiveness of Notices. Each Offer Notice or Purchase Notice shall be effective with respect to all Performing Homes listed therein for a period of one-hundred and twenty (120) days after receipt by CAH (the "Effective Period"). After the expiration of the Effective Period, it shall be deemed that any Performing Home included in such Offer Notice or Purchase Notice (not purchased by Authorized Buyer on CAH's behalf in accordance with the terms of this Agreement or then under contract with CAH), was rejected by CAH and no Fee shall be payable by CAH to Authorized Buyer with respect to any such Performing Homes.

5.   Limited Exclusivity / Pre-Identified Properties.

3

(a)   *Limited Exclusivity.* CAH shall source, identify, acquire, underwrite and otherwise pursue the acquisition of Foreclosure Homes exclusively through Authorized Buyer. Attached hereto as Schedule 2 is a list of Authorized Buyer's current exclusive broker relationships ("Exclusive Brokers"), which list shall be reasonably acceptable to CAH and which may be supplemented from time to time by Authorized Buyer in writing with the names of additional brokers, subject to CAH's right to approve such additional brokers in its reasonable discretion.  With respect to Performing Homes (other than any GSE Homes), CAH agrees that if CAH acquires any such Performing Homes sourced by Authorized Buyer or any Exclusive Broker, Authorized Buyer shall be paid a Fee in accordance with Section 11.

(b)   *Non-Exclusivity.* Other than as set forth in paragraph (a) above, Authorized Buyer acknowledges and agrees that its engagement by CAH under this Agreement is non-exclusive and that nothing set forth in this Agreement shall limit CAH's right to seek out Qualifying Homes (including any GSE Homes) on its own behalf, nor restrict CAH from engaging other brokers, agents or representatives to locate Qualifying Homes and/or perform similar services to those provided by Authorized Buyer under this Agreement on CAH's behalf. Notwithstanding anything herein to the contrary, in no event shall Authorized Buyer be entitled to any Fee for any Qualifying Homes or other single family residences acquired by CAH from any government-sponsored enterprises or money-center banks (e.g. Fannie Mae, Freddie Mac, Bank of America) in connection with broadly distributed bulk purchase opportunities (other than as contemplated by Section 2(f)).

(c)   *Pre-Identified Properties.* In the event that CAH receives an Offer Notice or Purchase Notice, but CAH has previously been introduced or made aware of one or more Qualifying Homes (including any GSE Homes) identified in such Offer Notice or Purchase Notice (the "Pre-Identified Properties") in a manner permitted by this Agreement, then CAH may notify Authorized Buyer in writing of the homes in such Offer Notice or Purchase Notice that are Pre-Identified Properties (the "Exemption Notice"). In the event the Exemption Notice is provided to Authorized Buyer, then Authorized Buyer shall not be entitled to any Fee or other compensation whatsoever from CAH in respect of the Pre-Identified Properties.

6.   Certification/Licensing. Authorized Buyer hereby represents and warrants that, to the extent required by the applicable laws of the state in which each of the Qualifying Homes presented to CAH for its consideration is located, Authorized Buyer and its employees and representatives (the "Authorized Buyer Parties") will be certified and duly licensed (and will remain so during the Term) as necessary to perform the Services; provided that any such required certification or license held by an affiliate of Authorized Buyer shall be sufficient for purposes of complying with this Section 6 if the same is sufficient under the applicable laws of the state in which the applicable Qualifying Home is located.  In the event that Authorized Buyer (or any Authorized Buyer Party) is not certified and licensed as described above, then Authorized Buyer shall not be entitled to any Fee or other compensation from CAH, notwithstanding the purchase of a Qualifying Home presented to CAH by Authorized Buyer.

7.   Standard of Performance. Authorized Buyer covenants that Authorized Buyer and the Authorized Buyer Parties will perform the obligations under this Agreement diligently and in good faith to the same level of care and duty as would be exercised by other professional asset buyers of Qualifying Homes in the same market area, and strictly in accordance with (i) applicable law, (ii) the express terms of this Agreement, and (iii) the directions given from time to time by CAH.

4

8.  Term & Termination.

    (a)  *Term*. Unless earlier terminated by the parties, this Agreement shall expire and terminate without any further action by the parties one (1) year after the Effective Date, unless extended by CAH and Authorized Buyer by mutual written consent (the "Term").

    (b)  *Termination*.  Notwithstanding the foregoing, (i) either party shall have the right, upon written notice to the other party, to terminate this Agreement with or without cause on thirty (30) days prior written notice; provided, however, that after any such termination by CAH, upon the closing within ninety (90) days of such termination by CAH on the purchase of any Qualified Home (other than a GSE Home, which shall be subject to Section 2(f)) from the seller that was initially introduced to CAH by Authorized Buyer, or with respect to any Performing Homes, by any Exclusive Broker, prior to such termination in accordance with the terms of this Agreement, CAH shall pay to Authorized Buyer any Fee which would have been payable under Section 11 but for such termination, and (ii) unless otherwise agreed in writing by the parties, this agreement shall be deemed to terminate automatically without any further action by the parties upon the effectiveness of any joint venture agreement between the parties.

