# EXHIBIT G

## CONSTRUCTION MANAGEMENT AGREEMENT

**THIS CONSTRUCTION MANAGEMENT AGREEMENT** (this "**Agreement**") is made and entered into as of the [ 7 ] day of [ 7 ], 2013 (the "**Effective Date**"), by and between **COLFIN AI - CA 5, LLC**, a Delaware limited liability company (hereinafter referred to as "**Owner**"), and Strategic Acquisitions, Inc., a California corporation (hereinafter referred to as "**Manager**").

## BACKGROUND INFORMATION

**WHEREAS**, Owner and Manager entered into that certain Amended and Restated Authorized Buyer Services Agreement, dated as of [ 7 / 3 ], 2013, that amended and restated that certain Authorized Buyer Services Agreement dated as of May 11, 2012 (as amended, restated, modified or supplemented from time to time, the "**Authorized Buyer Agreement**"; capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Authorized Buyer Agreement), pursuant to which Owner engaged Manager to source single family residences in the Territory;

**WHEREAS**, Owner has acquired certain of such single family residences which in Owner's determination need to be renovated and refurbished (the "**Properties**");

**WHEREAS**, pursuant to the Authorized Buyer Agreement, Manager has agreed to provide certain Renovation Services with respect to the Properties; and

**WHEREAS**, Owner and Manager desire to enter into this Agreement to more fully describe their respective rights and/or obligations with respect to the renovation and refurbishment of the properties.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1

## ENGAGEMENT OF MANAGER

1.1     **Engagement of Manager.** Owner hereby engages Manager on an exclusive basis (subject to Section 1.3 below) in the Territory to perform, and hereby grants to Manager the right to perform during the term of this Agreement, the services specified in this Agreement for the refurbishment and renovation of the Properties, all subject to and in accordance with the terms and provisions of this Agreement.  In the event of any conflict between the terms and conditions of this Agreement and the Authorized Buyer Agreement, this Agreement shall control.  In conjunction with this Agreement, Owner has entered into the certain Property Management and Leasing Agreement (as amended, restated, modified or supplemented from time to time, the "**PM Agreement**") with Strategic Property Management, Inc. (the "**Property Manager**") whereby the Property Manager will perform certain property management and leasing services with respect to certain of the Properties.  The rights and obligations of the Property Manager under the PM Agreement are independent of the Manager's rights and obligations under this Agreement.

(1)

DocuSign Envelope ID: 85107C15C58F54BC94F621AEC2D57B90E

**1.2**     **Acceptance by Manager.**  Manager hereby accepts its engagement by Owner, and agrees to perform the services specified in this Agreement for the benefit of and on behalf of Owner, subject to and in accordance with the terms and provisions of this Agreement.

**1.3**     **Limited Exclusivity.**  Notwithstanding anything in Section 1.1 to the contrary, Manager acknowledges and agrees that Owner may from time to time elect in its sole discretion to engage an affiliate of Owner to provide refurbishment and renovation services in the Territory with respect to the Properties and/or with respect to any other single family residences.

## ARTICLE 2

## NATURE OF ENGAGEMENT

**2.1**     **Status of Manager.**  In the performance of its duties and obligations under this Agreement, Manager is, and shall at all times during the term of this Agreement be, an independent contractor, and not an employee of Owner.  Manager shall act solely as the independent contractor of Owner in the performance of its duties and obligations under this Agreement.  All contracts and agreements executed or entered into by Manager, with the prior written approval of Owner, in connection with the performance of its duties and obligations under this Agreement shall be contracts and agreements on behalf of, and for the account of, Owner and, for the purpose of executing or entering into such contracts and agreements, Manager shall be entitled to act as Owner's agent by execution of an addendum in the form of Exhibit B and only in strict accordance with the terms hereof.

**2.2**     **No Partnership or Joint Venture.**  Nothing contained in this Agreement shall constitute or be deemed or construed to create a partnership or joint venture between Owner and Manager.

## ARTICLE 3

## TERM OF AGREEMENT

**3.1**     **Term.**  The term of this Agreement shall commence on the Effective Date and expire on the date which is twenty-four (24) months after the Effective Date (unless otherwise sooner terminated in accordance with Section 9.1 of Agreement); provided, however, that the parties may by mutual written agreement extend the term of this Agreement on the same terms contained herein.

## ARTICLE 4

## SERVICES

**4.1**     **Refurbishment and Renovation Services**.  Manager shall arrange for, coordinate, supervise, administer and manage, on behalf of and for the account of Owner, all normal and customary activities and services required for the refurbishment and renovation of the Properties, which services shall be performed at a level of care and duty consistent with that of other professional construction management companies managing assets similar to the Properties.  Owner hereby acknowledges and agrees that Manager may provide such services

(2)

directly, through [insert name of separate construction company], an affiliate of Manager (the "**Affiliate**"), and/or engage third party vendors and subcontractors approved by Owner, to provide such services to the Properties (each, a "**Third-Party Contractor**"); provided, however, that notwithstanding anything in this Agreement to the contrary, (i) any agreement between Manager and a Third-Party Contractor shall be substantially in the form of Exhibit A attached hereto unless Owner in its sole discretion agrees otherwise in writing, (ii) Manager shall at all times be responsible for supervising the Affiliate or such Third Party Contractor (s), and (iii) in no event shall the engagement by Manager of the Affiliate or any Third-Party Contractor relieve Manager of any of its obligations or liabilities under this Agreement.  Manager's functions in connection with the renovation and refurbishment of the Properties shall include, without limitation, the following:

        4.1.1  Selecting, hiring, training, paying, supervising and discharging (when necessary) all persons necessary to enable Manager to perform Manager's duties and obligations under this Agreement with respect to the renovation and refurbishment of the Properties;

        4.1.2  Purchasing all equipment, tools, appliances, materials, supplies and uniforms necessary for the renovation and refurbishment of the Properties;

        4.1.3  Procuring and maintaining in full force and effect at all times such policies of insurance as Owner may direct in writing with such companies, in such amounts and under such forms of policies as Owner shall approve, and administering all matters pertaining to such insurance, including filing claims and collecting proceeds thereunder;

        4.1.4  Obtaining all certificates, licenses, permits, authorizations, consents and approvals required for the renovation and refurbishment of the Properties;

        4.1.5  Coordinating compliance, in the operation of the Properties, with all applicable fire, safety, zoning and other applicable laws, codes, ordinances, rules and regulations;

        4.1.6  Consulting with the Owner from time to time, as Owner shall reasonably require, with respect to the renovation and refurbishment of the Properties;

        4.1.7  Executing and entering into agreements for the provision of goods, products or services in connection with the renovation and refurbishment of the Properties, including, without limitation, any agreements with Third Party Contractors incident to the performance of any of the services and functions hereinabove described in this Section 4.1, or otherwise in connection with the renovation and refurbishment of the Properties;

        4.1.8  Subject to the terms hereof, paying, for the account of Owner, all Direct Job Costs incurred in connection with the performance of any of the services and functions hereinabove described in this Section 4.1, or otherwise incurred in connection with the management, maintenance and operation of the Properties;

        4.1.9  Preparing a cost estimate for each Property in accordance with Section 4.3; and

DocuSign Envelope ID: 65107C15C58E54BC9A5E6214EC2D57B90E

4.1.10 Preparing and submitting a final invoice for the renovation and refurbishment of each Property in accordance with Section 4.4.

