UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO ET AL. EX. REL BLACKBIRD SPECIAL PROJECT, LLC,<br><br>　　　　　　　Plaintiff-Relator,<br><br>v.<br><br>INVITATION HOMES, INC., a Maryland Corporation,<br><br>　　　　　　　Defendant. | Case No.: 3:22-cv-00260-L-MMP<br><br>**ORDER GRANTING JOINT MOTION FOR ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") [ECF NO. 61]** |

　　　　Plaintiff-Relator Blackbird Special Project, LLC ("Plaintiff-Relator") and Defendant Invitation Homes Inc., stipulate to and request that the Court enter the following Order for the production of Electronically Stored Information in the above-captioned matter. The Court **GRANTS** the Parties' Joint Motion for Order Regarding the Production of Electronically Stored Information ("ESI") [ECF No. 61] and enters the following Order as submitted by the Parties.

//

//

1

## I. GENERAL

1. This Order shall govern the discovery of ESI in this Action. It is intended as a supplement to the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Local Rules of the United States District Court for the Southern District of California, this Court's relevant Standing Orders, and any other applicable orders and rules. To the extent this Order is silent on an issue, the scope of discovery under Fed. R. Civ. P. 26(b) shall guide the Parties. Nothing in this Order relieves either Party of its discovery obligations under applicable orders and rules, which the Parties understand to apply in addition to the provisions contained in this Order.

2. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the action.

3. Nothing in this Order shall supersede the provisions of any applicable Protective Order in this case (hereinafter, "the Protective Order").

4. This Order applies to any third-party discovery pursuant to Fed. R. Civ. P. 45. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

5. In the event of remand or transfer to other courts, this Order will remain in effect in all respects, until adopted by the remand or transferee court or replaced by a successor order.

6. Nothing in this Order shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any discovery request.

## II. SCOPE AND PRESERVATION

7. The Parties agree that the allowable scope of discovery is all Documents regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Subject to the Parties' objections and responses to requests for production of Documents, non-privileged Documents that are identified as

responsive to discovery requests and are proportional to the needs of the case shall be produced in the manner provided herein and consistent with the Protective Order.

8.   The Parties agree that only unique, non-duplicative sources of relevant Documents need to be preserved.

9.   Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, the Parties will meet and confer regarding any issues involving preservation, such as, for example, relating to categories or sources of information that are not reasonably accessible or cannot reasonably be preserved because of undue burden or costs as well as categories or sources of responsive information subject to data privacy or protection laws, or relevance considering the proportionality factors in Fed. R. Civ. P. 26(b)(1).

### III. DEFINITIONS

10.   "**Document(s)**" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

11.   "**Party**" refers to any named party to this action.

12.   "**Non-party**" means any person or entity that is not a Party to this action and will be requested to produce Documents, either voluntarily or in response to a subpoena.

13.   "**Producing Party**" refers to the Party producing documents in this action.

14.   "**Requesting Party**" is the Party requesting production of Documents.

15.   "**Electronic Document or Data**" is a Document or other data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF and .JPG).

16.   "**Electronically Stored Information**" or "**ESI**" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34.

17.   "**Hard-Copy Document**" means a Document existing in paper form at the time of collection or otherwise stored in a manner other than electronically.

3:22-cv-00260-L-MMP

18. "**Native Format**" or "**Native File**" means and refers to the format of ESI in which it was originally created. For example, the native format of an Excel workbook is the .xls or .xlsx file.

19. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or, (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

20. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

21. "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

22. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms are known as MD5 and SHA-1.

23. "**Confidentiality Designation**" means the legend affixed to Documents for confidential discovery information as defined by, and subject to, the terms of the Protective Order.

24. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

25. "**Load File**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving party's document review platform and the correlation of such data in the platform.

26. **"Unitization"** means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

## IV. DATA SOURCES AND CULLING CRITERIA

27. **Meet and Confer Requirement.** The Parties shall meet and confer to discuss documents and ESI relating to the subject matter of this Action as necessary and appropriate. While the Parties cannot predict every issue that will require the Parties to meet and confer, the Parties specifically agree to meet and confer regarding:

   a. The search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI and filter out ESI that is not subject to discovery;
   b. The identity of custodians for whom ESI will be searched or reviewed; and
   c. How discoverable ESI can be collected from non-custodial systems and media in which it is stored.

28. **Processes & Technology**. The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents. The Parties further agree that each Producing Party is best situated to evaluate and utilize the procedures, methodologies, and technologies appropriate to identify, review, and produce its own Documents.