    (c)  *Survival*. The expiration or termination of this Agreement shall not affect the rights of any party hereto with respect to any damages it has suffered as a result of any breach of this Agreement, nor shall it affect the rights or obligations of any party with respect to liability or claims accrued, or arising out of events occurring, prior to the date of expiration or termination, all of which shall survive such expiration or termination of this Agreement.  In no event shall Authorized Party or any Indemnified Party be entitled to recover any punitive, speculative or other similar damages under this Agreement.

9.  Foreclosure Home Framework.

    (a)  *SPV & Bank Account*. CAH will establish a special purpose vehicle that is a wholly owned subsidiary of CAH (the "SPV") to own all Qualifying Homes acquired pursuant to this Agreement. Promptly after the execution of this Agreement, the SPV will establish a bank account (the "Account") for the sole purpose of using the funds therein to acquire Foreclosure Homes, with an initial balance of $2,000,000 (the "Initial Balance"). The SPV will grant the Authorized Buyer signing authority in order to make withdrawals and write checks from the Account pursuant to a power of attorney substantially in the form attached as Exhibit B hereto (a "POA").  Authorized Buyer will not make withdrawals or write checks (i) in excess of the balance of the funds available in the Account, or (ii) for any purpose other than as necessary to pay the purchase price required to acquire the Foreclosure Homes, up to the Max Bid (defined in Section 14), and customary closing costs in connection with such acquisition. Unless otherwise approved in writing by CAH, the balance of the Account shall not exceed the Initial Balance. However, at its discretion, Authorized Buyer may contact CAH in writing and request that the balance of the Account is replenished or increased. CAH may approve or reject any such request in its sole and absolute discretion.

    (b)  *Reconciliation*. At the time that (i) the balance of the Account is fully depleted, (ii) it is the end of a calendar quarter, or (iii) CAH so elects, then Authorized Buyer shall perform a reconciliation to compare the aggregate purchase prices of Foreclosure Homes acquired by Authorized Buyer on behalf of CAH since the Account was established (or the last

5

reconciliation, as the case may be) (the "Home Values") to the aggregate amounts withdrawn from the Account during the same period (the "Withdrawal Total"). The results of such reconciliation shall be promptly provided to CAH.

(c) *Liability for Shortfall*. If the reconciliation described in subpart (b) above demonstrates that the Withdrawal Total exceeds the total Home Values (such excess amount, the "Shortfall"), CAH shall notify Authorized Buyer in writing and Authorized Buyer shall, deposit funds into the Account in the amount of the Shortfall within two (2) business days after receipt of such notice.

(d) *Put Right*. In the event that Authorized Buyer purchases any Foreclosure Homes on behalf of CAH in an amount equal to more than 102% of the approved Max Bid for each such Foreclosure Home (each a "Disqualified Home"), then Authorized Buyer shall pay the difference between (i) 102% of the applicable Max Bid and (ii) the actual purchase price of any Disqualified Home (the "Overage") in cash to CAH, within two (2) business days after written demand from CAH. In no event shall any Fee be payable on any Overage.

10.    Guarantee.

(a) The undersigned signatories of Authorized Buyer (each a "Guarantor") executing this Agreement, hereby irrevocably and unconditionally, jointly and severally, guarantee to CAH and its successors and assigns the payment and performance of Authorized Buyer's obligations to (i) pay any Overage amount to CAH in accordance with Section 9(d) and (ii) indemnify CAH in accordance with Section 17 for (w) any gross negligence, willful misconduct, misrepresentation, bad faith, unlawful acts or fraud, (x) any misuse or misappropriation of funds in the Account, the Note Renovation Account (as hereinafter defined) or the Renovation Account (as hereinafter defined) in violation of this Agreement or that certain Construction Management Agreement (the "CMA") (including, without limitation, with respect to application and repayment of the Initial Funding (as hereinafter defined) in accordance with the terms and conditions of the CMA), (y) any misuse or misappropriation of the proceeds of the Note (as hereinafter defined) or failure to repay all amounts due CAH under the Note when due in accordance with the terms of this Agreement and the Note or (z) Authorized Buyer's entry into a purchase contract with a non-refundable deposit or a diligence period of less than one week in violation of Section 2(b); provided, however, that notwithstanding the foregoing, in the event that any losses, liabilities, and damages, costs or expenses suffered by CAH with respect to actions or inactions described in the foregoing clauses (w) through (z) are (i) solely monetary in nature and (ii) are caused by an employee of Authorized Buyer (other than any Guarantor), then Authorized Buyer and Guarantor shall (1) promptly terminate such employee and (2) have fifteen (15) days from the date of written notice from CAH to fully reimburse CAH for any such losses, liabilities, and damages, costs or expenses.