In performing its duties and obligations hereunder, Manager shall follow all express instructions given by Owner which are consistent with the terms of this Agreement with regard to the renovation and refurbishment of the Properties. Owner shall bear and pay all Direct Job Costs and shall make such amounts available to Manager pursuant to Section 5.1 below.

**4.2     Properties Under Management**. Owner may from time to time by written notice to Manager identify additional single family residences which are to be managed by Manager as Properties hereunder. Owner may from time to time by written notice to Manager provide that the Properties identified in such notice shall have renovation and refurbishment services provided by an affiliate of Owner in accordance with Section 1.3.

**4.3     Cost Estimate Approval Process**.

4.3.1     Manager shall be responsible for promptly preparing a proposed cost estimate for the renovation and refurbishment of each Property (including line item scope of repairs by category with associated Direct Job Costs (as herein defined) and all other costs and expenses) (a "**Proposed Cost Estimate**") and submitting the same to Owner for approval.

4.3.2     In the event such Proposed Cost Estimate exceeds the cost estimate provided by Manager in the underwriting report prepared by Manager under the Authorized Buyer Agreement by more than twenty percent (20%), Manager shall, simultaneously with such Proposed Cost Estimate, prepare and submit to Owner a revised underwriting report for the applicable Property calculating the revised yield for such Property and providing a reasonably detailed explanation for the variance.

4.3.3     In the event such Proposed Cost Estimate is approved by Owner in its reasonable discretion (as so approved, the "**Approved Cost Estimate**"), Owner shall deliver to Manager a written approval (a "**Work Order Approval**"), together with an advance payment of fifty percent (50%) of the Approved Cost Estimate (the "**Initial Funding**"). Manager agrees to hold the Initial Funding in trust for the payment of expenses associated with the performance of such refurbishment and renovation services in an interest-bearing account at a financial institution reasonably acceptable to Owner (the "**Renovation Account**"). Manager expressly acknowledges and agrees that it shall not, and has no authority to, initiate, authorize or permit any construction, renovation or refurbishment with respect to any Property until Owner has provided Manager with a Work Order Approval for such Property. Upon receipt of the Work Order Approval and Initial Funding, Manager is authorized to commence and undertake the construction services provided for in the Approved Cost Estimate. For each individual property, any proposed change orders that either individually or in the aggregate exceed the lesser of Two Thousand Dollars ($2000) or ten percent (10%) of the aggregate value of the Approved Cost Estimate for such Property must be approved by Owner in writing prior to Manager initiating, authorizing or permitting any construction, renovation or refurbishment with respect to such proposed amendments or modifications. If the aggregate value of change orders submitted for an individual property is less than the lesser of Two Thousand Dollars ($2000) or ten percent (10%)

(4)

of the aggregate value of Approved Cost Estimates for such Property, then no prior approval by Owner is required.

4.4    **Final Invoices**.   Manager shall prepare and submit to Owner, within seven (7) days of final completion of all construction at any Property, a final invoice for the services and materials provided by Manager hereunder with respect to such Property, along with final completion photos of such Property (the "**Final Invoice**"). The Final Invoice shall include a reasonably detailed calculation of the Fees (as hereinafter defined) and satisfactory evidence of all costs and expenses associated with the performance of such refurbishment and renovation services with respect to such Property. Owner shall independently verify to its reasonable satisfaction such completion of construction and Manager's calculation of the Fees. Provided that Owner is able to so verify completion of construction and Manager's calculation of the Fees, the remaining balance of the Final Invoice after deducting the amount of Initial Funding shall be paid to Manager within fifteen (15) days of Owner's receipt of the Final Invoice, which Manager shall use in part to pay any outstanding amounts due for Direct Job Costs and other costs of construction provided for in the Work Order Approval. In the event the Initial Funding exceeds the Final Invoice, Manager shall return the unused balance of the Initial Funding to Owner within fifteen (15) days of Owner's receipt of the Final Invoice. Owner may reasonably extend such time for payment of the applicable Fees in connection with any discussions between Owner and Manager with respect to the amount of Fees payable hereunder.

## ARTICLE 5

## COSTS AND EXPENSES

5.1    **Direct Job Costs**.   Owner shall bear and pay all direct costs associated with the initial renovation and refurbishment related to construction and repairs at each Property, which shall primarily include the purchase of direct materials, installation costs, any associated sales taxes and any labor associated with installation, construction and/or repairs of the subject Property (collectively, "**Direct Job Costs**"). Direct Job Costs shall be paid directly to Third Party Contractors by Manager. When approved by Owner in advance, Owner will allow reimbursement for internal direct labor of Manager utilized to complete certain repairs, provided, however, that (i) the hours worked on a subject Property are tracked on a job by job basis to support the time charged to a particular Property and (ii) the labor rate charged for such services is the actual rate paid to the employee and is commensurate with market rates for such services. Direct Job Costs shall be priced based upon standard market pricing agreed upon between Owner and Manager. All properties located within the Territory shall utilize the same standard pricing for each scope item.  Pricing shall be reviewed periodically to determine if any adjustments are necessary. All Direct Job Costs shall be reimbursed at "cost" with no additional mark-up and are subject to periodic verification by Owner in its sole discretion. Direct Job Costs shall exclude all internal personnel costs, except for those direct labor costs related to actual crews and/or laborers actually utilized to perform rehab/repair services on the subject Property and subject to the terms and conditions of this Section.  Notwithstanding anything in this Section 5.1 to the contrary, Owner shall not pay any costs in excess of the amounts approved in the Approved Cost Estimate unless the same have been approved by Owner in accordance with Section 4.4.

(5)

**5.2**     **Reimbursement of Direct Estimation and Project Supervision Costs**.  Owner shall reimburse Manager a standard allowance for personnel costs related to estimation and direct project supervision associated with renovation and refurbishment of each Property, including (i) assessing the Property to determine the initial scope of repairs for the Property (including taking "before" photos); (ii) preparing a cost estimate for the subject Property (including line item scope of repairs by category with associated costs); (iii) determining the vendor(s) and subcontractors to complete the necessary scope of work; (iv) managing the Property through the course of construction and overseeing the various vendors and subcontractors and rehabilitation once repairs have been initiated; and (v) performing the final quality control inspection once construction has been completed (including taking final completion photos). Reimbursement of Manager for estimation and project supervision costs shall be broken down into two components as described in the following subparagraphs (a) and (b):

(a)     **Estimation Fee**

For all Properties that undergo initial renovation, Manager shall receive an estimation fee of $50.00 per Property (the "**Estimation Fee**").

(b)     **Project Supervision Fee**

For all Properties that undergo initial renovation, Manager shall receive a project supervision fee (the "**Supervision Fee**") in proportion to the cost of the initial renovation based on the following scale:

| Job Size | Supervision Fee |
|---|---|
| Under $5,000 | $250.00 per Property |
| $5,001 to $10,000 | $500.00 per Property |
| Over $10,000 | $700.00 per Property |

(c)     **Fees Subject to Modification**

The Estimation Fee and the Supervision Fee shall be subject to modification from time to time as mutually agreed by Owner and Manager.