While this Agreement is intended to address the majority of Documents and data sources handled in this matter, there may be situations where the Parties come into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources. In the event such data sources are relevant, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such ESI, including, when appropriate, to meet and confer regarding relevant production format.

29. **Email Threading.** The Parties agree that they may use email threading to narrow the universe of documents for review. Where the most inclusive email—i.e., the

latest email in a chain—is responsive and non-privileged, the Parties may elect to produce only the most inclusive email. However, where the most inclusive email contains only privileged or non-responsive information, the Parties may also elect to produce the latest email in the chain that contains all of the responsive, non-privileged information from the chain. This Order does not change the Parties' obligation to produce responsive, non-privileged "branches" of an email chain that (a) are not included in the most inclusive email, (b) contain at least one attachment that is different than the attachment(s) to the most inclusive email, or (c) include a different set of recipients (e.g., a version of the email that is forwarded outside of the produced email thread). This Order also does not change the Parties' obligation to produce specific threaded emails separately, upon request as well as to identify any and all custodians of an email that has been produced.

30. **Proprietary Software.** To the extent that native files are produced that require proprietary software for access and review, the Producing Party shall make reasonable efforts to supply the receiving party with a copy of such software to allow the receiving party to review the files or make such files available for review in an alternative format.

31. **Password Protected Files.** The Parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, including commercially accessible software, when appropriate and feasible.

32. **De-NISTing and Zero-Byte Files**. The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review that are contained on the current NIST file list not otherwise required for production by this Order or that are identified as zero bytes in size.

33. **De-Duplication Across Custodians**. A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive electronic documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. The fields upon which the Hash Value of emails are calculated shall be disclosed by the Producing Party. The Producing Party will provide

a Duplicate Custodian field in the production Load File identifying each custodian of a particular document that was eliminated through de-duplication as well as the file path in which the document was kept in the ordinary course in the duplicate custodian's files. If all recipient custodians are documented for removed documents in the Duplicate Custodian field, the Producing Party need only produce a single copy of the particular document; however, the receiving party may request a reasonable number of duplicate copies identifying particular custodians. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. An email that includes additional or different content in the recipient fields (i.e., TO, CC, BCC) shall not be treated as a duplicate of an email that is otherwise identical aside from the recipient fields. For Documents, prior drafts of documents will not be considered duplicates. The Custodian, FilePath, and EmailFolder will be included (for all available copies of a responsive Electronic Document) in the respective CUSTODIAN(S), FILEPATH(S), and EMAIL_FOLDER(S) fields in the production Load File. In addition, if the email files were collected directly from the Microsoft Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

V.     **FORMAT OF PRODUCTION**

34.     **Non-Redacted ESI Not Produced in Native Form**. Non-redacted ESI should be produced in a form no less "searchable" than it is maintained in the normal course of the Producing Party's business. ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance Load Files (depending on the reasonable preference of the Requesting Party), with searchable extracted text of the Document (at the document level in a .TXT file) and the Metadata fields listed in Exhibit A, if applicable (except that the Parties agree that Metadata fields may be redacted in accordance with the parties' Privilege Protocol, so long as redactions are identified as such).

35. **ESI to be Produced in Native Form**. Non-redacted Excel files, .CSV files, other similar spreadsheet files; presentation files (e.g., PowerPoint); documents with tracked changes, comments, or embedded data; and, audio or video media files, or other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, preserving any formula within any spreadsheet and any Metadata contained in the file. Files produced in Native Format shall be named with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file extension. A placeholder TIFF endorsed with "Document Produced in Native" or similar language shall be included for each Native File produced. To the extent Native Files, including electronic spreadsheets, are redacted, production shall be made in TIFF format in accordance with the "Redacted Documents" section. To the extent other file formats present specific challenges, the Parties agree to cooperate in good faith to address the format in which those documents should be produced.

36. **Hard-Copy Documents**. Hard-Copy Documents should be produced as single- page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in a separate file. The Producing Party shall also provide document-level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, indicating the beginning and ending Bates numbers, attachments ranges of all documents, and the custodian information. Hard-copy documents shall be OCR'd and the OCR text shall be provided as one .TXT file per document.

37. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed in the original Document, so that each document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original. Pages containing affixed notes, such as Post-Its,

will be scanned with and without the note, with the image with the note preceding the image without the note.

38. **Parent-Child Relationships**. The association between a document and any attachments thereto shall be preserved. Attachments to a document will be consecutively produced immediately after the parent document. The Producing Party shall insert a slip sheet for any attachment over which the Producing Party claims privilege while maintaining the original consecutive order of the attachment(s).