(b) Each Guarantor agrees that (i) the guarantee set forth in paragraph (a) above is a guarantee of payment and performance when due and not of collectability and (ii) the obligations of each Guarantor hereunder are independent of the obligations of Authorized Buyer and the obligations of any other guarantor of the obligations of Authorized Buyer, and a separate action or actions may be brought and prosecuted against such Guarantor whether or not any action is brought against Authorized Buyer or any of such other guarantors and whether or not Authorized Buyer is joined in any such action or actions. Each Guarantor hereby waives, for the benefit of CAH, to the fullest extent permitted by

6

applicable law, any right to require CAH, as a condition of payment or performance by such Guarantor, to proceed against Authorized Buyer, any other Guarantor or any other person. The obligations set forth in this Section 10 shall survive the expiration or termination of this Agreement and shall be in addition to any rights that CAH may have at common law, in equity or otherwise.

11.   Underwriting Fees.

(a)   *Fee Amounts*. Subject to Sections 4, 5(b), 5(c), 6, 9(d) and 11(b) of this Agreement, if, during the Term, CAH closes on a purchase of a Qualifying Home that was initially introduced to CAH by Authorized Buyer, then CAH shall pay Authorized Buyer a fee in the amount of four percent (4%) of the gross sales price (excluding any Overage and net of any direct brokerage fees payable to Authorized Buyer or any of its affiliates in connection with such closing (other than any net profits due to be distributed to Authorized Buyer as permitted by Section 13)) of the applicable Qualifying Home ("Fee"), which Fee shall be due and payable to Authorized Buyer within seven (7) business days after the consummation of the purchase of the applicable Qualifying Home.

(b)   *No Obligation*. Notwithstanding anything to the contrary set forth in this Agreement, it is expressly agreed that CAH shall have the unqualified right, for any reason or for no reason, in CAH's sole and absolute discretion, to refuse to enter into any transaction involving Qualifying Homes introduced to CAH by Authorized Buyer, without incurring any obligation to Authorized Buyer for the payment of a Fee or otherwise. Further, if for any reason without regard to fault, if the purchase of any Qualifying Home does not actually close, then Authorized Buyer shall not be entitled to any Fee or compensation. A Fee shall only be paid after the closing of purchase transactions.

12.   Expenses. All internal overhead expenses incurred by Authorized Buyer in the performance of the Services hereunder shall be borne solely by Authorized Buyer and not CAH.  CAH shall pay for all reasonable direct, third party out-of-pocket expenses relating to the acquisition of Qualifying Homes to non-Authorized Buyer employees or Affiliates, including, but not limited to, insurance premiums, title research, title transfer, title recording, deed tax, transfer tax or similar imposition, standard escrow fees, payment of third-party contractors, vendors, appraisals, home inspectors, buyer's agents, BPO's, transaction coordinating fees, copying (if performed externally), notaries (if performed externally), mailers (if obtained or produced externally), wire fees and all other reasonable and direct, third party out of pocket services, fees and costs directly related to the acquisition. In the event Authorized Buyer receives any discounts, reductions or rebates for any of the foregoing expenses, Authorized Buyer shall pass through any such discounts, reductions or rebates and refund any such amounts already paid by CAH to CAH as soon as practicable. To the extent any expenses which should be paid by CAH are borne by Authorized Buyer on behalf of CAH, the parties shall reconcile such expenses on a biweekly basis and CAH shall pay any expenses payable by CAH within seven (7) business days of such reconciliation.

13.   Authorized Buyer Parties. Authorized Buyer represents that all Authorized Buyer Parties are employed by Authorized Buyer and neither they nor any other person employed or engaged by Authorized Buyer is entitled to any commission or other compensation with respect to the purchase by CAH of Qualifying Homes hereunder, except out of the Fee payable to Authorized Buyer and only through relationships directly with Authorized Buyer and not through CAH. Notwithstanding the foregoing, CAH acknowledges that Authorized Buyer has a minority interest in certain third party brokers which may from time to time represent CAH in the acquisition of

7

Qualifying Homes and agrees that Authorized Buyer may receive certain net profits due to be distributed to Authorized Buyer from such minority interest(s).

14.   Authority of Authorized Buyer in Connection with Purchases.

    (a)   *Foreclosure Homes*. Authorized Buyer shall not, and is not authorized to, purchase any Foreclosure Home(s) listed in the Foreclosure Home Notice if the purchase price(s) of such home(s) is greater than 102% of the maximum approved bid for such Foreclosure Home as detailed in the Foreclosure Home Notice (the "Max Bid"), subject to Section 9(d). Further, when acting in respect of Foreclosure Homes, Authorized Buyer and the Authorized Buyer Parties shall at all times be limited to, and act strictly in accordance with, the powers granted to them by a POA executed by CAH. Except to the extent provided by the POA (i) Authorized Buyer has no authority and is not authorized to act as CAH's agent, or to agree to or execute any purchase and sale contract or any other agreement binding upon CAH; and (ii) neither Authorized Buyer nor any Authorized Buyer Parties shall make nor are they authorized to make any promises, representations, covenants, agreements or warranties, express or implied, on behalf of CAH.