(d)     **No Other Costs Payable by Owner**

The Estimation Fee and the Supervision Fee shall only be paid related to initial renovation and shall not be paid on any maintenance-related repairs performed pursuant to the PM Agreement.  Furthermore, there shall be no other personnel costs assessed with respect to any Property other than the Fees and the Direct Job Costs and Owner shall not be obligated to pay or reimburse Manager for any of the following types of expenses except as specifically provided in this Agreement as Fees or Direct Job Costs:   general office, overheard or administrative expenses, or expenses incurred by Manager, including without limitation, fees, wages, salaries and other compensation for any personnel or employees of, or retained by,

(6)

DocuSign Envelope ID: 65107C15C58F4BC9AF621AEC2D57B90F

Manager, costs and expenses of workers compensation insurance, employee benefits, social security taxes, unemployment insurance, health insurance, all other taxes or levies now or hereafter imposed with respect to employees of, or retained by, Manager, expenses for general accounting and reporting services and human resources administration, overhead expenses incurred in Manager's general office, expenses for supplies and equipment used by Manager but not specifically allocated to the Properties, expenses of electronic data processing, computer services, or equipment necessary to discharge Manager's duties and responsibilities hereunder, expenses of advances made to employees of Manager, training expenses, or costs of insurance maintained or required to be maintained by Manager under this Agreement and shall expressly survive the expiration or earlier termination of this Agreement.

      **5.3**    **Advances**. Manager acknowledges that (i) pursuant to the Authorized Buyer Agreement, Owner may from time to time advance certain amounts to Manager in connection with the Renovation Services, in addition to the funds advanced in the Initial Funding set forth in Section 4.3.3 above, and (ii) Manager's obligation to pay any amounts owed to Owner under this Agreement and/or the Authorized Buyer Agreement are absolute and unconditional notwithstanding any default by either party under this Agreement.

## ARTICLE 6

## BOOKS; RECORDS; REPORTS

      **6.1**    **Books**. Manager shall maintain for Owner current and complete books of account of all transactions with respect to the Properties and the renovation and refurbishment of the Properties in accordance with Manager's custom and practice and otherwise in a manner consistent with that of other construction management companies managing assets similar to the Properties. Such books of account shall be maintained at Manager's general office or at such other place as the parties shall agree upon, and Owner and Owner's accountants and auditors shall have access to such books of accounts at all reasonable times upon reasonable notice. Manager shall maintain said books of account in a safe manner and separate from any books not dealing directly with the Properties. Such books of account shall be kept in accordance with sound accounting practices consistently applied, and otherwise in such manner as shall be reasonably required by Owner.

      **6.2**    **Records**. Manager shall maintain, in a secure and safe manner, complete and identifiable records on all matters pertaining to Manager's activities under this Agreement on behalf of Owner with respect to the Properties.

      **6.3**    **Property of Owner**. All such books of account and records shall be and remain the property of Owner, and, upon the expiration or earlier termination of this Agreement, shall be turned over to Owner as provided in Article 10 below provided that Manager shall be entitled to retain one or more copies of such books and records.

      **6.4**    **Reports**. Upon request by Owner, Manager shall prepare and submit such weekly, monthly, quarterly and/or annual reports and statements as may be reasonably required by Owner.

NY\5731608.3

DocuSign Envelope ID: 65107C15C58F54EC9-9F6341AEC2D57B90E

# ARTICLE 7

## COMPENSATION OF MANAGER

**7.1    Management Fee**.  Owner shall pay to Manager a management fee (the "**Management Fee**" and, together with the Estimation Fee and the Supervision Fee, collectively, "**Fees**") in an amount equal to ten percent (10%) of the Direct Job Costs (which shall not be deemed to include the Estimation Fee or Supervision Fee). The Management Fee shall be paid in full upon completion of construction and final verification by Owner that the full scope of work has been completed. The Management Fee shall be paid only on initial renovation and shall not be paid on any maintenance related repairs. All Fees shall be payable in accordance with Section 4.4.

# ARTICLE 8

## DEFAULT AND REMEDIES

**8.1    Default by Manager**.  Manager shall be in default under this Agreement if Manager fails to perform any of its material duties and obligations under this Agreement and does not cure or remedy such failure to perform within ten (10) days after receipt of written notice from Owner with respect thereto describing in reasonable detail the alleged default by Manager.

**8.2    Remedies of Owner**.  Upon the occurrence of a default by Manager under this Agreement, Owner may, at its option, (i) terminate this Agreement by giving Manager written notice of such termination, in which event this Agreement shall be terminated at the time designated by Owner in its notice of termination to Manager or (ii) without terminating this Agreement, bring an action against Manager to recover from Manager all damages, recoverable at law, actually suffered, incurred or sustained by Owner solely and directly as a result of, by reason of or in connection with such default by Manager; provided, however, that in no event shall Owner be entitled to recover, nor shall Manager be liable to Owner for, any punitive, speculative or other similar damages, including, without limitation, lost profits and/or opportunity costs.

# ARTICLE 9

## EXPIRATION; TERMINATION

**9.1    Termination Rights**.

9.1.1    Owner may, in Owner's sole discretion, terminate the engagement of Manager hereunder upon the happening of any of the following events pursuant to the provisions described below:

(a)    The giving of written notice from Owner in the event: (i) any receiver, trustee or custodian shall be appointed for all or any substantial part of the property or assets of Manager; (ii) Manager shall commence any voluntary proceeding under present or future federal bankruptcy laws or under any other bankruptcy, insolvency or other laws respecting debtor's

(8)

rights; or (iii) an "order for relief" or other judgment or decree by any court of competent jurisdiction is entered against Manager in any involuntary proceeding against Manager under present or future federal bankruptcy laws or under any other bankruptcy, insolvency or other laws respecting debtors rights, or any such involuntary proceeding shall be commenced against Manager and shall continue for a period of sixty (60) days after commencement without dismissal.

(b)     Any criminal misconduct, fraud, misappropriation or misapplication of funds, intentional misrepresentation, bad faith, willful or intentional misconduct or gross negligence of Manager.

(c)     Upon the consummation of the final sale or other disposition of all of the Properties and the payment to Manager of all Management Fees and other amounts due and payable to Manager pursuant to this Agreement.

(d)     Owner elects to terminate this Agreement as provided in Section 9.1.2 hereof.

9.1.2   In addition to Owner's rights provided in Section 9.1.1 above, Owner may, in Owner's sole discretion, terminate the engagement of Manager hereunder for any reason or no reason at any time upon thirty (30) days prior written notice to Manager and in such event, Manager shall return and repay to Owner all funds held by Manager pursuant to Section 4.3.3 and Section 5.3 and any other amounts due Owner within ten (10) days after receipt of such written notice. Owner shall be responsible for all obligations under any Work Order Approval for all work outstanding and/or unpaid, notwithstanding the termination of this Agreement.

9.1.3   Manager may, in Manager's sole discretion, terminate this Agreement for any reason or no reason at any time upon thirty (30) days prior written notice to Owner and in such event, Manager shall return and repay to Owner all funds held by Manager pursuant to Section 4.3.3 and Section 5.3 and any other amounts due Owner within ten (10) days after delivery of such written notice.