39. **Databases, Structured Data and/or Application ESI**. To the extent that any responsive ESI is stored in a database system or is comprised of non-standard files like source code, transaction data, or proprietary applications not publicly available, the Parties will meet and confer regarding the format of production.

40. **Social Media**. Relevant ESI from social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram) may be produced by capturing responsive information through "screenshots" or "screen captures" and converting the same into images along with corresponding OCR or extracted text, unless the Parties agree to perform bulk exports of accounts, such as by exporting a profile from LinkedIn or downloading a copy of an individual's Facebook data and archive.

41. **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "stamped" or "burned" on the image at a location that does not conceal or obscure any information from the source Document. Each TIFF image or native file shall be assigned a Bates number that is unique. Each Producing Party's production will be bates-numbered consecutively with a consistent prefix and number of digits across the entire document production (e.g., ABC00001, ABC00002, etc.). No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

42. **Confidentiality**. Electronic data produced in discovery may be labeled with Confidentiality Designations pursuant to the Protective Order. In the case of TIFF images, confidentiality legends shall be "stamped" or "burned" on the image at a location that does

not conceal or obscure any information from the source document. For materials produced in Native Format, the Producing Party shall name the file with the Bates number followed by the Confidentiality Designation and the file extension. A failure to make a designation through fielded data or a naming of the file may be corrected by notifying the other side of the mistaken designations of confidential materials. Nothing in this Order is intended to waive the protections set forth in the Protective Order.

43. **Production Media**. Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The volume number and Bates number range(s) of the materials shall be included on the production media label or, where it is not practicable to do so, in an accompanying letter. If a Producing Party encrypts or "locks" a production, the Producing Party shall send, under separate correspondence, the password for decrypting the production.

## VI. PRIVILEGE AND WORK PRODUCT CLAIMS

44. **Privilege Log**. The Parties recognize that Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"). The Parties agree that if the following documents are privileged, they need not be included on a privilege log: (a) privileged materials created by or for the Parties' outside counsel as part of the investigation, prosecution, or defense of this case on or after January 1, 2020; (b) internal communications within the law firm representing Plaintiff or within the legal teams acting in their capacity representing Defendants or those non-attorneys acting at the direction of counsel acting in its capacity as counsel for Defendants; (c) privileged communications between a Party, including a vendor hired by a Party, and their outside counsel, including a vendor hired by outside counsel, concerning the investigation, preparation, prosecution or defense of this case; and, (d) material that is protected by the attorney-client privilege or attorney work-product doctrines based on an attorney-client relationship with a non-party. The Parties believe that, where it is necessary to redact

material in category "(d)," it will generally be obvious from the context of the redactions that material in this category has been redacted. While the Parties will make reasonable efforts to identify these redactions, they will not be required to log them on a privilege log. Where material in category "(d)" is withheld from production entirely (e.g., where such material was attached to a responsive, non-privileged email), the Parties agree that a slip-sheet bearing the label "DOCUMENT WITHHELD DUE TO NON-PARTY PRIVILEGE OR WORK PRODUCT" will be produced in the document's place, and no Metadata for that document will be produced.

The Parties also agree to log email families as one single entry on a privilege log (instead of emails and attachments being logged individually), and to log only the most-inclusive email thread, in accordance with paragraph IV.3 above.

## VII. REDACTED DOCUMENTS

45. **Permitted Redactions**. The Parties may redact from Documents, ESI, or metadata fields information over which the Producing Party asserts a claim of privilege, that is required to be redacted by applicable law or regulation, Personally Identifiable Information, or that is otherwise permitted to be redacted by any other order governing this Action. The Parties may not make redactions based upon the purported non-relevancy of any portion of a responsive document. The Producing Party shall identify redactions clearly on the face of any TIFF image and in the Metadata with a tag within the text of the document labeled with either "Redacted" or with the reason for the redaction (e.g., "Attorney-Client Privilege").

46. **Redacted Non-Native Documents**. For redacted Non-Native Electronic Documents, the Parties agree to produce as redacted single-page, black and white Group IV TIFF images with Metadata contained in a separate file. If an Electronic Document is produced in redacted form, the same Metadata fields listed in Exhibit A shall be produced for a redacted Electronic Document except that fields may be redacted to the extent that they contain redactable data.