    (b)   *Performing Homes*. Except as expressly set forth in this Agreement, (i) Authorized Buyer has no authority and is not authorized to act as CAH's agent, or agree to or execute any purchase and sale or any other agreement binding upon CAH with respect to Performing Homes, (ii) neither Authorized Buyer nor any Authorized Buyer Parties shall make or be deemed to have made, nor are they authorized to make, any promises, representations, covenants, agreements or warranties, express or implied, on behalf of CAH and (iii) only CAH, and such other parties as CAH shall expressly designate in writing, shall be authorized to agree to or execute any agreements in respect of Performing Homes on behalf of CAH.

15.   Non-Solicitation of Employees.   During the Term of the Agreement and for a period of six (6) months following the expiration or termination of this Agreement in accordance with its terms, neither party shall solicit or hire any officer, director or senior management employee ("Restricted Employee") of the other party, except that neither party shall be precluded from soliciting or hiring any Restricted Employee (a) who has been terminated by the other party or its subsidiaries prior to commencement of employment discussions between such party and such Restricted Employee, (b) who responds to general solicitations for employment made by such party or on such party's behalf not specifically directed at the other party or its employees, or (c) resulting either from a solicitation by (X) employees of the other party or its affiliates who did not participate in the transactions contemplated by this Agreement, who did not become aware of any Qualifying Homes and who were not directly or indirectly directed by the other party or its affiliates who did so participate or become aware of such information or (Y) an executive or employee search firm where such search firm was not directly or indirectly directed by the other party or its affiliates who participated in the transactions contemplated by this Agreement or who became aware of any Qualifying Homes.

16.   CAH Indemnity

    (a)   CAH shall indemnify and hold harmless Authorized Buyer and its agents, employees and authorized representatives (each, an "Indemnified Party") against and from any and all losses, liabilities, and damages, costs or expenses (including without limitation reasonable attorneys' fees and disbursements) arising with respect to any action, liability, claim, suit, proceeding, or investigation only arising out of or in connection with such

Indemnified Party's authorized duties and responsibilities performed in accordance with this Agreement solely on behalf of CAH, except such as may be imposed or incurred by reason of the gross negligence, willful misconduct, bad faith, unlawful acts or fraud of such Indemnified Party, or a material breach or material default by such Indemnified Party in the performance of its duties and responsibilities under this Agreement. The foregoing indemnification shall survive the expiration or the termination of this Agreement.

(b)     If CAH reasonably believes that CAH has a claim against any Indemnified Party for reason of the gross negligence, willful misconduct, bad faith, unlawful acts or fraud of an Indemnified Party or for a material breach or material default by such Indemnified Party in the performance of the duties and responsibilities under this Agreement, and CAH brings a claim against any Indemnified Party, CAH shall not be required to reimburse such Indemnified Party for its losses, or undertake the defense of such Indemnified Party, until a court of competent jurisdiction shall have determined in a final non-appealable judgment that such Indemnified Party did not act or fail to act with gross negligence, bad faith, fraud, willful misconduct, in contravention of law or to have materially breached or materially defaulted under this Agreement.

(c)     An Indemnified Party will promptly notify CAH in writing of the occurrence of any action, claim or investigation likely to result in an indemnification request pursuant hereto and shall describe the nature of the claim; provided, however, that any failure by such Indemnified Party to so notify CAH will not relieve CAH from its obligations hereunder, except to the extent that such failure shall have actually prejudiced CAH's ability to eliminate or reduce any liability or the defense of such action.

(d)     CAH shall be entitled (but not obligated) to take control, at its own cost and in its sole discretion, in the defense of said action, claim or investigation. In such a case, CAH shall engage, at CAH's cost, reasonable and adequate counsel to act as counsel for Authorized Buyer in the defense of such claim, and Authorized Buyer shall provide such counsel with all reasonably available information and shall consult with and cooperate with such counsel on the conduct of its defense. Should CAH so elect to provide to the Authorized Buyer and pay for such defense, then CAH shall not be liable to any Indemnified Party for legal expenses subsequently incurred by such Indemnified Party in connection with the defense thereof, unless the third-party claim involves potential conflicts of interest between the Indemnified Party and CAH. No Indemnified Party shall settle, compromise or consent to the entry of a judgment with respect to any pending or threatened claim, action or proceeding in respect of which indemnification can be sought under this Agreement without CAH's prior written consent, in its sole and absolute discretion. In the event that a court of competent jurisdiction determines in a final, non-appealable judgment that an Indemnified Party acted or failed to act with gross negligence, bad faith, fraud, willful misconduct, in contravention of law or to have materially breached or materially defaulted under this Agreement, and CAH shall have taken control of the defense of such action, claim or investigation, Authorized Buyer shall reimburse CAH for its reasonable costs and expenses in connection with such defense (including reasonable costs of counsel).