**9.2     Manager's Obligations**.   Upon the expiration or earlier termination of this Agreement, Manager shall promptly:

9.2.1   Deliver to Owner or such other person or entity as Owner shall designate all materials, supplies, equipment, keys, contracts and documents, and all books of account maintained pursuant to Section 8.1 above, and all records maintained pursuant to Section 8.2 above, pertaining to this Agreement and the renovation and refurbishment of the Properties.

9.2.2   Furnish all such information, take all such other reasonable action, and cooperate with Owner as Owner shall reasonably require in order to effectuate an orderly and systematic termination of Manager's services, duties, obligations and activities hereunder.

9.2.3   Assign all subcontractor agreements to Owner or such other person or entity as Owner shall designate.

**9.3    Owner's Obligations.**    Except in connection with a termination of this Agreement pursuant to Section 9.1.1(a) and (b) above, upon the expiration or earlier termination of this Agreement Owner shall pay to Manager all Fees payable by Owner which have accrued as of the expiration or earlier termination of this Agreement.

## ARTICLE 10

## INSURANCE

**10.1    Manager's Liability Insurance.**    Manager shall, at Manager's expense, obtain and maintain (i) commercial general liability insurance (including protective liability coverage on operations of independent contractors or agents, as applicable, and blanket contractual liability insurance) on an "occurrence" basis against claims for personal and advertising injury, death and property damage, contractual liability coverages, products/ completed operations, with a limit of not less than One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000) in the aggregate with commercially reasonable deductible amounts, and (ii) commercial general auto liability insurance (including protective liability coverage on operations of independent contractors or agents, as applicable, and blanket contractual liability insurance) on an occurrence basis against claims for personal injury, death and property damage, with a limit of not less than One Million Dollars ($1,000,000) per occurrence covering all owned, non-owned and hired automobiles.

**10.2    Workers' Compensation Insurance.**    Manager shall, at Manager's expense, obtain and maintain Workers' Compensation Insurance covering all employees of Manager employed in, on or about the Properties, so as to provide statutory benefits as required by the laws of the states in which the Properties are located.    All insurers shall agree to waive subrogation against Owner, its agents and Affiliates.

**10.3    Crime Insurance and Fidelity Bond.**    Manager, at Manager's expense, shall obtain and maintain crime insurance for an amount of not less than One Million Dollars ($1,000,000.00) for the benefit of Owner and Manager in form and substance satisfactory to Owner, against loss caused by dishonest, fraudulent acts, alteration or forgery, both on and off the Properties and infidelity of Manager or any of Manager's employees and any of Manager's officers who are authorized signatories for the Operating Account or who otherwise handle or have access to Owner's money including.    Manager shall include Owner as a loss payee under such crime insurance as its interest may appear.    Manager shall provide Owner evidence of such insurance.    Manager shall carry this coverage for one hundred eighty (180) days following expiration or earlier termination of this Agreement or in the alternate purchase an extended reporting provision allowing claims arising from actions during the term of this Agreement to be reported up to one hundred eighty (180) days after the expiration or earlier termination of this Agreement.

**10.4    Professional Liability Insurance.**    Manager shall obtain and maintain at Manager's expense Professional Errors and Omissions insurance for its acts as Manager in amount of at least One Million Dollars ($1,000,000.00) per wrongful act and One Million Dollars ($1,000,000.00) annual aggregate. Manager shall carry this coverage for one hundred eighty (180) days following expiration or earlier termination of this Agreement or in the alternate

(10)

DocuSign Envelope ID: 6F107C05-D595-4663-9F6A-AFC3B57880F

purchase an extended reporting provision allowing claims arising from actions during the term of this Agreement to be reported up to one hundred eighty (180) days after the expiration or earlier termination of this Agreement. In the event Manager shall provide construction management and coordination services in connection with capital improvements and/or replacements at the Properties, such services shall not be excluded and coverage shall continue in force for at least two (2) years after substantial completion of the work or for the statute of limitations for patent and latent construction defects, whichever is greater.

      **10.5**    **Manager's Insurance Policies**.  All insurance policies required to be carried by Manager shall be with insurance companies that are licensed to write insurance in the states where the Properties are located and are rated no less that A-VIII by the A.M. Best Rating Agency. Manager shall furnish or cause to be furnished to Owner (including, without limitation, by e-mail to contracts@colonyamerican.com) certificates of insurance evidencing all insurance that the parties are required to maintain pursuant to this Agreement, including copies of renewal or replacement policies promptly upon such renewal or replacement. All insurance policies maintained shall name Owner, Colony American Homes, LLC (or one or more of its Affiliates as directed by Colony American Homes, LLC) and Manager as insured parties, as their respective interests may appear, and shall provide that in the event of cancellation of the policies in whole or in part, or a reduction as to coverage or amount thereunder, whether initiated by the insurer or any insured, the insurer shall give not less than thirty (30) days advance written notice by registered or certified mail to Owner, Colony American Homes, LLC (or one or more of its Affiliates as directed by Colony American Homes, LLC) and Manager. Manager shall disclose any deductible or self-insured retention on insurance required of Manager by this Agreement. Manager shall be responsible for payment of any deductible or self-insured retention under Manager's insurance. Neither Owner nor any agents or members Owner shall be responsible for payment of premiums on Manager's insurance policies.

## ARTICLE 11

## STANDARD OF CARE; LIABILITY; INDEMNITY

      **11.1**    **Standard of Care**.  In the performance of its duties and obligations under this Agreement, Manager shall perform diligently and in good faith, to the same level of care and duty as would be exercised by other professional construction managers of single family residences located in the Territory.

      **11.2**    **Indemnity by Manager**.  Manager agrees to defend, indemnify, protect and hold harmless Owner and its affiliates, agents, managers, officers, directors, consultants, members, partners, shareholders and employees from and against any and all liability, claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' and paralegals' fees and expenses and court costs) arising (i) as a result of or in connection with the commission of any acts of Manager, its agents or employees which are outside the scope of Manager's authority or responsibility hereunder and performed without Owner's actual knowledge thereof and express consent thereto, (ii) as a result of or in connection with the commission of any act or omission that constitutes gross negligence, misrepresentation, bad faith, criminal misconduct, fraudulent, illegal or intentional tortious acts or willful misconduct of Manager or its agents or employees or (iii) material breach or material default under this Agreement by Manager or any other Manager

(11)

NY\5731608.3

Party. Manager's obligations under this <u>Section 11.2</u> with respect to all liability, claims, loss, cost, damage or expense arising during the term of this Agreement shall survive the expiration or earlier termination of this Agreement.

      **11.3**   <u>**Indemnity by Owner**</u>. Owner agrees to defend, indemnify, protect and hold harmless Manager and affiliates, agents, managers, officers, directors, consultants, members, partners, shareholders and employees ("<u>**Manager Party**</u>") from and against any and all liability, claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' and paralegals' fees and expenses and court costs) arising out of or in connection with the Renovation Services provided with respect to the Properties by Manager in accordance with this Agreement and the performance or exercise of the duties, powers, and authorities expressly granted to Manager in this Agreement. Notwithstanding the foregoing, Owner shall not indemnify, defend, protect or hold harmless any Manager Party, and such Manager Party shall be fully liable, for any act or omission by such Manager Party which constitutes bad faith, gross negligence, willful misconduct or a violation of law, or that is taken without the express power or authority described herein, or that constitutes a breach or default under this Agreement

      **11.4**   <u>**No Third-Party Beneficiaries**</u>. None of the duties and obligations of Manager under this Agreement shall in any way or in any manner be deemed to create any liability of Manager to, or any rights in, any person or entity other than Owner.