47. **Redacted Native Documents**. If a document that would be otherwise produced in Native Format requires redaction, the Producing Party may produce such document in TIFF format with an OCR text file and relevant metadata in accordance with this Order. The Producing Party shall take care to ensure that all non-redacted information is produced, including hidden rows or columns, cell values, comments, speaker notes, or other information. The Producing Party shall also take care to ensure that any spreadsheets produced as redacted TIFFs are formatted so as to be legible, and that all readable content is maintained (e.g., not displayed as #####). Should the Receiving Party find that a redacted document, such as a spreadsheet, produced in TIFF format is not reasonably usable, the Receiving Party may request the document be redacted using native redaction techniques and produced in Native Format.

**VIII. MISCELLANEOUS**

48. **Objections Preserved.** Nothing in this Order shall be interpreted to require disclosure of any irrelevant information or relevant Documents that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection, or immunity, nor shall this Agreement require the production of Documents that are not discoverable under applicable law. Nothing in this Agreement, including any production of Documents under this Agreement, shall constitute a waiver by any Party of any claim of privilege or other protection from discovery. No production of any Documents that the Producing Party contends is attorney-client privileged or protected by the work-product doctrine shall constitute a waiver of that privilege or protection, and all procedures in any confidentiality and protective orders entered in this Action shall be followed with respect to such Documents.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents.

49. **Protective Order and Clawback Protection**. All Documents and the production of Documents, including the procedure for clawback of any Documents, shall be governed by the Protective Order, which provides the protections and processes for the

inadvertent disclosure of privileged information under Fed. R. Civ. P. 26(b)(5) and Federal Rule of Evidence 502.

50. **Modification**. This Order may be modified by a Stipulation of the Parties with approval of this Court or by the Court for good cause shown.

51. **Further Conferral**. If any Party determines that any of the requirements in this Order pose an issue with respect to compliance, the Producing Party shall promptly notify the Receiving Party of the issue and the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes. If the issue cannot be resolved, the Parties shall, in accordance with the Court's standing order regarding discovery disputes, seek a conference call with the Court to address the issues, or engage in such other procedure for resolving discovery disputes as ordered by the Court.

**EXHIBIT A**

| Field | Definition | Doc |
|---|---|---|
| SOURCE | Name of party producing the document | All |
| CUSTODIAN(S) | Names of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* | All |
| DUPCUSTODIAN | Names of persons from whom the document was collected, even if removed from the production as a duplicate | All |

| BEGBATES | Beginning Bates Number (production number) | All |
|---|---|---|
| ENDBATES | End Bates Number (production number) | All |
| PGCOUNT | Number of pages in the document | All |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type | All |
| FILEPATH | Original file path/folder structure of the location where the item resided at the time of preservation | All |
| FILEPATH_DUP | File path/folder structure for any document removed as a duplicate | |
| NATIVEFILELINK | File path for documents provided in native format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| FILE NAME | Original file name of the item including extension | All |
| FILETYPE | Application that created the file (e.g., Word, Outlook, Excel, Adobe) | All |
| FILE EXTENSION | Extension of the file (e.g., .docx, .pdf, .xlsx, .msg) | All |
| EMAIL FOLDER(S) | Folder location of the email within the .PST/.OST | Email |
| FROM | Sender | Email |
| TO | Recipient | Email |
| CC | Additional Recipients | Email |

| BCC | Blind Additional Recipients | Email |
|---|---|---|
| SUBJECT | Subject line of email | Email |
| PARENTBATES | BEGBATES number for the parent email of a family (will not be populated for documents that are not part of a family) | Email |
| ATTACHBATES | Bates number from the first page of each | Email |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the parent email) | Email |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) | Email |
| DATE_SENT (mm/dd/yyyy) | Date Sent | Email |
| EMAILDATSORT (mm/dd/yyyy) | Sent Date of the parent email (i.e., physically top email in a chain) | Email |
| MD5 HASH | MD5 hash value (or an alternatively agreed upon hash value) for email, attachments, and electronic documents, computed at the time of processing | All |
| TITLE | Title from internal document metadata property | Electronic Data |
| AUTHOR | Creator of an Electronic Document | Electronic Data |
| DATE_CREATED (mm/dd/yyyy) | Creation Date | Electronic Data |
| DATE_LASTMOD (mm/dd/yyyy) | Last Modified Date | Electronic Data |

| | | |
|---|---|---|
| LASTMODBY | Last Modified By | All |
| Redacted | For documents that contain redactions, tags indicating either "Redacted" or the reason for the redaction (e.g., Attorney-Client Privilege) | All |
| ProdVol | Production volume in which the document was produced | All |
| Confidentiality | Confidentiality designation assigned pursuant to any applicable Protective Order or stipulation | All |

**IT IS SO ORDERED.**

Dated: August 21, 2023

*Michelle M. Pettit*
Honorable Michelle M. Pettit
United States Magistrate Judge