17.     <u>Authorized Buyer Indemnity</u>. Authorized Buyer shall indemnify and hold harmless CAH, each person or entity deemed to control or to be controlled by CAH, and their respective affiliates, partners, members, shareholders, managers, directors, officers, consultants and employees, against and from any and all losses, liabilities, and damages, costs or expenses (including without

9

limitation reasonable attorneys' fees and disbursements) arising in connection with (i) any action, liability, claim, suit, proceeding, or investigation of or relating to or in connection with Authorized Buyer's performance pursuant to this Agreement on behalf of CAH based on, arising out of or in connection with (v) any misuse or misappropriation of the proceeds of the funds in the Account, the Note Renovation Account (as hereinafter defined) or the Renovation Account (as hereinafter defined) in violation of this Agreement or the CMA (including, without limitation, with respect to application and repayment of the Initial Funding (as hereinafter defined) in accordance with the terms and conditions of the CMA), (w) any misuse or misappropriation of the proceeds of the Note (as hereinafter defined) or failure to repay all amounts due CAH under the Note when due in accordance with the terms of this Agreement and the Note, (x) the gross negligence, willful misconduct, misrepresentation, bad faith, unlawful acts or (including, without limitation, the failure to have the appropriate licenses and/or certifications in order to conduct the Services) or fraud, (y) material breach or material default under this Agreement, in each case Authorized Buyer (or Authorized Buyer Parties or other persons acting on behalf of Authorized Buyer) or (z) the commission of any acts of Authorized Buyer or any Authorized Buyer Party which are materially outside the scope of Authorized Buyer's authority or responsibility hereunder and performed without CAH's actual knowledge thereof and consent thereto, and (ii) compensation or commissions asserted by any other party, broker or agent based on the actions of Authorized Buyer or of any other broker engaged by Authorized Buyer to identify Qualifying Homes.   The foregoing indemnification shall survive the expiration or termination of this Agreement and shall be in addition to any rights that CAH may have at common law, in equity or otherwise.

18.   <u>Covenants</u>. Authorized Buyer hereby covenants and agrees that Authorized Buyer shall perform the Services in accordance with the standard of care as set forth in this Agreement and in connection therewith shall use commercially reasonable efforts and exercise due diligence to, and shall promptly and diligently: (a) identify a targeted list of Qualifying Homes, and perform such other diligence as may be reasonable and necessary to bring the Qualifying Homes to the attention of CAH; (b) disclose to CAH all material information, which Authorized Buyer has in its possession or has acquired regarding the Qualifying Homes introduced to CAH by Authorized Buyer; (c) respond promptly to CAH's inquiries regarding the Qualifying Homes introduced to CAH by Authorized Buyer; (d) notify CAH when it has purchased any Foreclosure Homes on behalf of CAH; (e) assist CAH and its counsel in developing appropriate bids with respect to each Qualifying Home listed in the Bid List; (f) purchase each Foreclosure Home listed in the Bid List at the lowest possible price; and (g) provide full cooperation and transparency with respect to any and all reconciliations and audits performed hereunder.

19.   <u>Defaults and Remedies</u>.  A party shall be in default under this Agreement if such party fails to perform any of its material duties and obligations under this Agreement and does not cure or remedy such failure to perform within thirty (30) days after receipt of written notice from the other party with respect thereto describing in reasonable detail the alleged default. In addition to each party's ability to terminate this Agreement at any time under Section 8(b) hereof, upon the occurrence of a default by the other party beyond the applicable cure period under this Agreement, the non-defaulting party may, at its option, without terminating this Agreement, bring an action against the defaulting party to recover from the defaulting party all damages, recoverable at law, actually suffered, incurred or sustained by the non-defaulting party as a result of or in connection with such default; provided, however, that in no event shall the amount of damages payable by CAH under this Section 19 exceed the amount of any Fee payable to Authorized Buyer under Section 11, plus reasonable costs and expenses; provided further that the foregoing limitation shall not be deemed to limit any amounts payable to Authorized Buyer pursuant to Section 16. In

no event shall either party  be entitled to recover any punitive, speculative or other similar damages.

20.   Independent Contractor. In performing the Services hereunder, Authorized Buyer shall be an independent contractor, and not an employee or agent of CAH.  Authorized Buyer shall at all times have in its employ a sufficient number of capable employees so as to enable it to properly perform all of its obligations hereunder. Nothing contained in this Agreement shall constitute or be deemed or construed to create a partnership or joint venture between CAH and Authorized Buyer.

21.   Applicable Law/Governing Law. The parties hereto agree to comply with all applicable federal, state and local laws, regulations, codes, licensing requirements, ordinances and administrative orders having jurisdiction over the parties, and/or the subject matter of this Agreement. This Agreement shall be governed and construed in accordance with the laws of the State of California without regard to its conflicts of laws principles.