      **11.5**   <u>**Independent Contractors**</u>. No person who shall be engaged as an independent contractor by either Owner or Manager, or both, shall be considered an employee, servant, agent or other person for whom either Owner or Manager (as the case may be) is responsible for the purposes of indemnifications in the foregoing Sections of this Article 13.

**ARTICLE 12**

**<u>GENERAL PROVISIONS</u>**

      **12.1**   <u>**Notices**</u>. Whenever any notice, demand or request is required or permitted under this Agreement, such notice, demand or request shall be in writing and shall be delivered by hand, be sent by registered or certified mail, postage prepaid, return receipt requested, or be sent by nationally recognized commercial courier for next business day delivery, to the addresses set forth below or to such other addresses as are specified by written notice given in accordance herewith, or shall be transmitted by facsimile to the number for each party set forth below or to such other numbers as are specified by written notice given in accordance herewith:

OWNER:

        ColFin American Homes, LLC
        2450 Broadway, 6th Floor
        Santa Monica, CA 90404
        Attention: Richard Welch

with a copy to:

        Colony American Homes

(12)

9305 E. Via de Ventura, Suite 201
Scottsdale, Arizona 85258
Attention: Justin Iannacone

and with a copy to:

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attention: Michelle V. Kelban, Esq.
Facsimile Number: (212) 751-4864

MANAGER:

[Strategic Acquisitions Inc.]
5673 Whitnall
North Hollywood, CA 91601-2213
Attention: Peter Baer
Telephone Number: [ 8 1 8 - 7 6 9 - 7 8 8 0 ]
Facsimile Number: [818 - 769 - 7959 ]

All notices, demands or requests delivered by hand shall be deemed given upon the date delivered. Any notice, demand or request not received because of changed address or facsimile number of which no notice was given as hereinabove provided or because of refusal to accept delivery shall be deemed received by the party to whom addressed on the date of hand delivery, on the date of machine notice of receipt as received by the sending facsimile machine, on the first calendar day after deposit with commercial courier, or on the third business day following deposit in the United States Mail, as the case may be.

**12.2    Assignment; Binding Effect**.  Manager shall not assign this Agreement or any rights hereunder, nor shall Manager delegate its duties hereunder, without the prior written consent of Owner. This Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns.

**12.3    Headings**.  The use of headings, captions and numbers in this Agreement is solely for the convenience of identifying and indexing the various provisions in this Agreement and shall in no event be considered otherwise in construing or interpreting any provision in this Agreement.

**12.4    Exhibits**.  Each and every exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each exhibit were set forth in full and at length every time it is referred to, or otherwise mentioned.

**12.5    Defined Terms**.  Capitalized terms used in this Agreement shall have the meanings ascribed to them at the point where first defined, irrespective of where their use occurs,

(13)

DocuSign Envelope ID: 26F107C5D0595-4C63-9F6A-AFC2B578B0F

with the same effect as if the definitions of such terms were set forth in full and at length every time such terms are used.

12.6 **Pronouns**. Wherever appropriate in this Agreement, personal pronouns shall be deemed to include the other genders and the singular to include the plural.

12.7 **Severability**. If any term, covenant, condition or provision of this Agreement, or the application thereof to any person or circumstance, shall ever be held to be illegal, invalid or unenforceable, then in each such event the remainder of this Agreement or the application of such term, covenant, condition or provision to any other person or any other circumstance (other than those as to which it shall be illegal, invalid or unenforceable) shall not be thereby affected, and each term, covenant, condition and provision hereof shall remain valid and enforceable to the fullest extent permitted by law.

12.8 **Non-Waiver**. Failure by either party to complain of any action, non-action or default of the other party shall not constitute a waiver of any aggrieved party's rights hereunder. Waiver by either party of any right arising from any default of the other party shall not constitute a waiver of any other right arising from a subsequent default of the same obligation or for any other default, past, present or future.

12.9 **Rights Cumulative**. All rights, remedies, powers and privileges conferred under this Agreement on the parties shall be cumulative of and in addition to, but not restrictive of or in lieu of those conferred by law.

12.10 **Time of Essence**. Time is of the essence of this Agreement. Anywhere a day certain is stated in this Agreement for payment or for performance of any obligation, the day certain so stated enters into and becomes a part of the consideration for this Agreement.

12.11 **Applicable Law; Election of Jurisdiction and Venue**. This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of California without regard to its conflicts of laws principles that would require the application of the laws of another jurisdiction. Any disagreement concerning the validity, interpretation, execution or enforcement of this Agreement shall be submitted exclusively to any California State court or Federal court of the United States of America, in each case, sitting in the City and County of Los Angeles, and the parties content to such jurisdiction and venue therein.

12.12 **Entire Agreement**. This Agreement contains the entire agreement of Owner and Manager with respect to the engagement of Manager as the manager for the Properties, and all representations, warranties, inducements, promises or agreements, oral or otherwise, between the parties not embodied in this Agreement shall be of no force or effect.

12.13 **Modifications**. This Agreement shall not be modified or amended in any respect except by a written agreement executed by Owner and Manager in the same manner as this Agreement is executed.

NY\5731608.3

DocuSign Envelope ID: 6F107C0E0595-4663-9F6A-AEC4D57880F

**12.14  Counterparts.**  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

**12.15  Limitation of Liability.**  If either Owner or Manager is or becomes a limited liability company or a partnership, the members, managing members, general or limited partners, employees, agents, or Affiliates of such party shall not in any manner be personally or individually liable for the obligations of Owner or Manager, as the case may be, hereunder or for any claims related to this Agreement or the operation of the Properties.  If Owner or Manager is or becomes a corporation, no officer, employee, agents, or affiliates of Owner or Manager, as the case may be, shall in any manner be personally or individually liable for the obligations of Owner or Manager hereunder, as the case may be, or for any claim in any way related to this Agreement or the operations of the Properties.

**12.16  Confidentiality.**  Except to the extent necessary to comply with the terms hereof or as required by applicable law, Manager shall keep all aspects of this Agreement and all information with respect to the Properties and Owner, strictly confidential, except to the extent expressly permitted by Owner in writing.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

NY\5731608.3

IN WITNESS WHEREOF, Owner and Manager have caused their respective duly authorized representatives to execute, seal and deliver this Agreement, all as of the day and year first above written.