22.   Confidentiality. Except to the extent necessary to comply with the terms hereof or as required by applicable law, each of the parties shall, and shall require that all of their respective employees and agents, keep all aspects of this Agreement, any proposed purchase and sale or other agreement relating to or arising out of this Agreement, and all information with respect to the other party (including, without limitation, such other party's identity), strictly confidential, except to the extent expressly permitted by such other party.

23.   Notices. Any notice, demand or other communication to be provided under this Agreement shall be delivered to CAH or Authorized Buyer, as applicable, at the addresses provided below:

|  | |
|---|---|
| CAH: | ColFin American Homes, LLC |
| | 2450 Broadway, 6th Floor |
| | Santa Monica, CA 90404 |
| | Attention:  Richard Welch |
| | |
| Authorized Buyer: | Pintar Investment Company, LLC |
| | 27372 Calle Arroyo |
| | San Juan Capistrano, CA 92675 |
| | Attn: Jeff Pintar |

Either party may change its notice address at any time by giving at least two business days' prior written notice to the other party.  Any communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given if addressed to the recipient party's address given above and (a) if hand delivered, when delivered; (b) if mailed by United States Registered or Certified Mail,  upon receipt or refusal of receipt; (c) if sent by fax or electronic mail, when confirmation of receipt has been received by sender; or (d) if by Federal Express or other reliable express courier service from whom proof of delivery is available, on the next business day after delivery to such express courier service.

24.   Attorney's Fees and Court Costs.  If any legal action or other proceeding of any kind is brought for the enforcement of this Agreement or because of a breach, default, or misrepresentation, or any other dispute in connection with any provision of this Agreement, the successful or prevailing party shall be entitled to recover all reasonable attorneys' fees, court costs and other costs reasonably incurred in such action or proceeding, in addition to any other relief to which it may be entitled under the Agreement or at law.

11

25.   <u>Insurance</u>. Authorized Buyer shall carry insurance coverage as is required by law or reasonable and customary for a person or entity performing similar services to those provided hereunder as well any other insurance coverage reasonably required by CAH, including, without limitation, insurance coverage of the types and in the amounts set forth on Schedule 1 hereto.

26.   <u>Miscellaneous</u>.  No amendments to or modifications of this Agreement shall be valid or binding unless made in writing and signed by both CAH and Authorized Buyer.  Authorized Buyer shall not assign this Agreement or any interest herein or payments hereunder without CAH's prior written consent which may be withheld in CAH's sole and absolute discretion. CAH may assign this Agreement or any interest herein or payments hereunder at any time in its sole and absolute discretion without the consent of Authorized Buyer. This Agreement may be executed in a number of identical counterparts, each of which for all purposes is deemed an original, and all of which constitute collectively one agreement. This Agreement represents the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior agreements, representations and covenants, oral or written.

27.   <u>Renovation</u>.

   (a)   *Renovation Services*.  The term "Services" shall be deemed to include the provision by Authorized Buyer of certain renovation and refurbishment services (the "<u>Renovation Services</u>") with respect to certain Qualifying Homes purchased by Authorized Buyer on CAH's behalf, including without limitation, coordinating with third party vendors, contractors and subcontractors approved by Owner (collectively, "<u>Third-Party Contractors</u>"), subject to and in accordance with the terms and provisions of the CMA.

   (b)   *Funding*.

      *1.  Note Termination.*  Pursuant to the Original Agreement and that certain Property Management Agreement, dated as of May 7, 2012, between the parties of affiliate of parties hereto (the "<u>PMA</u>"), CAH agreed to advance to Authorized Buyer or affiliate of Authorized Buyer certain funds to be held in a renovation account (the "<u>Note Renovation Account</u>") for the payment of expenses associated with Authorized Buyer's or affiliate of Authorized's Buyer's provision of certain renovation and refurbishment services with respect to the Properties, and Authorized Buyer entered into a promissory note in favor of CAH (as amended, restated, supplemented or otherwise modified to the date hereof, the "<u>Note</u>") to evidence its obligations to return and repay all funds advanced in accordance with the terms of the Note, the PMA and the Original Agreement. The parties hereby agree that CAH shall have the right, upon prior written notice to Authorized Buyer, to terminate those certain funding arrangements under the Note. Within 30 days of receipt of such termination notice, Authorized Buyer shall provide to CAH a detailed reconciliation report evidencing all expenses paid out of the Note Renovation Account since the last reconciliation report submitted to CAH, which shall be verified by CAH in a timely manner. Authorized Buyer shall have an additional 60 days from the date of delivery of such reconciliation report to use any of the remaining funds in the Note Renovation Account to provide Renovation Services on the Properties and/or return and repay to CAH any outstanding principal balance remaining due under the Note, together with any accrued interest thereon, in accordance with the terms of the Note, the PMA and this Agreement (the "<u>Note Termination Date</u>").