**OWNER:**

**COLFIN AI - CA 5, LLC,**
a Delaware limited liability company

By: _____

Name: Richard S. Welch

Its: Authorized Signatory


**MANAGER:**

[Strategic Acquisitions], INC
a [California corp]

By: _____

Name: Peter Dav

Its: President


**[SIGNATURE PAGE TO MANAGEMENT AGREEMENT]**

(16)

**EXHIBIT A**

| RESIDENTIAL SUBCONTRACT AGREEMENT | | |
|---|---|---|
| **DATE:** | | |
| **THIS SUBCONTRACT IS BETWEEN:** | | |
| **PRIME CONTRACTOR:** | | |
| **SUBCONTRACTOR:** | Business Name: | |
| | Business Address: | |
| | City | State | Zip |
| | Telephone: | Fax: |
| | License#: | |

| PROJECT INFORMATION | | |
|---|---|---|
| **PROJECT ADDRESS:** | **As indicated on Purchase Order.** | |

**SCOPE OF WORK TO BE PERFORMED BY SUBCONTRACTOR:** All work necessary and incidental to complete the Project in strict conformance with this Subcontract and all of the terms and conditions hereof and as more particularly specified as follows: **As directed and specified on the Purchase Order.**

| CONSTRUCTION TIMELINE |
|---|

**TIME FOR STARTING AND COMPLETION:**

Subcontractor shall not deliver any materials to the Project site or commence the work required hereunder until notified to do so by Contractor. Subcontractor shall commence work within ONE (1) day after receipt of written notice from Contractor. After Subcontractor commences work, Subcontractor will then complete the work within THE TIME INDICATED ON THE PURCHASE ORDER thereafter, subject to excusable delays. Working or business days are defined as Mondays through Sunday, inclusive, holidays included. Scheduling of work, as provided for in this Subcontract, is based upon acceptable industry standards. Subcontractor is aware that the Contractor must have its agreement with the Owner performed in accordance with the scope of work and schedule indicated on the Purchase Order. The Subcontractor agrees to perform the work in accordance with direction from the Contractor in accordance with the Purchase Order and, to that end, the Subcontractor will perform all work as required by the progress of the job and the instructions of the Contractor.

Should Subcontractor fail to start, continue and complete the work required hereunder and should the Contractor suffer or permit the Subcontractor to expend more time than required under this Subcontractor for same, Subcontractor hereby covenants and agrees to indemnify and save harmless Contractor from any loss or damages which it may sustain or be compelled to make good to the Owner or to others, by virtue of the Contractor Agreement with the Owner, or others, for or on account of delay in the completion thereof, insofar as said delay was caused by the Subcontractor. When extensions of time due to casualties are granted to the Contractor by Owner and such extensions affect the work to be performed by Subcontractor, the same extension of time will be granted to the Subcontractor.

The Subcontractor's supervisor for the Project shall be the designated agent for the Subcontractor and is authorized to receive notices and enter into agreements on behalf of Subcontractor.

| CONTRACT PRICE AND PAYMENT TERMS |
|---|

**PAYMENT:** Contractor agrees to pay Subcontractor for the satisfactory performance of the Subcontractor's work an amount to be indicated on the Purchase Order, (the "Contract Price") in accordance with the following terms and conditions.

Subcontractor shall perform the work in strict accordance with the plans and specifications for the Project. Subcontractor shall submit monthly pay applications to the Contractor on or before the 5th and 20th of each calendar month. Progress payments shall be made within forty-five (45) days after such payments are received by the Contractor from the Owner, except that in making such progress payments, Contractor or Owner may retain ten percent (10%) of the

requested amount to ensure complete performance of this Subcontract. If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven (7) business days from the time payment should have been made as provided for in this Subcontract, the Subcontractor may, without prejudice to any other remedies, upon seven (7) business days' additional notice to the Contractor, stop work under this Subcontract until payment of the amount owing has been paid. SUBCONTRACTOR AGREES AND ACKNOWLEDGES THAT PAYMENT TO THE CONTRACTOR BY THE OWNER SHALL BE A CONDITION PRECEDENT TO THE RIGHT OF THE SUBCONTRACTOR TO FINAL PAYMENT FROM THE CONTRACTOR, UNLESS FAILURE OF THE CONTRACTOR TO RECEIVE PAYMENT IS SOLELY THE FAULT OF THE CONTRACTOR. Payment shall be made to Subcontractor forty-five (45) days after receipt of same by the Contractor from the Owner. No payment made on account of the work performed by Subcontractor shall be construed as an acceptance or approval thereof, nor shall entrance and use by or on behalf of the Owner constitute acceptance of all or any part of the work performed by Subcontractor hereunder. Contractor reserves the right to pay any supplier of labor or materials to Subcontractor and offset such payment against amounts owing to Subcontractor hereunder or to issue checks jointly to Subcontractor and such supplier(s) of labor or materials.

## SUBCONTRACTOR ACKNOWLEDGEMENT

Subcontractor acknowledges that it has read and received a legible and complete copy of this Subcontract signed by Contractor, including the attached Terms and Conditions included herein, before any work was commenced. Subcontractor agrees to be bound by the terms of this Subcontract and to assume and indemnify, defend and hold Contractor harmless from all of the obligations and responsibilities for the Subcontractor's work that the Contractor, by virtue of Arizona law and/or the Contractor Agreement between the Owner and the Contractor, is responsible for to the Owner, including without limitation all warranties pertaining to Subcontractor's work. Subcontractor acknowledges that it has received a copy of the Contractor Agreement and has reviewed the obligations of Contractor to Owner thereunder, including without limitation all warranties provided by Contractor to Owner.

Subcontractor is prohibited from separately contracting with Owner for the work or any portion thereof that Subcontractor was required to perform hereunder or, without the written consent of Contractor, for any other work in connection with the Project. In the event that Subcontractor enters into a contractual arrangement with Owner, such action shall be deemed a material breach of this Subcontract and Subcontractor will be liable for such breach and Contractor shall be entitled to all remedies afforded to it under this Agreement, in law or in equity.

Subcontractor represents and warrants that it has carefully examined the Project site and understanding this Subcontract, that it has investigated the nature, locality of the Project site and the conditions and difficulties under which the work is to be performed, and that it enters into this Subcontract on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any opinions or representations of Contractor or the Owner.

## TERMS AND CONDITIONS

The Terms and Conditions on the following pages are expressly incorporated into this Subcontract. This Subcontract represents the entire and integrated agreement between the parties. No other understandings or representations, verbal or otherwise, shall be binding unless in writing signed by Contractor and Subcontractor. This Subcontract shall not become effective or binding on Contractor until signed by Contractor. By Subcontractor's signature below, Subcontractor acknowledges receipt of a fully executed copy of this Subcontract.

**CONTRACTOR:**
[ _____ ]

By: _____
Name: _____
Its: _____

**SUBCONTRACTOR:**
Business Name:

By: _____
Name: _____
Its: _____

1. **Permits and Licenses**

Subcontractor shall obtain and pay for all permits and licenses governing the Subcontractor's specific work in sufficient time to allow uninterrupted progress of this work and that of others.