12

2. *Work Order Approval.* As of the date hereof, CAH and Authorized Buyer acknowledge and agree that for each new refurbishment or rehabilitation project with respect to each Qualifying Home from this date forward, Authorized Buyer shall submit a proposed cost estimate for CAH's approval prior to initiating, authorizing or permitting any such Renovation Services. In the event CAH delivers written approval of such cost estimate (a "Work Order Approval"), CAH shall advance to Authorized Buyer fifty percent (50%) of the amount of the approved estimate (the "Initial Funding") in order to streamline the invoicing process for deposits and other payments required to be made to Third-Party Contractors by Authorized Buyer in connection with the Renovation Services. Authorized Buyer agrees to hold the Initial Funding in trust for the payment of expenses associated with the performance of such Renovation Services in an interest-bearing account at a financial institution reasonably acceptable to CAH (the "Renovation Account"). The Initial Funding in the Renovation Account shall only be used in strict accordance with the terms set forth in the CMA.

(c)   *Accounting.* Authorized Buyer shall maintain current and complete books of account in strict accordance with the terms set forth in the CMA. From time to time and upon request by CAH, Authorized Buyer shall prepare and submit to CAH monthly, quarterly and/or annual reconciliations of the Renovation Account comparing (x) the aggregate amount on deposit in the Renovation Account to (y) the amounts withdrawn from the Renovation Account for payment of Renovation Services provided during the preceding month, quarter and/or year, as applicable, provided, however, CAH may request more frequent reconciliation reports at any time.

(d)   *Final Invoice.* Within seven (7) days of the final completion of any approved refurbishment or rehabilitation project, Authorized Buyer shall prepare and submit to CAH a final invoice for such project including, without limitation, (i) satisfactory evidence of all costs and expenses incurred, (ii) detailed calculation of any Fees (as defined in the CMA) and (iii) final completion photos of such project. Pursuant to the terms and conditions set forth in the CMA, CAH shall pay to Authorized Buyer the remaining balance due with respect to such project, if any, after deduction of the amount of the Initial Funding; provided, however, if the funds advanced in the Initial Funding exceeds the amount of the Final Invoice, Authorized Buyer shall repay to CAH the entire unused balance of the Initial Funding in accordance with the terms set forth in the CMA.

(e)   *Termination.* CAH may elect at any time in its sole discretion to terminate the funding arrangements described in this Section 27 and in such event, Authorized Buyer shall return and repay all amounts due to CAH, including, without limitation, all funds then held in the Renovation Account, in accordance with the terms of the this Agreement and the CMA.

*[remainder of page intentionally blank]*

13

IN WITNESS WHEREOF, CAH and Authorized Buyer have caused this Agreement to be executed as of the date first above written.

**COLFIN AMERICAN HOMES, LLC**

By:

Name: _____ Paul Fuhrman

Title:

**PINTAR INVESTMENT COMPANY, LLC**

By:

Name: Jeff Pintar

Title: Chief Executive Officer

[Signature page to Amended and Restated Authorized Buyer Agreement]

# **ACKNOWLEDGMENT**

State of California

County of _____ Los Angeles _____ )

On ____ June 7, 2013 _____ before me, ____ Adrian Stuessy, Notary Public _____
(insert name and title of the officer)

personally appeared ____ Paul Fuhrman _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

ADRIAN STUESSY
Commission # 1995063
Notary Public - California
Los Angeles County
My Comm. Expires Oct 22, 2016

Signature _____   **(Seal)**

**Exhibit A**

**Qualifying Home Criteria**

*See attached.*

NY\5731656.3

**Exhibit B**

**Form of Power of Attorney**

**RECORDING REQUESTED BY AND WHEN
RECORDED, MAIL TO:**

**Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attention: Casey Calhoun, Esq.**

**SPECIAL POWER OF ATTORNEY
FOR CLOSING REAL ESTATE TRANSACTIONS**
(Agent for Purchaser)

KNOW ALL MEN BY THESE PRESENTS,

THAT, [COLFIN AMERICAN HOMES, LLC OR ITS NOMINEE], a Delaware limited liability company, whose address is 2450 Broadway, 6th Floor, Santa Monica, California 90404 ("CAH") does hereby MAKE, CONSTITUTE AND APPOINT [_____] as attorney-in-fact ("Attorney-in-Fact"), and GRANTS unto Attorney-in-Fact the full power to:

> (i) do all things customary and necessary to bid on and purchase foreclosed properties at trustee auction sales in [_____] County, California ("Home Purchases"), with full power and authority to sign, seal, execute, acknowledge, deliver, accept and, if applicable, cause to be recorded any and all documents reasonably necessary to effect the Home Purchases, including without limitation any customary sales contracts and addenda thereto, negotiable instruments, deeds, deeds of trust, or other instruments, disclosure statements, closing or settlement statements; and

> (ii) execute cashier's checks in the name of the Company for the sole purpose of remitting payment for successful (winning) Home Purchases bids and satisfying any customary costs incurred therewith.

CAH ratifies and confirms that said Attorney-in-Fact shall lawfully do or cause to be done those acts authorized by virtue of the rights and powers herein granted. However, Attorney-in-Fact's power and authority shall be limited to those items set forth above.