2. **Required Work; Extra Work**

The Subcontractor will furnish all materials, supplies and equipment, including all tools necessary and incidental thereto prosecute the Subcontractor's work with due diligence, without delay, and will not in any manner, by delay or otherwise, interfere with the work of the Contractor, or other subcontractors, and should the said Contractor conclude that the Subcontractor is delaying or improperly performing said work, the Contractor may so notify said Subcontractor, who shall, within three (3) business days thereafter, furnish whatever materials are required, employ additional workers, or do such other things as required by the Contractor to bring the job back to schedule. Should the Subcontractor fail or refuse to comply with said demand, Contractor shall have the right to declare Subcontractor in default or to terminate Subcontractor's rights hereunder as to all or any of the balance of work to be performed and in either event to furnish materials and employ additional workers and charge the expense thereof against the Subcontractor and deduct same from this Subcontract, and should the amount or balance due on the Subcontract be insufficient therefor, to collect said deficiency by legal process. The Contractor shall have the right to terminate this Subcontract at any time for the Contractor's convenience and without cause, upon giving the Subcontractor three (3) business days' notice in writing.

The Subcontractor shall, at its cost and expense, haul, unload, handle, hoist, erect and protect the materials and work covered, under this Subcontract, shall broom-clean and remove from the site all rubbish and/or debris accumulated as a result of the performance hereof and shall provide sufficient, safe proper facilities at all times for the inspection of the work by the Contractor. Subcontractor shall, at once, at its sole cost and expense, remove all materials and take down and rebuild all portions of the Subcontractor's work condemned or rejected by Contractor, and other work damaged or destroyed thereby, upon receiving notice in writing of such condemnation or rejection.

No extra work or charges under this Subcontract will be recognized or paid for unless agreed to in writing before the commencement of the work. Subcontractor must submit a written request for any such change in the time and manner provided for in this Subcontract, and shall specify in detail the extra work or changes desired, the price to be paid or the amount to be deducted, should said changes decrease the amount to be paid, which shall be agreed upon prior to starting work on the change. Any additional or changed work and materials furnished by Subcontractor prior to obtaining such approval will be at its own expense. Any disputes as to the value of the extra work or changes shall be determined by Contractor whose decision shall be final and binding upon the parties hereto. Subcontractor is always responsible for taking such measurements as will insure the proper matching and fitting of the Subcontractor's work.

In the event that there are unit prices for the original scope of work or the extra work, then the extra work shall be at an identical unit price to the original scope of work. In the event of an emergency condition, the Contractor may authorize the extra work. In any event, a signed change order covering the emergency work shall be executed by the parties within 48 hours after the extra work is completed.

3. **General Work Conditions; Labor**

All work, labor, services and materials to be furnished by Subcontractor must strictly comply with all applicable federal, state, and local laws, rules, regulations, statutes, ordinances, and directives (hereinafter "Laws") now in force or hereafter in effect. All work, labor, services, or materials necessary to comply with said Laws shall be furnished by Subcontractor as part of this Subcontract without any additional compensation. To the fullest extent permitted by law, Subcontractor agrees to indemnify, defend and save Owner and Contractor harmless from and against any and all claims, loss, expense, fines or penalties including, without limitation, any such claims, loss and the like arising out of or based upon the Occupational Safety and Health Act, as amended, caused directly or indirectly by its failure to fully comply herewith. Subcontractor is specifically required to comply fully with all environmental, EPA Lead Safe Practices, and Hazardous Substance Laws and any applicable State Right-to-Know law. Before using on the Project site any substance or material referred to in such laws, Subcontractor shall furnish Contractor with a list of such substances and a copy of the Material Safety Data Sheet for any substance listed in any applicable Right-to-Know substance list.

Subcontractor agrees that the prevention of accidents to workers engaged in the work under Subcontractor is solely its responsibility. Subcontractor specifically agrees to take appropriate precautions to assure the safety of all persons, including but not limited to, its own employees, materialmen, and lower tier subcontractors, whose safety

-

might otherwise be jeopardized by any and all peculiar, unreasonable risks of physical harm, or by any other risks of harm, relating to or arising out of the work.

Subcontractor shall not initially or subsequently employ any workmen whose employment on the Project may be objected to initially or subsequently by the Contractor or the Owner. Subcontractor shall furnish a workforce that will work in harmony with all other subcontractors on the Project and who will comply with all rules established for work at the work site including but not limited to rules regarding reserved gate site access and site visitation, if applicable. Subcontractor shall abide by all relevant state and federal laws and local ordinances and shall, within 48 hours of receipt of a request by the Contractor, provide the Contractor with proof of compliance with such laws and ordinances, including but not limited to, proof that all employees in Subcontractor's employ, or in the employ of a sub-subcontractor, have submitted to their employer I-9s demonstrating they are eligible to work lawfully in the United States and are covered by current workers' compensation insurance policies. In the event any labor dispute or difficulty is created by or results from the operations of Subcontractor in connection with the work, and causes or results in a delay, interference or stoppage of any portion of the work, or any portion of the work of Contractor or any other subcontractor, and such delay or interruption continues in the aggregate for two (2) or more business days, or in the event of Subcontractor's failure to comply with other provisions hereof, the Contractor may hold Subcontractor in default or terminate this Subcontract at the end of said two (2) business days or at any time thereafter upon giving notice to Subcontractor thereof. The Contractor shall furthermore have all of the rights and remedies provided in this Subcontract or at law. Subcontractor expressly agrees not to participate in or accede to any stoppage in the work which may result from any labor dispute of difficulty.

## 4. Labor and Material Releases

Subcontractor shall provide satisfactory proof of payment in the form of labor and material releases covering work for each payment applied for and received from Contractor. Such releases provided by Subcontractor are only valid and conditioned upon receipt by Subcontractor of lawful U.S. currency for full amount of said payment.

## 5. Liens

To the extent permitted by law, Subcontractor for itself and for its subcontractors, laborers, and materialmen agrees that no laborer, materialmen or mechanics' lien will be filed or recorded against the Project and Subcontractor does hereby expressly waive, release and relinquish all rights to file, record, and maintain such liens.

## 6. Extra Time

Time is of the essence of this Subcontract. Subcontractor shall not be responsible for delays incurred as a result of acts of neglect or omission of Owner, Owner's employees or agent, Contractor, Contractor's employees or agents, other subcontractors, acts of God, stormy or inclement weather, strikes, lockouts, boycotts, or other union activities, extra work ordered by Contractor, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of government priority or allocation of materials, failure of Contractor to provide payments when due, or delays caused by inspections, or changes ordered by the inspectors of governmental bodies concerned, or other causes beyond control of Subcontractor.

## 7. Indemnity

All of the work performed at the site of construction or in preparing or delivering materials or equipment to the site shall be at the risk of Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify and hold Contractor harmless from any claim, liability, loss, damage, cost, expense, including reasonable attorney's fees, award, fine or judgment with respect to or arising out of the work, including without limitation, any such claims, liability, loss, damage, cost, expense, award, fine or judgment arising by reason of death or bodily injury to persons, injury to property, defects in workmanship or materials, or design defects (if the design originated with Subcontractor), or arising by reason of Contractor's alleged or actual negligent act or omission, regardless of whether such act or omission is active or passive. Subcontractor shall not be obligated to indemnify Contractor with respect to the sole negligence or willful misconduct of Contractor, its agents or servants or other subcontractors who are directly responsible to Contractor. The parties intend that this indemnity shall be in accordance with applicable law, and to the extent any provisions thereof may be in derogation of applicable law, such provisions shall be deemed modified and shall be construed so as to be in accordance with such law.