All instruments and documents executed by Attorney-in-Fact shall contain the name of CAH followed by the name of Attorney-in-Fact with a description stating the capacity in which Attorney-in-Fact is acting. This SPECIAL POWER OF ATTORNEY shall be valid and may be relied upon by any third parties effective immediately and shall terminate automatically upon termination of the [Amended and Restated Authorized Buyer Services Agreement, dated _____, 2013, between CAH and Pintar Investment

4

NY\5731656.3

Company, LLC, as authorized buyer], at which time CAH shall record a revocation in the recorder's office of [_____] County, California.

[SIGNATURE OF PRINCIPAL, NOTARY, NOTICE TO AGENT AND
SIGNATURE OF AGENT, AND NOTARY FOLLOW]

5

IN WITNESS WHEREOF, the undersigned has executed this SPECIAL POWER OF ATTORNEY as of the ___ day of [_____], 2013.


[COLFIN AMERICAN HOMES, LLC OR ITS NOMINEE]


By: _____
Name:  Mark M. Hedstrom
Title:   Vice President

State of California
County of _____

On _____ before me, _____, Notary Public, personally appeared_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)


Notary Public:

My commission expires: _____

**ACKNOWLEDGMENT OF ATTORNEY-IN-FACT**

**CAUTION AND NOTICE TO PERSON ACCEPTING
APPOINTMENT AS ATTORNEY-IN-FACT**

BY ACTING OR AGREEING TO ACT AS THE ATTORNEY-IN-FACT UNDER THIS **SPECIAL
POWER OF ATTORNEY FOR CLOSING REAL ESTATE TRANSACTIONS** YOU, THE
UNDERSIGNED, ASSUME THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN
AGENT.  THESE RESPONSIBILITIES INCLUDE WITHOUT LIMITATION:

1.      THE LEGAL DUTY TO ACT SOLELY IN THE INTEREST OF THE PRINCIPAL AND TO
AVOID CONFLICTS OF INTEREST.

2.      THE LEGAL DUTY TO KEEP THE PRINCIPAL'S PROPERTY SEPARATE AND DISTINCT
FROM ANY OTHER PROPERTY OWNED OR CONTROLLED BY YOU.   YOU MAY NOT
TRANSFER THE PRINCIPAL'S PROPERTY TO YOURSELF WITHOUT FULL AND ADEQUATE
CONSIDERATION OR ACCEPT A GIFT OF THE PRINCIPAL'S PROPERTY UNLESS THIS
POWER OF ATTORNEY SPECIFICALLY AUTHORIZES YOU TO TRANSFER PROPERTY TO
YOURSELF OR ACCEPT A GIFT OF THE PRINCIPAL'S PROPERTY.  IF YOU TRANSFER THE
PRINCIPAL'S PROPERTY TO YOURSELF WITHOUT SPECIFIC AUTHORIZATION IN THE
POWER OF ATTORNEY, YOU MAY BE PROSECUTED FOR FRAUD AND/OR EMBEZZLEMENT.
IF THE PRINCIPAL IS 65 YEARS OF AGE OR OLDER AT THE TIME THAT THE PROPERTY IS
TRANSFERRED TO YOU WITHOUT AUTHORITY, YOU MAY ALSO BE PROSECUTED FOR
ELDER ABUSE UNDER PENAL CODE SECTION 368.   **IN ADDITION TO CRIMINAL
PROSECUTION, YOU MAY ALSO BE SUED IN CIVIL COURT**.

I HAVE READ THE FOREGOING NOTICE AND I UNDERSTAND THE LEGAL AND FIDUCIARY
DUTIES THAT I ASSUME BY ACTING OR AGREEING TO ACT AS THE ATTORNEY-IN-FACT
UNDER THE TERMS OF THIS SPECIAL POWER OF ATTORNEY FOR CLOSING REAL ESTATE
TRANSACTIONS.

DATE: _____

_____
[_____], an individual

State of California
County of _____

On _____ before me, _____, Notary Public,
personally appeared_____, who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)


                    Notary Public:

                    My commission expires: _____

**PREPARATION STATEMENT**

This document was prepared by:

_____

[Mark M. Hedstrom]

| PRINCIPAL NAME AND ADDRESS | ATTORNEY-IN-FACT NAME AND ADDRESS |
|---|---|
| ColFin American Homes, LLC<br>2450 Broadway, 6th Floor<br>Santa Monica, California 90404 | Pintar Investment Company, LLC<br>24682 Del Prado Ste 200<br>Dana Point, CA  92629 |

**Schedule 1**

**Insurance**

| Type of Insurance | Amount of Insurance |
|---|---|
| General Liability | $1,000,000 per incident; $2,000,000 aggregate |
| Professional Liability | $1,000,000 |
| Crime | $5,000,000 |
| Automobile | $400,000 - $1,000,000 |
| Worker's Compensation | Usual and customary |