**8. Damages; Liquidated Damages.**
Contractor shall not be responsible for loss or damage to the Subcontractor's work until after final acceptance of said work by the Owner. Contractor shall not be responsible for loss or damage to materials, tools or appliances of the Subcontractor used or to be used in construction, however caused.

Subcontractor shall be responsible for liquidated damages to the extent provided for in the Contractor Agreement for delays caused by Subcontractor, including all or a portion of any liquidated damages assessed by the Owner against Contractor attributable in whole or in part to such Subcontractor-caused delays. In addition, Subcontractor shall be responsible for actual damages suffered by Contractor attributable to Subcontractor-caused delay.

**9. Assignment**
Neither this Subcontract nor any rights hereunder shall be assigned by Subcontractor without the prior written consent of Contractor. Any attempt to assign the Subcontract or any rights hereunder shall, at the option of Contractor, operate as an instant cause for termination of this Subcontract for default, and Subcontractor's rights hereunder and the rights of the parties shall be determined in the same manner as though Subcontractor had at the time of such attempted assignment failed and refused to continue to perform the Subcontract.

**10. Warranties; Guarantee**
Subcontractor hereby warrants that all work will be done in a good and workmanlike manner, and that all material and equipment will be new unless otherwise specified, and free from defects not inherent in the quality specified. Notwithstanding payments made hereunder, Subcontractor covenants and agrees to and with Contractor to remedy any and all defects in Subcontractor's work or materials appearing and made known to Subcontractor within two (2) years following completion of the Project. Specified assemblies or units purchased by Subcontractor which are included in this agreement are provided subject to the manufacturer's or distributor's guarantee or warranty and not that of Subcontractor. THIS IS IN LIEU OF ALL GUARANTEES EXPRESSED OR IMPLIED.

**11. Insurance**
Subcontractor shall carry, at Subcontractor's sole expense, workers compensation insurance covering all Subcontractor's employees and public liability and property damage insurance covering Subcontractor's liability in the minimum amount of $1,000,000 unless specified otherwise. Subcontractor shall also carry automobile public liability and property damage insurance in an amount agreeable to Contractor. Prior to commencement of work, Subcontractor agrees to provide to Contractor certificates of such coverage upon request of Contractor. Subcontractor agrees to maintain said insurance in full force and effect during the construction herein. In the event that Subcontractor does not provide said insurance, or said insurance shall for any reason lapse, then Contractor may purchase said insurance and charge Subcontractor therefore.

**12. Bonding of Subcontractor.**
Concurrently with the execution of this Subcontract or any time during its performance, Subcontractor shall, if required by Contractor, execute a Labor Material Bond and Faithful Performance Bond in an amount equal to one-hundred percent (100%) of the Contract Price. Said bonds shall be executed by a corporate surety acceptable to Contractor and shall be in a form satisfactory to Contractor.

**13. Work Stoppage**
Subcontractor shall have the right to stop work if payments are not made when due. If the work shall be stopped under an order of any court or other authority, or by Owner, or Contractor for a period of sixty (60) days, without the fault of the Subcontractor, then Subcontractor may, at Subcontractor's option, upon five (5) days written notice, demand and receive payment for all work executed and materials supplied including an amount for overhead and profit, proportionate to the work completed.

**14. Arbitration**
If at any time any controversy shall arise between Subcontractor and Contractor with respect to any matter in question arising out of, or related to, this Subcontract or the breach thereof, which the parties do not properly adjust and determine, said controversy shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties

NY\5731608.3

-

mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof. Administrative fees as described by the American Arbitration Association shall be advanced one half by each party. However, in the event that the dispute between the parties is less than $5000, then either party may choose to litigate the matter in the Small Claims Courts and the agreement to arbitrate shall not be binding. The prevailing party in any dispute shall be entitled to its reasonable costs including attorney's fees.

**15. General**

This Subcontract, including incorporated documents, constitutes the entire agreement of the parties. No other oral or written agreements between Contractor and Subcontractor, regarding construction to be performed exist. This Subcontract shall be construed in accordance with, and governed by, the laws of the state. No action of any character arising from or related to this Subcontract, or the performance thereof shall be commenced by Subcontractor more than two (2) years after completion of the Project or cessation of work under this Subcontract.

**16. Notice**

Any notice required or permitted under this Subcontract may be given by ordinary mail sent to the address of either Contractor or Subcontractor as listed in this Subcontract, but the address may be changed by written notice from one party to the other. Notice is considered received five (5) days after deposited in the mail, postage paid.

## EXHIBIT B

## CERTIFICATE OF AUTHORITY TO ACT
## ON BEHALF OF LIMITED LIABILITY COMPANY

   We, the undersigned, hereby certify that the signatures of all of the members and managers of **CSFR COLFIN AMERICAN INVESTORS, LLC**, a Delaware limited liability company, the Manager of **COLFIN AI - CA 5, LLC**, a Delaware limited liability company (the "LLC") are affixed to this instrument; that the signatures appearing below are the genuine signatures of such persons named below; that the LLC is engaged in the business of investing in, renovating, repairing and/or refurbishing, real property in Los Angeles County, Ventura County, Contra Costa County, Sacramento County, San Joaquin County, Fresno County, Kern County, Santa Barbara County, Alameda County, Madera County, Merced County, Placer County, San Luis Obispo County, Solano County, Stanislaus County and Tulare County, California (the "Properties").

   We hereby authorize [**STRATEGIC**] and/or its Members (collectively, the "Manager"), for and on behalf of the LLC to:

   1) arrange for, coordinate, supervise, administer and manage, on behalf of and for the account of the LLC, all normal and customary activities and services required for the refurbishment and renovation of the Properties, which services shall be performed at a level of care and duty consistent with that of other professional construction management companies managing assets similar to the Properties. The LLC hereby acknowledges and agrees that the Manager may either provide such services directly and/or engage third party vendors and subcontractors approved by the LLC, to provide such services to the Properties (each, a "Third-Party Contractor"); provided, however, that notwithstanding anything in any agreement to the contrary, (i) any agreement between the Manager and a Third-Party Contractor shall be substantially in the form of Exhibit A attached hereto unless the LLC in its sole discretion agrees otherwise in writing, (ii) the Manager shall at all times be responsible for supervising such Third Party Contractor (s), and (iii) in no event shall the engagement by the Manager of any Third-Party Contractor relieve the Manager of any of its obligations or liabilities under any agreement with the LLC; and

   2) execute and deliver any documents necessary for, or associated with, the foregoing, including, but not limited to executing any documents in connection with the California Construction Lien Laws;

   We agree that any contractor, subcontractor, title company, seller, buyer, lessor, or lessee of the Properties may rely on the certifications of such authorized person provided for herein.

   We hereby agree that any contractor, subcontractor, title company, seller, buyer, lessor, or lessee of the Properties are entitled to rely on this certificate until it receives written notice from the LLC of a change in the terms hereof and has a reasonable opportunity to act on such notice. This instrument is executed under the seal of each of the undersigned.

*[Signature page to follow.]*

NY\5731608.3

-

**COLFIN AI - CA 5, LLC, a Delaware limited liability company**

**BY ITS MANAGING MEMBER:**

CSFR ColFin American Investors, LLC,
a Delaware limited liability company,

By: _____

By: _____

DATE: _____